UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 27, 2004 |

## LOCAL RULE 56(A)(1) STATEMENT

1). Inmate Corey Brooks is a 26-year old man currently in the custody of the Commissioner of the Department of Correction. RT80 Screen attached hereto.

2) He has been in and out of the Commissioner's custody since 1995. Plaintiff's deposition p. 32.

3). In September 2000, he was sentenced to ten years for violation of Connecticut General Statutes §53a-32, violation of probation, and §21a-277, Illegal, Manufacturing, Distribution and Sale of Hallucinogenic substance. RT80 Screen attached hereto.

4). Plaintiff was previously designated a member of the gang known as the Brotherhood. Plaintiff's deposition p. 51-52. Plaintiff told a lieutenant at Garner that he was a member of the Brotherhood. Plaintiff's deposition p. 51-52.

5) On August 12, 2002, plaintiff received a disciplinary report for fighting and he pled guilty on this disciplinary report. Plaintiff's deposition p. 13, 22.

6) The next day, plaintiff was placed in administrative detention and moved into a cell with inmate Vernon Robinson. Plaintiff's deposition p. 15, 23.

7) After a hearing, plaintiff was placed into administrative segregation. Plaintiff's deposition p. 24.

8) Mr. Robinson was five feet three inches and plaintiff was somewhere between five feet eleven inches and six feet one. See redacted Inmate Identification cards attached hereto; Plaintiff's deposition p. 28.

9). Inmate Robinson was "short", smaller than the plaintiff. Plaintiff's deposition p. 18, 31.

10). Plaintiff had no problems with inmate Robinson between August 13, 2002 and August 26, 2002. Plaintiff's deposition p. 15.

11) On August 26, 2002, inmate Robinson got angry with a female correctional officer because inmate Robinson believed that she had thrown out a request to his counselor. Plaintiff's deposition p. 16. Accordingly, inmate Robinson covered the cell window. Plaintiff's deposition p. 16.

12). According to the plaintiff, a correctional officer came to the door and then Lt. Manley came to the door. Plaintiff's deposition p. 17-18.

13). Lt. Manley ordered plaintiff to take down the cell window covering. Plaintiff's deposition p. 18.

14) Lt. Manley ordered plaintiff or inmate Robinson to remove the cell covering two or three times. Plaintiff's deposition p. 29; Videotape of incident attached hereto ("Videotape").[1]

15). Lt. Manley also warned both plaintiff and inmate Robinson that if the cell covering was not removed, he would use force, including a chemical agent. Plaintiff's deposition

---

[1] A copy of the videotape cannot be provided to inmate Brooks as he is currently incarcerated. However, arrangements will be made through the warden's office of the facility to which Brooks is currently confined to have inmate Brooks review a copy of the videotape. Documentation will be subsequently submitted showing that inmate Brooks has reviewed the videotape.

p. 28; Affidavit of Lt. Manley par. 8.[2]   Someone yelled at Lt. Manley to "shove it up your ass." Videotape at 3:00:30PM.

16).  Lt. Manley had called for a cell extraction team.  Affidavit of Lt. Manley par. 5. This takes some time to assemble as staff have to be pulled from other positions throughout the facility.  Affidavit of Lt. Manley par. 6.  In addition, staff have to put on special protective gear.  Affidavit of Lt. Manley par. 6.

17).  Any time a cell window is covered, staff has to be concerned about what is happening I the cell.  Affidavit of Lt. Manley par. 7.

18).  While he was awaiting the arrival of the cell extraction team, Lt. Manley went to cell 112 in an attempt to get the inmates in said cell, Robinson and Brooks to remove the window covering.  Affidavit of Lt. Manley par. 7.

19).  Knowing that Lt. Manley was going to use mace, plaintiff put a towel over his mouth.  Plaintiff's deposition p. 32-33.

20).  Neither inmate removed the window covering.  Videotape; Affidavit of Lt Manley pars. 5, 8, 9. Thereafter, Lt. Manley opened the food trap slot to spray the cap-stun. Videotape.

21).  Someone threw an unknown liquid substance out of the food trap.  Videotape; Affidavit of Lt. Manley par. 9.

22).  Lt. Manley then deployed one, one second burst of cap-stun.  Videotape; Affidavit of Lt. Manley par. 9.

23).  Inmate Robinson was ordered to remove the window covering which he refused to do.  Affidavit of Lt. Manley par. 9; Videotape.

---

[2]  A faxed copy of Lt. Manley's affidavit is attached hereto. The original will be filed with the court within two weeks of the undersigned's receipt of same.

3

24). Accordingly, Lt. Manley deployed a second one second burst of cap stun into the cell. Affidavit of Lt. Manley par. 10; Videotape.

25). The cap-stun was not used until after Lt. Manley issued the warnings that the cap stun would be used if the window covering was not removed. Plaintiff's deposition p. 28, 29, 35; Affidavit of Lt. Manley par. 8 ; Videotape.

26). After the capstun was deployed, inmate Robinson removed the cell window covering. Plaintiff's deposition p. 35; Affidavit of Lt. Manley par. 10.

27). However, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. Videotape.

28). Accordingly, Lt. Manley disbursed a third burst of cap stun into the cell. Videotape; Affidavit of Lt. Manley par. 11.

29). Lt. Manley ordered plaintiff to come to the door to be handcuffed and plaintiff complied with this order. Plaintiff's deposition p. 35.

30). Plaintiff was not concerned about being in the cell, cuffed up while plaintiff was uncuffed. Plaintiff's deposition p. 35-36.

31). Plaintiff testified that the mace did not affect inmate Robinson. Plaintiff's deposition p. 38.

32). According to the plaintiff, the only reason inmate Robinson cuffed up was because he thought plaintiff was having problems. Plaintiff's deposition p. 39-40.

33). Thereafter, plaintiff was removed from the cell and escorted to a shower and then to the medical unit. Videotape.

4

34). A nurse asked plaintiff is he had any injuries and he shook his head no. Videotape at 3:40 PM. Two minutes later, the nurse again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set. Videotape at 3:42 PM.

35). The plaintiff was then placed in the day room while his cell was prepared. Videotape at 3:43 PM to 3:48 PM.

36). At no time did plaintiff indicate that he was having any difficulty with an after effects of the mace. Videotape at 3:40 PM to 3:56 PM.

37). Both inmates were placed into in cell restraints for their failure to remove the cell window covering. Affidavit of Lt. Butkiewicus par. 15. In cell restraints consist of handcuffs in front, shackles on the ankles and a tether chain connecting the handcuffs to the shackles. Affidavit of Lt. Butkiewicus par. 15. Regardless of whether plaintiff covered his cell window, he was required to remove the cell covering when ordered to do so. Affidavit of Lt. Butkiewicus par. 15.

38). Inmate Brooks' failure to remove the cell covering jeopardized safety and security of the facility. Affidavit of Lt. Butkiewicus par. 16. Staff had to pulled from other positions throughout the facility to assemble a cell extraction team. Affidavit of Lt. Butkiewicus par. 16. Any time, staff has to pulled from other posts, this leaves less staff able to handle other disturbances in the correctional facility. Affidavit of Lt. Butkiewicus par. 16. Thus, if a fight or riot were to break out, there would be even less staff, than usual to respond to it, thereby placing other inmates and staff at risk. Affidavit of Lt. Butkiewicus par. 16. Plaintiff could have avoided placing staff and other inmates in harms way, simply by removing a cell window covering, but did not. Affidavit of Lt. Butkiewicus par. 16.

5

39).  Plaintiff was placed into in cell restraints and Nurse Dudley checked his restraints by sliding two fingers between his restraints and his limbs.  Videotape at 3:55PM.  Plaintiff's deposition p. 44;  Affidavit of Nurse Dudley par. 3.

40). Prior to his placement into in cell restraints, Nurse Dudley listened to plaintiff's lungs and took his vital signs.  Affidavit of Nurse Dudley par. 2.  Plaintiff's lungs were clear, his blood pressure and respiration were normal.  Affidavit of Nurse Dudley par. 2.

41).  Nurse Stephen Badura checked in on plaintiff at approximately 8:30 PM that evening and noted that plaintiff was alert and oriented.  Affidavit of Stephen Badura par. 2.  Nurse Badura did not observe any injuries on plaintiff nor did the plaintiff voice any medical complaints.  Affidavit of Stephen Badura par. 2.  Nurse Badura did note that plaintiff had ample spacing between his restraints and his extremities.  Affidavit of Stephen Badura par. 2.

42).  The next day when plaintiff's restraints were removed, plaintiff denied that he had any medical issues.  Medical Incident Report dated 8/27/02.

43).  Plaintiff never requested to press charges against inmate Robinson and indeed at his deposition stated that he did not want to press charges because he understood where inmate Robinson was coming from.  Plaintiff's deposition p. 21.

44). According to the plaintiff on August 26, 2002, inmate Robinson told correctional staff that plaintiff had nothing to do with covering the cell window.  Plaintiff's deposition p. 25-26.

45) Plaintiff testified that he sued Larry Myers, because he was the warden and in placing plaintiff into administrative detention, plaintiff was placed into a cell with an

6

administrative segregation inmate. Plaintiff's deposition p. 53-54. Plaintiff stated that this was his only claim against defendant Myers. Plaintiff's deposition p. 53-54.

46). According to plaintiff, his only claim against Major Coates was that he had "supervisory responsibility." Plaintiff's deposition p. 54, 66-67. Plaintiff could not recall any other claims he had against Major Coates. Plaintiff's deposition p. 54.

47). Plaintiff testified that his claims against Captain Regan were that the Captain was the second shift commander and was supposed to be supervising the correctional officers and lieutenants. Plaintiff's deposition p. 55, 67. Plaintiff admitted that Captain Regan was not on the scene at the time the mace was used. Plaintiff's deposition p. 70-71.

48). Plaintiff could not recall what Lt. Knapp, Lt. Bucsiewic did or did not do which made them liable to plaintiff for money damages in this case. Plaintiff's deposition p. 56-57. He later said that his claims were that Lt. Bucsiewic should have stopped the macing of plaintiff. Plaintiff's deposition p. 69-70.

49). As to Captain Butler, initially plaintiff testified that he could not recall what Captain Butler did, but then stated that Captain Butler was liable because he was the unit manager who was supposed to supervise the correctional officers and the lieutenant. Plaintiff's deposition p. 65-66.

50). Plaintiff testified that C/O Howes, C/O Oberg, C/O Pafumi, and C/O Jones were part of the extraction team who removed him from his cell. Plaintiff's deposition p. 56-57. However, plaintiff stated that he could not remember what Howes, Oberg, Pafumi and Jones did which made them liable to plaintiff for money damages. Plaintiff's deposition p. 56-57. Plaintiff testified that it was fair to say that Howes, Oberg, Pafumi and Jones did not use the cap-stun on him. Plaintiff's deposition p. 68.    However,

plaintiff later said that it took these defendants fifteen minutes to remove him from his cell. Plaintiff's deposition p. 65, 68-69.

          DEFENDANTS

          Larry Myers, et al

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL

          ___/s/_____
By:  Ann E. Lynch
     Assistant Attorney General
     110 Sherman Street
     Hartford, CT 06105
     Tel.: (860)808-5450
     Federal Bar No. ct08326

## **CERTIFICATION**

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a copy of the foregoing was mailed, postage prepaid, this _____ day of May 2004 to:

Corey Brooks, #237651
Cheshire Correctional Institution
900 Highland Ave.
Cheshire Ct 06410

                                                       /s/_____
                                                      Ann E. Lynch
                                                      Assistant Attorney General