UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 12, 2004 |

### AFFIDAVIT OF LT. DAVID BUTKIEWICUS

**I, LIEUTENANT DAVID BUTKIEWICUS**, being duly sworn, depose and say:

1. I am employed by the State of Connecticut Department of Correction ("DOC") as a lieutenant at Northern Correctional Institution ("NCI"). I have been employed with DOC since September 1993 and have worked at NCI since November 30, 2001. As such, I am duly familiar with the facts set forth below.

2. On August 26, 2002, at approximately 2:59 PM, I was advised by Captain Butler, the Unit Manager for 1 East and 1 West, who worked first shift, 7AM to 3 PM, that inmates Vernon Robinson and inmate Corey Brooks were in cell 1 East 112 with a covering over their cell door window and thus staff could not see into their cell.

3. I was told by Captain Butler that inmate Robinson got angry with a female correctional officer, Officer Young, because inmate Robinson believed that she had thrown out a poem from his mail.

4. Officer Young denied the allegations. I then went to cell 112 with Lt. Manley who ordered inmate Robinson to remove the covering on his cell door window.

5. Because neither inmate in the cell removed the window covering, Lt. Manley and I left the tier briefly to call for an extraction team.

6. It is imperative in a prison, that staff be able to view an inmate at all times. Without the ability to see inside a cell, staff cannot be sure if one inmate is assaulting another inmate, whether the cell occupants are destroying the interior of their cell, planning an escape, fashioning weapons, attempting suicide, greasing themselves up, making the ceil floor slippery and/or plotting the assault on another inmate or staff member. Accordingly, because neither inmate Robinson or Brooks would remove the obstruction from the window, Lt. Manley and I necessarily assembled two extraction teams.

7. An extraction team takes some time to assemble as staff must be pulled from other positions throughout the facility. In addition, the extraction teams had to place on helmets, shields, gas masks, jumpsuits, vests and protective padding. As correctional staff do not carry guns, or even batons, they necessarily must wear this protective gear when engaging in a planned use of force.

8. Given Lt. Manley's and my concern about what was happening in inmate Brooks' and inmate Robinson's cell, while we were awaiting the arrival of the cell extraction teams, we went back to cell 112 in an attempt to get the inmates in said cell, Robinson and Brooks to remove the window covering.

9. Lt. Manley ordered both inmate Brooks and inmate Robinson to take down the cell window covering. He also warned both inmate Brooks and inmate Robinson that if the cell covering was not removed, force would be used up to and including a chemical agent. Someone from within the cell yelled in response "shove it up your ass."

10. Neither inmate removed the window covering. Accordingly, the food trap slot was opened and then someone from within the cell sprayed out an unknown liquid

substance. Lt. Manley then deployed one, one second burst of cap-stun. Inmate Robinson was ordered to remove the window covering and approach the trap and be restrained which he refused to do.

11. Accordingly, Lt. Manley deployed a second one second burst of cap-stun into the cell. After the cap-stun was deployed, inmate Robinson removed the cell window covering and turned on the cell light. However, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. In addition, inmate Robinson refused to come to the door to be handcuffed.

12. Accordingly, Lt. Manley disbursed a third one second burst of cap stun into the cell. Inmate Robinson, then attempted to block the food trap with his mattress so Lt. Manley attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.

13. Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did. Inmate Brooks then returned to his bunk. It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.

14. Once both inmates were cuffed up, we awaited the arrival of the cell extraction teams to escort both inmates out of the cell.

15. Both inmates were placed into in cell restraints for their failure to remove the cell window covering. In cell restraints consist of handcuffs in front, shackles on the ankles and a tether chain connecting the handcuffs to the shackles. Regardless of whether plaintiff covered his cell window, he was required to remove the cell covering when ordered to do so.

16. Inmate Brooks' failure to remove the cell covering jeopardized safety and security of the facility. Staff had to pulled from other positions throughout the facility to assemble cell extraction teams. Any time, staff has to pulled from other posts, this leaves less staff able to handle other disturbances in the correctional facility. Thus, if a fight or riot were to break out, there would be even less staff, than usual to respond to it, thereby placing other inmates and staff at risk. Plaintiff could have avoided placing staff and other inmates in harms way, simply by removing a cell window covering, but did not.

                    /s/_____

                    Lt. David Butkiewicus

Subscribed to and sworn before me, this ____ day of May 2004.


       /s/_____
       Notary Public/Commissioner of the
       Superior Court
       My Commission expires:

DEFENDANTS

LARRY MYERS, et al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

                /s/_____

By:  Ann E. Lynch
       Assistant Attorney General
       110 Sherman Street
       Hartford, CT 06105
       Tel.: (860)808-5450
       Federal Bar No. ct08326

## **CERTIFICATION**

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a copy of the foregoing was mailed, postage prepaid, this \_\_\_\_\_ day of May 2004 to:

Corey Brooks, #237651
Cheshire Correctional Institution
900 Highland Ave.
Cheshire Ct 06410

                /s/_____
       Ann E. Lynch
       Assistant Attorney General