JASON PETE, Plaintiff, v. CAPTAIN KEVIN DEGRAY, AND CORRECTIONAL OFFICERS COUTURE, BROWN, DAVIS and RICHARDSON, Defendants.
Case No. 3:00cv2384 (AWT)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 4292

March 12, 2004, Decided

DISPOSITION: Defendants' motion for summary judgment granted.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff inmate brought a civil rights action pursuant to 28 U.S.C.S. § 1915 against defendant correctional officers, alleging that they used excessive force against him when they extracted him from his cell. The correctional officers moved for summary judgment.

OVERVIEW: The inmate could not meet his burden of demonstrating that he suffered any injury as a result of alleged use of excessive force by the correctional officers as he offered no evidence to rebut an affidavit from a prison nurse and a videotape showing that the inmate suffered no abrasions, cuts, respiratory problems, or other injury as a result of the cell extraction. Even if he had submitted evidence to support an injury, he failed to produce evidence showing that the correctional officers acted maliciously or sadistically in removing him from his cell after he failed to remove a towel from the cell door window when ordered to do so. Moreover, the claims against the correctional officer who videotaped the cell extraction failed because the failure to properly videotape the extraction did not rise to the level of a violation of the inmate's federally protected rights.

OUTCOME: The motion for summary judgment was granted.

CORE TERMS: cell, extraction, videotape, summary judgment, cellmate, inmate, excessive force, shower, team, window, towel, inhaler, prison, force used, respiratory, transported, distress, subjective, restore, correctional officer, puff, nonmoving party, cause harm, sadistically, maliciously, good-faith, deposition, discipline, trap door, handcuffed

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN1] In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A court must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. After discovery, if the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
[HN2] To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. He must come forward with enough evidence to support a jury verdict in his favor, and the motion will not be defeated merely on the basis of conjecture or surmise. The court resolves all ambiguities and draws all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide. Thus, only when reasonable minds could not differ as to the import of the evidence is summary judgment proper.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties
[HN3] Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. Despite this liberal interpretation, however, a bald

assertion, unsupported by evidence, cannot overcome a properly supported motion for summary judgment.

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline
[HN4] When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. The objective component relates to the seriousness of the injury. However, a claim of excessive force may be established even if the victim does not suffer serious or significant injury, provided that the amount of force used is more than de minimus, or involves force that is repugnant to the conscience of mankind. This component is contextual and responsive to contemporary standards of decency.

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline
[HN5] The subjective component of an excessive force claim requires the inmate to show that the prison officials acted wantonly. With regard to an excessive force claim, the question of wantonness turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The court considers factors including the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline
[HN6] To meet the burden under the subjective component of the Eighth Amendment standard, an inmate must demonstrate that the prison officials acted maliciously and sadistically to cause harm.

COUNSEL: [*1] Jason Pete, Plaintiff, Pro se, Somers, CT.

For Coujture, CO, Ind, Defendant: Ann E. Lynch, Attorney General's Office, Hartford, CT.

For Brown, CO, Ind, Defendant: Ann E. Lynch, Attorney General's Office, Hartford, CT.

For Davis, CO, Ind, Defendant: Ann E. Lynch, Attorney General's Office, Hartford, CT.

For DeGray, Ind, Defendant: Ann E. Lynch, Attorney General's Office, Hartford, CT.

JUDGES: Alvin W. Thompson, United States District Judge.

OPINIONBY: Alvin W. Thompson

OPINION: RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Jason Pete, an inmate confined at Northern Correctional Institution in Somers, Connecticut, brings this civil rights action pursuant to *28 U.S.C. § 1915*. The plaintiff alleges that the defendants used excessive force against him when they extracted him from his cell on August 23, 2000.

On August 2, 2002, the court granted the defendants' motion to dismiss the plaintiff's claim that the defendants denied the plaintiff due process by placing him in in-cell restraints for twenty-four hours and denied the motion to dismiss the plaintiff's excessive force claims. (See doc. # 38.) On April 4, 2003, the court granted the defendants[*2] leave to file a motion for summary judgment. On the same date, the court issued a notice informing the plaintiff of his obligation to respond to the motion, explaining the relevant procedural rules and describing the contents of a proper response to a motion for summary judgment; the notice also cautioned the plaintiff that the motion could be granted and judgment entered against him if he failed to respond. To date, The plaintiff has not responded to the motion. For the reasons that follow, the motion for summary judgment is being granted.

I. Legal Standard

[HN1] In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See *Rule 56(c), Fed. R. Civ. P.*; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000)*. A court must grant summary judgment "' if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue[*3] as to any material fact ....'" *Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993)* (citation omitted). A dispute regarding a material fact is genuine "' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. '" *Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992)* (quoting *Anderson, 477 U.S. at 248*). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

[HN2] To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. He "must come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely ...on the basis of conjecture or surmise." *Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992)*[*4] (citation and internal quotation marks omitted). The court resolves "all ambiguities and draws all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich, 963 F.2d at 523*. Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)*. See also *Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992)*.

[HN3] Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)*. Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. *Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)*.

II. Facts

The following facts are taken from the defendants' Local *Rule 56(a)* 1 Statement [doc. # 50] and the affidavits [docs. # # 51-59] submitted in support of their motion. Because the statement is unopposed, the facts[*5] are deemed admitted. See D. Conn. L. Civ. R. 56(a) 1.

On August 23, 2000, the plaintiff and his cellmate were housed in One West cell 209 at Northern Correctional Institution. At approximately 12: 00 a. m. that day, Officer Blue noticed that the window to the plaintiff's cell was covered with a towel. Officer Blue gave the plaintiff and his cellmate several orders to remove the towel. Both inmates swore at Officer Blue and told him to "get a team." (Blue Aff. P5.) Officer Blue notified Captain DeGray, the shift supervisor, concerning the situation and he proceeded to the plaintiff's cell. Captain DeGray gave the plaintiff and his cellmate direct orders to remove the towel from the window, but both inmates refused to do so and told Captain DeGray to "get the team." (DeGray Aff. P7.)

It is important that prison staff be able to see the inmates at all times. (DeGray Aff. P8.) Because the window was covered, Captain DeGray did not know whether the plaintiff and his cellmate were assaulting each other, destroying items in their cells, making weapons, attempting suicide or planning to escape or to assault prison staff or other prisoners. (DeGray Aff. P8.) Because the plaintiff and his[*6] cellmate refused to remove the towel from the window despite several direct orders to do so, Captain DeGray assembled two extraction teams to remove the plaintiff and his cellmate from the cell. (Id.)

The first extraction team included Correctional Officers Stork, Fargo and Richardson. (DeGray Aff.P 16; see Videotape.) The second extraction team included Officers Couture, Smiley and Pease. (DeGray Aff. P18; see Videotape.) The first team was responsible for securing the plaintiff and the second team was responsible for the plaintiff's cellmate. (See DeGray Aff. PP 17-19; Videotape.) Captain DeGray assigned Correctional Officer Brown to apply the restraints to the plaintiff. (DeGray Aff. P 20; see Videotape.)

Upon reaching the plaintiff's cell, Captain DeGray gave the plaintiff and his cellmate orders to turn on their light, remove the obstruction from the cell door window and come to the trap door to be handcuffed. (See Videotape.) Captain DeGray informed the plaintiff and his cellmate that their failure to comply with his orders would result in the use of a chemical agent. (See id.) When the inmates failed to comply with the orders, Captain DeGray sprayed a one-second burst of Cap-stun[*7] for each inmate through the trap door in the cell. (See id.) Captain DeGray then asked the two inmates to come to the trap door to be handcuffed. When neither inmate complied with this order, the two cell extraction teams entered the cell. (See id.) The first team secured the plaintiff on the floor of the cell. (See id.) Officer Brown applied the handcuffs and shackles and Correctional Officers Stork and Fargo transported the plaintiff to the shower to rinse off the Cap-stun. (See id.) The plaintiff did not cough or show signs of respiratory distress when he left the shower to be transported to a new cell. (See id.) Nurse Bujnevicie gave the plaintiff a puff of his albuterol inhaler anyway. (Bujnevicie Aff.P 5; see Videotape.) After the plaintiff was placed in a new cell, Nurse Bujnevicie gave the plaintiff another puff of the inhaler at his request. (Bujnevicie Aff. P6; see Videotape.) Nurse Bujnevicie asked the plaintiff if he was okay and he nodded in the affirmative. (Bujnevicie Aff. P7; see Videotape.) Nurse Bujnevicie noted no respiratory distress. (Bujnevicie Aff. P7.) Officer Brown relieved Officer Stork in the new cell (Brown Aff. P12) and Officer Couture conducted a routine[*8] strip search (Couture Aff. P 13). After the strip search, the officers placed the plaintiff in in-cell restraints. (See id.) Nurse Bujnevicie checked the restraints to ensure that they

were not too tight and asked the plaintiff if he had any medical issues. (See id.) He indicated that he did not have any issues. (See id.)

Correctional Officer Davis videotaped the extraction of the plaintiff from his cell. (Davis Aff. PP 4-5.) Correctional Officer Davis did not "observe any staff member kick, punch, or beat" the plaintiff. (Davis Aff. P6.)

III. Discussion

The defendants argue in support of their motion for summary judgment that: (1) the plaintiff cannot establish facts that would support an *Eighth Amendment* excessive force claim; (2) the plaintiff fails to state a claim for a violation of his constitutional rights against defendant Davis; (3) the plaintiff cannot establish that he suffered physical injury; and (4) they are entitled to qualified immunity. Because the court finds that the defendants prevail on the first three arguments, it does not address the issue of qualified immunity.

A. Excessive Force; Physical Injury

In *Hudson v. McMillian, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992)*, [*9] the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the *Eighth Amendment* in a context other than a prison disturbance. *United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999)*. [HN4] When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. See *Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)* (citing *Hudson, 503 U.S. at 8-9*); *Wilson v. Seiter, 501 U.S. 294, 298-99, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)*. The objective component relates to the seriousness of the injury. However, "a claim of excessive force may be established even if the victim does not suffer 'serious' or 'significant' injury, provided that the amount of force used is more than 'de minimus, 'or involves force that is 'repugnant to the conscience of mankind. '" *Walsh, 194 F.3d at 47-48* (citing *Hudson, 503 U.S. at 7-10*) (internal citations omitted). This component is "contextual and responsive to 'contemporary[*10] standards of decency. '" *Hudson, 503 U.S. at 8* (quoting *Estelle v. Gamble, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976))*.

[HN5] The subjective component requires the inmate to show that the prison officials acted wantonly. See *Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)*. With regard to an excessive force claim, the question of wantonness turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson, 503 U.S. at 7*. The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotations and citation omitted).

The defendants contend that Officer Couture did not participate in the extraction of the plaintiff from the cell. The defendants also contend that the force used by Officers Richardson and Brown in extracting the plaintiff from the cell was applied in a good faith effort to restore order.

As a preliminary matter, the plaintiff[*11] has provided no evidence to support his contention that he suffered injuries as a result of the alleged force used by defendants Richardson and Brown in extracting him from the cell. The defendants have submitted an affidavit from Nurse Bujnevicie, who was present during the extraction of the plaintiff from his cell and afterwards when he was placed in the shower and later transported to another cell. She avers that the plaintiff is an asthmatic and that she gave him two puffs from an albuterol inhaler after his extraction from the cell. She also avers that she did not "observe any abrasions, cuts, bleeding, bruises or other injuries" on the plaintiff after his extraction from the cell. (Bujnevicie Aff. P10.) In addition, Nurse Bujnevicie avers that she asked the plaintiff whether he had any medical issues and he indicated that he did not. (Id. P9.) The defendants also submitted a videotape of the cell extraction. No cuts or abrasions on the plaintiff's face or head are visible on that videotape. The plaintiff does not complain about receiving injuries to his head or face during the period when he was taken to the shower after the extraction and then to another cell. The [*12]plaintiff was coughing during the time he was rinsing his head and face in the shower and asked for his inhaler, and Captain DeGray responded that the plaintiff would be getting the inhaler when he was done in the shower. See Videotape. The plaintiff was not coughing or in apparent respiratory distress when he left the shower to be transported to another cell. (See id.) In addition, the videotape shows Nurse Bujnevicie giving him a puff of his inhaler as he is being transported to his cell and then again at his request in the new cell. At no time did it appear that the plaintiff was in respiratory distress.

The court concludes that the plaintiff cannot meet his burden of demonstrating that he suffered any injury as a result of the alleged use of excessive force by the defendants. There is no evidence of even the slightest

injury; nor is there any evidence that the defendants used force that is "repugnant to the conscience of mankind." See *Walsh, 194 F.3d at 47-48*. Thus, he has not satisfied the objective prong of the *Eighth Amendment* standard.

Even if the plaintiff had submitted evidence in support of his contention that he suffered an injury as a result of the alleged[*13] use of force by the defendants, he has not provided evidence that would satisfy the subjective prong of the *Eighth Amendment* standard. [HN6] To meet the burden under the subjective component of the *Eighth Amendment* standard, the plaintiff must demonstrate that the defendants acted "maliciously and sadistically to cause harm ...." *Hudson, 503 U.S. at 7* (adding that inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm").

The plaintiff conceded during his deposition that his cellmate covered the window in the cell door with a towel. The plaintiff does not dispute that he failed to remove the towel from the window after Officer Blue ordered him to do so on several occasions. The videotape shows that Captain DeGray gave the plaintiff and his cellmate another chance to remove the towel prior to employing the cell extraction team. The defendants had safety and security concerns regarding their inability to see what was happening in the plaintiff's cell. Captain DeGray sprayed a short blast of pepper spray into the cell, the extraction team members entered the cell, subdued the plaintiff, [*14] handcuffed and shackled him, and took him to the shower to rinse off the spray. The plaintiff exhibited no respiratory distress upon leaving the shower but was nonetheless provided with albuterol for his asthma condition. No force was used once the plaintiff reached the new cell.

The plaintiff fails to adduce any facts to demonstrate that the defendants' course of conduct was malicious and sadistic, or otherwise not performed in a good-faith attempt to maintain discipline in the prison. The court concludes that the amount of force used by the defendants was not excessive and was used in an appropriate effort to restore order in a prison facility. The defendants are entitled to judgment on the excessive force claim as a matter of law.

B. Claims Against Defendant Davis

Officer Davis videotaped the cell extraction. The plaintiff claims that Officer Davis failed to properly videotape the extraction and did not ask an officer who was blocking the view of the plaintiff to move out of the way. The plaintiff alleges that blocking the view of a video camera is a violation of the State of Connecticut Department of Correction Administrative Directives. The court cannot discern how any failure[*15] by defendant Davis to properly videotape the cell extraction would rise to the level of a violation of the plaintiff's federally protected rights. Furthermore, the videotape shows that for the majority of the time the correctional officers were in the cell applying the handcuffs and shackles to the plaintiff and his cellmate there was no one blocking the view of the video camera. The plaintiff conceded at his deposition that he had not viewed the videotape prior to making the allegation against Officer Davis.

Accordingly, the motion for summary judgment should be granted as to the claim that Officer Davis failed to properly videotape the extraction of the plaintiff from his cell because it fails to state a claim upon which relief may be granted. The motion should also be granted as to any claim that Officer Davis failed to intervene in the alleged use of excessive force, because the plaintiff has failed to meet his burden of producing evidence that the other defendants used excessive force while extracting him from his cell.

IV. Conclusion

The defendants' motion for summary judgment [doc. # 48] is hereby GRANTED. The Clerk shall enter judgment in favor of the defendants and[*16] shall close this case.

It is so ordered.

Dated this 12th day of March 2004, at Hartford, Connecticut.

/s/

Alvin W. Thompson

United States District Judge

DANIEL E. McGEE, Plaintiff, v. JERRY GRIFFITH, R.E.STRICKLAND, and RONALD JONES, Defendants.
4:96CV00942

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

1998 U.S. Dist. LEXIS 12291

June 19, 1998, Decided
June 19, 1998, Filed

DISPOSITION: [*1] Defendants' motion for summary judgment (docket no. 18) granted as to all claims and action dismissed.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant prison officials filed for summary judgment in the suit by plaintiff inmate alleging due process and Eighth Amendment violations pursuant to *42 U.S.C.S. § 1983* and the violation of state regulations as well as a claim for false imprisonment. The prison officials argued in large part a lack of constitutional violations and that progressive discipline was proper given the inmate's behavior.

OVERVIEW: The inmate alleged that he was subjected to cruel and unusual punishment and that he was not provided due process notice and a hearing after being placed in "four-point" restraints for nearly two days. The inmate had a history of disturbances, he threw liquid on an officer, and he acted in a belligerent manner before being restrained. The district court granted judgment. The inmate was already in segregation and had been subjected to increasing levels of punishment pursuant to policy. The inmate could not show that the restraint was atypical and a deprivation of his liberty interests given his behavior. The use of four-point restraints was not a per se liberty interest violation or an Eighth Amendment violation. The time period was not too long given that the inmate had medical care and food, and again, given the inmate's disruptive behavior. Case law where the use of four-point restraints were found to possibly be cruel and unusual was not on point since the inmate therein was subjected to much harsher treatment. General allegations of the failure to follow regulations could not survive summary judgment. The false imprisonment claim was untimely.

OUTCOME: Summary judgment was granted to the prison officials in the inmate's suit alleging in part constitutional violations after being placed in four-point restraints.

CORE TERMS: four-point, inmate, regulations, segregation, prisoner, mace, summary judgment, disruptive, prison, Eighth Amendment, confinement, subjected, atypical, hardship, qualified immunity, medical care, custody, assault, housed, cell, false imprisonment, noted earlier, confined, guard, single cell, video tape, disruption, assigned, liquid, meal

COUNSEL: For DANIEL E. MCGEE, plaintiff: GERALDINE R. COLEMAN, N. C. PRISONER LEGAL SERVICES, INC., RALEIGH, NC.

For JERRY GRIFFITH, R. E. STRICKLAND, RONALD JONES, defendants: JANE RAY GARVEY, OFFICE OF N. C. ATTORNEY GENERAL, RALEIGH, NC.

JUDGES: Russell A. Eliason, United States Magistrate Judge.

OPINIONBY: Russell A. Eliason

OPINION: ORDER

Eliason, Magistrate Judge

Plaintiff, who is a prisoner of the State of North Carolina, brought this action seeking relief pursuant to *42 U.S.C. § 1983*. As defendants, he named a then Sergeant, Lieutenant and the Superintendent of the Piedmont Correctional Institution. Plaintiff's claim is that while he was in segregated confinement, he committed an offense and as a result was subjected to additional restrictions to his movement by being placed in what is termed "four-point restraints" for forty-eight hours. Plaintiff alleges that this violates the cruel and unusual punishment clause of the Eighth Amendment as well as the due process clause of the Fourteenth Amendment because he was subjected to summary punishment without notice, hearing or[*2] other due process protections. He claims that his rights were violated under

state regulations and statutes. Finally, plaintiff claims that this confinement constituted false imprisonment under North Carolina law.

The facts are not in any major dispute. At the time in question, plaintiff was housed in a single cell in the segregation unit at the Piedmont Correctional Institution. The cell had a door with an opening which could be used to pass through a food tray. At approximately 1:20 in the afternoon of May 3, 1995, defendant Griffith approached plaintiff's cell to investigate a potential disciplinary action which involved plaintiff's allegedly throwing liquid on another officer that morning. When Griffith approached the cell to ask whether plaintiff wished to make a statement, plaintiff issued a racial curse, threw a cup of liquid directly into the officer's face which knocked the officer's glasses off. The officer could see plaintiff preparing to throw more substance, and he drew his pepper spray and directed two short bursts at plaintiff. Griffith notified others of what occurred. He had no further involvement in the controversy. (Aff. Jerry Griffith attached docket no. 19) [*3]

Plaintiff was taken to have the pepper spray washed from his eyes. He was then placed on a bunk where his ankles were attached to the corners with chains. His wrists were cuffed together and there was a chain around his waist. He was released every four hours to take care of bodily functions and released to eat at regular meal times. He was chained in this position from approximately 2:45 p.m., May 3, 1995, until noon, May 5, 1995. Plaintiff claims that he suffered pain, stiffness, muscle spasms and humiliation.

Defendants have moved for summary judgment supported by affidavits. Lieutenant Strickland states in his affidavit that he was informed of plaintiff's action against Sgt. Griffith and knew about the prior incident against another officer. Plaintiff was assigned to long-term segregation because of prior disruptive behavior, but this measure had not proven effective. Strickland states that unit policy provides that four-point restraints could be used when lesser measures had failed with respect to an inmate assigned to segregation and there happened to be an assault upon staff or inmates. The Superintendent or Assistant Superintendent must authorized use of such restraints. [*4] Therefore, Strickland notified Supt. Jones. The request was approved. n1 Plaintiff began using racial slurs and vulgarity during this process. A nurse arrived to evaluate the interim use of force and to supervise the attachment of the metal restraints to plaintiff's wrists and ankles which were wrapped with gauze to protect plaintiff. The restraints are fashioned so that a plaintiff could sit or lie as he wished.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Policy requires a video taping of the activity and this video tape was submitted as a true and accurate record of the events that took place on that day.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Sandra Davis, a nurse supervisor at the prison, reviewed the medical records for the period when plaintiff was under the four-point restraint. These indicate complaints of muscle pain but no indication of actual injury. Plaintiff was evaluated by medical staff on thirteen occasions during the four-point restraint. The unit physician determined there was no medical reason for not subjecting plaintiff to the four-point restraint.

John Haigwood, the[*5] unit psychologist, also submits an affidavit. He indicates that unit policy requires that people subjected to the four-point restraint have their case reviewed by a psychologist to determine that the disruption leading to the four-point restraint comes from willful behavior as opposed to mental health problems. He found nothing in plaintiff's file which would preclude use of four-point restraints and, therefore, approved plaintiff for such procedure. He also states that people in prison are already a subset of the population who choose not to conform their behavior. People such as plaintiff, who are on long-term segregation and close custody, constitute an even more unmanageable group. In fact, close custody is second and only exceeded by maximum custody. Therefore, someone like plaintiff who is a close custody inmate, who then is housed in segregation, is one of the most disruptive of all prisoners.

Haigwood states that plaintiff's behavior, as shown on the video tape, shows that he relished the opportunity to obtain attention and cause more disruption. He made aggressive and demeaning comments to the female officers and tried to bait the male officers. He also adopted a passive[*6] physical resistance during transportation. Disruptive inmates always retain an advantage because they are required to be fed, receive medical care, and hygienic attention. This provides a perfect opportunity for the inmate to assault officers through the use of their urine or fecal matter and thereby jeopardize the health of the officers and other inmates. Dr. Haigwood states that, in his opinion, the maximum

term of 48 hours is appropriate for these kinds of situations and that there would otherwise be no other means to control such behavior as plaintiff exhibited.

Finally, Supt. Jones submits an affidavit, along with use of force records and regulations. He states that the four-point restraint policy is not used as punishment but as a means to control disruptive inmate behavior. At the Piedmont Correctional Institution, the immobilization policy of the four-point restraints is limited to those inmates who already have been assigned to a single cell and yet continue to disrupt. Department policy states that no inmate can be placed in four-point restraints for more than four hours unless there is 24-hour medical care available

Plaintiff responds to defendants' motion for summary[*7] judgment. First, he claims that defendants have only moved for summary judgment based on grounds of qualified immunity. However, a reading of defendants' motion and brief shows that it is not so limited, although qualified immunity is one basis for the motion. Second, plaintiff claims that defendants' own affidavits show that they violated policy in imposing four-point restraints. He claims that part of the regulations attached to the affidavit of Ronald Jones shows that an inmate to be considered for immobilization must "have committed and continued to commit" assaults on an inmate or staff. He claims he did not meet this criteria because plaintiff eventually ceased his assaultive, belligerent behavior. However, the undisputed facts show that plaintiff did meet this criteria. He was physically and verbally assaultive both by throwing liquid and through verbal assaults up to and during the time he was placed in four-point restraints.

Next, plaintiff claims that the Fourth Circuit in *Williams v. Benjamin, 77 F.3d 756, 769 (4th Cir. 1996),* determined that the use of four-point restraints imposes an atypical and significant hardship in relation to the ordinary incidents of prison[*8] life. Therefore, he argues that state prison regulations concerning four-point restraints create a liberty interest protected by the due process clause, in accordance with *Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).* This Court disagrees. In Williams, the issue involved an inmate being sprayed with mace who was then confined to four-point restraints while not being able to wash off the mace and who was so confined for more than eight hours without being provided any benefit of medical care or use of a toilet. Speaking of this incident, the court merely opined that plaintiff had a forceful argument that such confinement was atypical and a significant hardship considering the standards imposed by a federal court consent decree and policies adopted thereunder. The Court does not read Williams as making an unqualified declaration that any use of four-point restraints in any and all prison situations constitutes an atypical and significant hardship.

The facts in this case support the opposite conclusion with respect to four-point restraints. Plaintiff was already housed in administrative segregation in a single cell. His movement, contact with[*9] others, and other freedoms were already severely restricted. In this situation, the use of a four-point restraint system for only 48 hours and which permitted plaintiff to get up every four hours and also to attend meals, while certainly more restrictive than straight administrative segregation, was not a quantum leap from that situation. Prisons contain many levels of restrictions to accommodate the different types of individuals who do not conform their actions to societal norms and their different situations. Administrative segregation, of course, is a drastic curtailment of freedom as opposed to the inmate who is on work release. Therefore, the courts cannot define what constitutes atypical confinement with significant hardships without looking at the level where plaintiff existed in the system prior to the imposition of additional restraints. The Court finds that here, as used in this case, the four-point restraint system at the Piedmont Correctional Institution was merely a supplemental restriction -- an expected step in the consequences which an inmate must expect and accept upon being disruptive when housed in segregation.

To the extent that plaintiff argues that four-point[*10] restraints can only be used in the context of a general prison disturbance involving other inmates, the Court rejects that view for the reasons expressed above. The Court also rejects plaintiff's argument that maintaining the restraints for forty-eight hours was too long. First, plaintiff fails to offer evidence as to what would constitute an appropriate time for use of four-point restraints. Second, defendants' affidavits, particularly Dr. Haigwood's, do in fact present evidence supporting the appropriateness of the time period. Plaintiff admits the video tape discloses that while he was waiting to be put in the four-point restraints he was undeniably obscenely taunting officers. To the extent plaintiff suggests that the four-point restraints may only be used when he is actively being disruptive, the Court rejects the argument. To the extent plaintiff claims he can act violent one minute and then as soon as he stops such conduct that all disciplinary process must cease, the Court rejects that solution as not just unworkable, but one likely to encourage more calculated disruption.

As noted earlier, plaintiff does rely on the Fourth Circuit's decision in *Williams v. Benjamin, 77*[*11] *F.3d 756.* There, the court granted summary judgment to defendants on all claims except that the officers may

have "violated the Eighth Amendment by retaining him [plaintiff] in four-point restraints in a mace filled cell for eight hours, without allowing him to wash off the mace or providing him with any medical care, or even the use of a toilet." *Id. at 770.* This case does not help plaintiff because, as noted earlier, in the instant case, plaintiff was not subjected to such harsh conditions. He received immediate and constant medical attention, use of bathroom facilities and was permitted to eat. Therefore, even though plaintiff's confinement was forty-six hours, it was not close to the more severe conditions set out in Williams. In the instant case, plaintiff had much greater and more frequent freedom of movement and relief from the restraints.

Furthermore, the Court is persuaded by the decision of the Eastern District in *Price v. Dixon, 961 F. Supp. 894 (E.D.N.C. 1997).* In that case, the plaintiff was also in a single-cell segregation unit when he exhibited aggressive and disruptive behavior. He was sprayed with mace and then put in four-point restraints after he[*12] threw urine at a guard. As in the instant case, Price's condition was checked every fifteen minutes and he was released regularly for bathroom and meal breaks. He was confined in this situation for twenty-eight hours. The court found that the guards were entitled to qualified immunity with respect to the Eighth Amendment issue as to whether the use of four-point restraints deprived a prisoner of a basic human need which was objectively serious and whether the defendants acted with a culpable state of mind. It based its decision on a finding that placement of prisoners in four-point restraints in 1994 was not clearly established. Indeed, the court cited *Williams v. Benjamin, 77 F.3d 756,* as standing for the proposition that four-point restraints are both necessary and proper if correctly done. This Court agrees.

First, there is no indication that the employment of four-point restraints in this case violates the Eighth Amendment. Second, as of May 1995, the use of four-point restraints was not prohibited. In *Williams v. Benjamin, 77 F.3d 756,* the court found that imposition of such restraints would seemingly be a not uncommon next step if verbal commands, show of force, and[*13] mace were ineffective in controlling prisoners. Admittedly, it also stated that it was of the opinion that "restraints undoubtedly impose a significant threat of physical injury." *Id. at 764.* That statement may well have been true on the facts before it, but there is no evidence that such would be a likely result based on the facts in this case. In fact, the four-point restraint system would appear to have much less threat of physical injury to highly disruptive inmates, short of placing a prisoner in a padded cell, and even in a padded cell one would have to worry about how to feed or provide restroom facilities to such an inmate. Therefore, the Court finds that plaintiff's complaint of Eighth Amendment violation may be dismissed on the merits and also on defendants' request for qualified immunity.

Next, plaintiff claims that his rights under the regulations and statutes of North Carolina were violated and this implicated his right to due process. However, the Fourth Circuit in *Williams v. Benjamin, 77 F.3d 756,* disposed of that argument. It arguably found that the State of Maryland might have created a liberty interest with respect to its four-point restraint regulations. [*14] However, as noted earlier, this Court finds that the facts of this case do not provide support for such a conclusion as to the State of North Carolina. Second, even in Williams the court declined to find a procedural due process violation with respect to the use of four-point restraints in that case. It noted that procedural due process standards would be difficult to formulate in a situation where guards are responding to a disturbance situation, as in the instant case. It, therefore, declined to impose pre-deprivation protection and found that plaintiff had failed to show that post-deprivation state remedies were not adequate. The Court in *Price v. Dixon, 961 F. Supp. 894,* dismissed on the same basis and the Court agrees with that decision as well.

Plaintiff did not specifically oppose defendants' motion to dismiss the state law claims. Moreover, there is no showing that defendants, in fact, violated their own regulations and that such regulations would provide a cause of action under state law. In *Price v. Dixon, 961 F. Supp. 894,* the court noted that a general allegation that plaintiff's rights under the regulations and statutes of the state were violated is not a[*15] sufficient recitation to state a claim for relief. This Court would also agree.

To the extent plaintiff claims that he has been subjected to false imprisonment, the State replies that the applicable statute of limitations is contained in N.*C.G.S. § 1-54(3)* which has a one-year limitation period. It requested dismissal on the grounds that the incident took place in May 1995 and the complaint was not filed until August 1996. Plaintiff fails to show that dismissal of the state law claim for false imprisonment would not be proper for being barred by the statute of limitations.

For all the above reasons,

IT IS ORDERED that defendants' motion for summary judgment (docket no. 18) is granted as to all claims and that this action be, and the same hereby is, dismissed.

Russell A. Eliason

United States Magistrate Judge

June 19, 1998

JUDGMENT

Eliason, Magistrate Judge

For the reasons set out in an Order filed contemporaneously with this Judgment,

IT IS ORDERED AND ADJUDGED that defendants' motion for summary judgment (docket no. 18) is granted as to all claims and that this action be, and the same hereby is, dismissed.

Russell A. Eliason

United States[*16] Magistrate Judge

June 19, 1998

EUGENE JOHNSON, JR., PRO SE, TDCJ-ID # 723701, Previous TDCJ-ID # 633224, Plaintiff, v. ROBERT D. GILMORE, CLIFFORD L. LEWIS, AL J. MARKS, and JOSEPH K. PRICE, Defendants.

2:00-CV-0363

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION

2003 U.S. Dist. LEXIS 9863

June 10, 2003, Decided
June 11, 2003, Filed

DISPOSITION: [*1] Magistrate recommended that the Civil Rights Complaint be dismissed as frivolous and for failure to state a claim on which relief may be granted.

CORE TERMS: recommendation, recreation, inmate, frivolous, prisoner, minimis, cell, cellmate, prison, use of force, repugnant, chemical, complains, nurse, nose, constitutional violation, governmental entity, unusual punishment, civil rights, plain error, pro se, questionnaire, deprivations, conscience, infirmary, malicious, arguable, sprayed, failure, mankind

COUNSEL: Eugene Johnson, Jr, PLAINTIFF, Pro se, Angleton, TX USA.

JUDGES: CLINTON E. AVERITTE, UNITED STATES MAGISTRATE JUDGE.

OPINIONBY: CLINTON E. AVERITTE

OPINION: REPORT AND RECOMMENDATION

Plaintiff EUGENE JOHNSON, JR., acting pro se and while incarcerated in the Texas Department of Criminal Justice, Institutional Division, filed suit pursuant to Title *42, United States Code, section 1983* complaining against the above-named defendants and has been granted permission to proceed in forma pauperis.

Plaintiff complains that, on July 22, 2000, he was subjected to cruel and unusual punishment in violation of the *Eighth Amendment* when defendants GILMORE and LEWIS implemented a use of chemical force on plaintiff's cellmate, sprayed the cell, denied plaintiff recreation, and did not take plaintiff to the infirmary. Plaintiff alleges "medical refuse me treatment" afterwards.

Plaintiff requests an award of $50,000.00 [*2] for physical harm and $50,000.00 for the denial of medical treatment.

JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs, 892 F.2d 438, 440 (5th Cir. 1990)*, if it is frivolous n1, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *28 U.S.C. 1915A*; *28 U.S.C. 1915(e)(2)*. The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. *42 U.S.C. 1997e(c)(1)*. A Spears hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos, 926 F.2d 480, 483 n.4 (5th Cir. 1991)* n2.

   n1 A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce, 2 F.3d 114, 115 (5th Cir. 1993)*; see, *Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992)*.

[*3]

   n2 Cf, *Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir. 1986)* ("Of course, our discussion of Spears should not be interpreted to mean that all or even most prisoner claims require or deserve a Spears hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the Watson questionnaire.").

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff both in his original complaint and in his February 12, 2001, response to the Court's Questionnaire to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

LAW AND ANALYSIS

Plaintiff states defendant GILMORE ordered plaintiff's cellmate to remove his arm from the bean slot and, when his cellmate failed to do so, GILMORE sprayed the cell. After being taken out of the cell to fresh air, plaintiff was returned to the cell and was not taken to recreation. Plaintiff does not state he was prevented from washing the spray off his skin or clothing [*4] but that he was not informed when the shower came on. He says no one took him to the infirmary, although a nurse came to his cell to determine that his lungs were clear. Plaintiff states his nose blistered inside and still bleeds when he blows it. Plaintiff says when he went to sick call two weeks later and informed a nurse, the nurse examined his nose and stated his nose looked as if he had snorted something; however, he complains, he was not given any treatment.

Plaintiff states he is suing defendant PRICE because he is responsible for how the officers run the unit and because he never acknowledged plaintiff's letter of complaint. Plaintiff sues defendant MARKS because, he says, it is MARKS responsibility to ensure that the medical department follows all health rules. Plaintiff sues defendant LEWIS for failure to monitor GILMORE and ensure GILMORE follows all policies and rules. Plaintiff sues GILMORE for use of force which was not in compliance with TDCJ-ID policies and rules.

The malicious and sadistic use of force to cause harm violates contemporary standards of decency; however, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. [*5] *Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)*. A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088, 89 L. Ed. 2d 251 (1986)*, is excluded from the *Eighth Amendment's* prohibition of cruel and unusual punishment and is considered to be de minimis.

The instant case is similar to the claims asserted in *Baldwin v. Stalder, 137 F.3d 836 (5th Cir. 1998)*, in which the Fifth Circuit found no violation of the *Eighth Amendment* when chemical force was used on a bus loaded with inmates, even though only one or two of the inmates was being disruptive and even though the inmates were then denied the ability to wash off the pepper spray. Plaintiff has alleged defendant GILMORE first ordered plaintiff's cellmate to remove his hand from the beanslot, but the order was disobeyed. Only then did defendant GILMORE use chemical force in what appears to have been an attempt to re-establish security and discipline. Further, the only injury plaintiff suffered was de minimis. Compare, *Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)* [*6] (finding a single blow to the head causing a contusion to be de minimis and not repugnant) and *Candelaria v. Coughlin, 787 F. Supp. 368, 374 (S.D.N.Y. 1992)* (allegation of single incident of guard using force to choke inmate distinguished from injuries alleged in Hudson), both cited with approval in *Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)* (spraying inmate with fire extinguisher found to be de minimis and not repugnant to conscience of mankind); see, also. *Knight v. Caldwell, 970 F.2d 1430, 1432-33 (5th Cir. 1992)* (interrogatory in civil rights suit requiring jury to determine whether arrestee suffered "injury" as result of alleged use of excessive force before considering issue of damages found reasonable and not plain error). The force of which plaintiff complains is clearly de minimis and outside the scope of the *Eighth Amendment.*

In addition, plaintiff's complaint that he was denied recreation on that single occasion does not state a valid constitutional claim. Plaintiff may feel he was wrongly punished without any disciplinary charge or hearing; however, a prisoner has a liberty interest only in [*7] "freedom[s] from restraint ... imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the duration of confinement. *Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)*(quoting *Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 2294, 132 L. Ed. 2d 418 (1995)*) n3. Consequently, absent repeated denial of recreation such as to created unconstitutional conditions of confinement, plaintiff has no federally protected due process right to engage in recreation each time it is scheduled. Thus, plaintiff's claim based on a single missed occasion of recreation lacks an arguable basis in law and is frivolous. *Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*.

> n3 The Sandin Court expressly recognized the unusual deprivations in *Vitek v. Jones, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980)* (transfer to a mental hospital), and *Washington v. Harper, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)*(forcible administration of psychotropic drugs), also involved a liberty interest.

[*8]

Plaintiff's claims against defendants LEWIS, MARKS, and PRICE are all based on the supervisory capacities of these defendants. However, without an underlying constitutional violation by defendant GILMORE, plaintiff's allegations against defendants LEWIS, MARKS, and PRICE cannot state a claim of constitutional dimension. Further, plaintiff utterly fails to

allege any fact showing personal involvement by these officials and has alleged no fact showing any causal connection between their acts or omissions and the alleged constitutional violation. Consequently, plaintiff's allegations against these defendants fail to state a claim on which relief can be granted. *Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 314 (5th Cir. 1999)*; *Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987)*; *Douthit v. Jones, 641 F.2d 345, 346 (5th Cir.1981)* (per curiam).

CONCLUSION

Pursuant to Title *28, United States Code, sections 1915A and 1915(e)(2)*, as well as Title *42, United States Code, section 1997e(c)(1)*, it is the RECOMMENDATION of the Magistrate Judge to the United States District [*9] Judge that the Civil Rights Complaint filed pursuant to Title *42, United States Code, section 1983*, by plaintiff EUGENE JOHNSON, JR., BE DISMISSED WITH PREJUDICE AS FRIVOLOUS AND FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

The United States District Clerk shall mail a copy of this Report and Recommendation to plaintiff and to each attorney of record by certified mail, return receipt requested. Any party may object to the proposed findings and to the Report and Recommendation within fourteen (14) days from the date of this Order. *Rule 72, Federal Rules of Civil Procedure*, and Rule 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Any such objections shall be in writing and shall specifically identify the portions of the findings, recommendation, or report to which objection is made, and set out fully the basis for each objection. Objecting parties shall file the written objections with the Clerk of the Court and serve a copy of such objections on the Magistrate Judge and on all other parties. The failure to timely file written objections [*10] to the proposed factual findings, legal conclusions, and the recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996)*(en banc).

IT IS SO RECOMMENDED.

ENTERED THIS 10th DAY OF JUNE 2003.

CLINTON E. AVERITTE

UNITED STATES MAGISTRATE JUDGE