UNITED STATES DISTRICT COURT **FILED**

DISTRICT OF CONNECTICUT 2004 JUN 24 P 6 03

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

COREY T. BROOKS #237651
PRO-SE PLAINTIFF

VS.

CASE NO. 3:03CV00544(WWE)(HBF)

LARRY MYERS (ET AL)
DEFENDANTS

AFFIDAVIT IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

COREY T. BROOKS, BEING DULY SWORN, DEPOSES AND SAYS:

2. I AM THE PLAINTIFF IN THE ABOVE ENTITLED CASE. I MAKE THIS AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MY CLAIMS CONCERNING THE USE OF UNNECESSARY USE OF FORCE AGAINST ME, AND DENIAL OF ADEQUATE MEDICAL CARE AND THE DENIAL OF PROCEDURAL DUE PROCESS.

2. THE DEFENDANTS' AFFIDAVITS CLAIM, IN SUMMARY, THAT THEY ORDERED ME TO TAKE COVERING OFF CELL WINDOW, THAT I REFUSED, AND FORCE HAD TO BE USED. THEY CLAIM THAT WHEATHER I PUT THE COVERING ON THE WINDOW OR NOT, I WAS REQUIRED TO REMOVE IT. THEY CLAIM I WAS GIVEN A SHOWER TO DECONTAMINATE AND FOR MY RECAL CITRANT BEHAVIOR I HAD TO BE PLACED IN IN-CELL

MY SKIN WHILE ON IN-CELL RESTRAINT STATUS.

3. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT TO BE RESOLVED. THESE ISSUES ARE IDENTIFIED IN THE ACCOMPANYING STATEMENT OF DISPUTED FACTUAL ISSUES FILED BY THE PLAINTIFF PURSUANT TO THE LOCAL RULES OF THIS WORK (B) DISTRICT COURT. THE FACTS ARE SET OUT IN THIS AFFIDAVIT.

4. ON AUGUST 13, 2002 I WAS REMOVED FROM THE CLOSE COSTODY UNIT AT NORTHERN C.I AND PLACED INTO ADMINISTRATIVE SEGREGATION WITH (BY WARDEN MYERS) OUT WARNING OR A HEARING. I DID NOT HAVE A HEARING UNTIL SEPTEM- 2002 BER 6, SEE ATTACHED DOCUMENT OF HEARING NOTICE AS EXHIBIT 1, SEE ALSO DIRECTIVE REFERENCE 9.4.1 RESTRICTIVE STATUS. AS EXHIBIT 2, SEE APPEAL LETTER RESPONCE FROM CLASSIFICATION MANAGMENT MY PLACEMENT ON ADMINISTRATIVE SEGREGATION WAS NOT AUTHORIZED UNTIL SEPTEMBER 13, 2002, ATTACHED HERETO AS EXHIBIT 3.

UPON BEING PLACED INTO ADMINISTRATIVE SEGREGATION, WHILE ON ADMINISTRATIVE DETENTION, I WAS PUT IN A CELL WITH AN INMATE ROBINSON WHO WAS ON ADMINISTRATIVE SEGREGATION STATUS AND A THRE- AT TO THE STAFF AND INMATE POPULATION.

5. ON AUGUST 26, 2002 AT ABOUT 2:59 PM, INMATE ROBINSON WAS GIVEN A DISCIPLINARY REPORT AND PLACED A COVERING OVER CELL WINDOW. DEFENDANTS MANLEY AND KNAPP WERE THEN INFORMED

THAT INMATE ROBINSON WAS ANGRY WITH AN ~~OFFICE~~ (B) OFFICER YOUNG BY CAPTAIN BUTLER AND THAT INMATE ROBINSON COVERED CELL WINDOW. SEE PAGE 2 OF INCIDENT REPORT ATTACHED HERETO AS EXHIBIT 4.

6. DEFENDANTS MANLEY, AND KNAPP CAME TO CELL DOOR AND ORDERED IN-MATE ROBINSON TO TAKE COVERING DOWN AND THEN LEFT THE ~~TIER~~.

7. DEFENDANTS MANLEY AND KNAPP CAME BACK TO CELL DOOR MINUTES LATER AND ASKED PLAINTIFF AND ROBINSON TO REMOVE COVERING FROM CELL WINDOW IN WHICH PLAINTIFF COMPLIED BUT WAS STOP WHEN HE WAS STRUCK WITH AN OPEN HAND BY ROBINSON. WHO THEN STATED TO DEFEN-DANTS HE'S NOT LETTING ANYONE TAKE ANYTHING DOWN THAT HE HAD TWO PENS AND WOULD STAB PLAINTIFF IN THE FACE IF I TRYED TO TAKE COV-ERING DOWN.

8. DEFENDANTS MALEY AND KNAPP TAUNTED INMATE ROBINSON WHI-CH MADE HIM REALLY NOT WANT TO COOPERATE, LT. KNAPP MADE A BET WITH ROBINSON THAT HE WOULD GIVE UP AND OWE KNAPP A BAG OF JOLLY RANCHERS.

9. THESE DEFENDANTS (BUGSIEWICS, MALEY) STILL INSISTED ON GETTING THE PLAINTIFF TO JEOPARDIZE HIS OWN SAFTY AND TAKE THE COVERING OFF THE WINDOW. WHETHER I PUT IT THERE OR NOT OR IF I WOULD BE ASSAULTED (IF I TOOK IT DOWN).

10. DEFENDANT MANLEY THEN OPENED TRAP SLOT ROBINSON THREW WATER OUT THE SLOT THEN DEFENDANT MALEY BEGAN TO USE TEAR GAS (CAP-STUN) KNOWING THAT PLAINTIFF WAS NEVER AT ANYTIME BEING REBELLIOUS, DISRUPTIVE OR BREAKING ANY PRISON RULES AND WAS COMPLING WITH DEFENDANT MANLEYS' ORDERS. SEE PAGES 2 & 3 OF INCIDENT REPORT AS EXHIBIT 5

11. DEFENDANT, MANLEY USED THIS CAP-STUN REPEATEDLY ON ME IN A CELL THAT WAS POORLY VENTILATED, AND EVEN THOUGH I WAS NOT THE CAUSE OF THIS INCIDENT, I WAS STILL SUBJECTED TO THE EFFECTS OF MACE (CAP-STUN). WHILE DEFENDANTS BUTLER AND BUCSTEWICS LOOKED ON AND DID NOTHING. SEE VIDEO TAPE OF INCIDENT.

12. ONCE ROBINSON AND I BOTH WERE CUFFED UP AND SITUATION WAS UNDER CONTROL. I WAS LEFT IN THIS HEAVILY CONTAMINATED CELL FOR TWENTY MINUTES HAND CUFFED WITH TRAP SLOT CLOSED WHEN I SHOULD HAVE BEEN REMOVED IMMEDIATELY ONCE RESTORATION OF CONTROL. SEE ADMINISTRATIVE DIRECTIVE 6.5 USE OF FORCE AS EXHIBIT 6 ATTACHED HERETO.

13. FROM THE TIME THE EXTRACTION TEAM WAS CALLED IT TOOK THEM 30 TO 35 MINUTES TO ASSEMBLE WHICH CAUSED THE PLAINTIFF TO BE LEFT IN CONTAMINATED CELL, WITH MACE BURNING HIS EYES AND SKIN. SEE VIDEO TAPE OF INCIDENT.

14. DEFENDANT, BUCSIEWICS PROMPTED DEFENDANT MALEY TO REMOVE THE PLAINTIFF FROM THE CONTAMINATED CELL, ONCE PLAINTIFF AND ROB INSON WERE CUFFED UP BEHIND THE BACK, AND DEFENDANT MALEY STATES NO THEY CAN WAIT. SEE VIDEO TAPE OF INCIDENT

15. TWENTY MINUTES WENT BY BEFORE I WAS REMOVED FROM CON-TAMINATE CELL BY EXTRACTION TEAM AND NOT PROPERLY DECONTAMINATED BY ONLY BEING ALLOWED TO PLACED MY FACE UNDER SOME HOT WATER. SEE VIDEO TAPE OF INCIDENT.

16. EVEN THOUGH THE PLAINTIFF WAS NOT APART OF THIS DISRUPTIVE BEHAVIOR I WAS STILL FORCED TO UNDER GO THE HARDSHIP OF EIGHT-TEEN HOURS OF IN-CELL RESTRAINTS, SHAKLED AND HANDCUFFED WITH A TEATHER CHAIN IN THE MIDDLE WHICH MAKES IT IMPOSSIBLE TO MOVE OR SLEEP. WITH MACE STILL BURNING HIS FACE AND SKIN WHICH RESULTED IN HIS INJURIES SEE MEDICAL REQUEST & GRIEVANCE ATTCHED HERETO AS EXHIBIT 9.

17. WHILE PLAINTIFF WAS SUFFERING THE HARDSHIPS OF IN CELL RESTRAINT HE COMPLAINED TO DEFENDANT BADURA THAT THE MACE HAD REACTIVATED BUT WAS TOLD THAT I SHOULD NOT HAVE BEEN MISBEHAVING AND THAT I WOULD HAVE TO DEAL WITH IT. SEE AFFIDAVIT FROM INMATE ROBINSON ATTACHED HERETO AS EXHIBIT 7.

18. THE PLAINTIFF WAS FOUND NOT GUILTY THE FOLLOWING MORNING OF ANY VIOLATING ANY PRISON RULES SEE DISIPLINARY REPORT OF THIS INCIDENT ATTACHED HERETO AS EXHIBIT 8.

19. CONTRARY TO DEFENDANTS' AFFIDAVITS, DURING THESE EVENTS I DID NOT RESIST OR BREAK ANY PRISON RULES AND TRIED TO COMPLI WITH ANY GIVEN ORDERS. PLAINTIFF SHOULD HAVE NEVER BEEN IN ADMINISTRATIVE SEGREGATION AND HE WOULD HAVE NOT BEEN SUBJECTED TO THESE HARDSHIPS DISCRIBED HEREIN.

20. THE FOR GOING FACTUAL ALLEGATIONS CREATE A GENUINE ISSUE OF MATERIAL FACT AND WILL, IF PROVED AT TRIAL, ENTITLE ME TO JUDGMENT, AS EXPLAINED IN THE BRIEF SUBMITTED WITH THIS AFFIDAVIT

COREY BROOKS # 237651
CHESHIRE CORR. INST.
900 HIGHLAND AVE
CHESHIRE, CT 06410

SWORN TO BEFORE ME THIS
15th DAY OF June 2004
Exp: 1/31/05
NOTARY PUBLIC

# CERTIFICATION

I HEREBY CERTIFY THAT A COPY OF THE FORGOING AFFIDAVIT AND
EXHIBITS WERE MAILED ON JUNE 22, 2004 TO:


ASSISTANT ATTORNEY
        GENERAL
ANN E. LYNCH
110 SHERMAN STREET                   BY COREY T. BROOKS #237651
HARTFORD, CT 06105                        PRO-SE LITIGANT
                                     Corey Brooks
                                     CHESHIRE CORR. INST.
                                     900 HIGHLAND AVE
                                     CHESHIRE, CT 06410



# Restrictive Status Report of Hearing
# for Placement or Removal, Page 1
### Connecticut Department of Correction

Cn 9402
Attachment D
Rev. 9-8-95

Facility: Northern CI

| Inmate name: Brooks, Corey | Inmate number: 237651 |
|---|---|

Hearing: ☒ Administrative Segregation　　☐ Close Custody for CD　　☐ Close Custody for SRGTMs

## SECTION 1: HEARING

| Date: 9/6/02 | Time:  10:05 am |
|---|---|
| Hearing Officer: Mark Grenier, CC | Recorder:Steve Clapp, CC |

☒ Advocate requested by inmate　　☐ Advocate not requested　　☐ Advocate not requested, but assigned

| Advocate:Brian Bradway, CC | |
|---|---|

Summary of Placement Rationale:
On July 30, 2002, you transferred from Greensville, VA back to Northern CI for the Close Custody program. Since that time, you have received eight (8) disciplinary reports for Threats, Interferring w/ Safety & Security, two (2) Fighting and four (4) Disobeying Direct Order. Per Directive 9.2 Section 12 Subsection C7: "Continues to present a threat to safety, security and/or orderly operation after one (1) year in Close Custody for Security Risk Groups", will be reviewed for level 5 placement.

| 1. Staff witness name: N/A | 1. Title: N/A |
|---|---|
| 1. Staff witness statement: N/A | |
| 2. Staff witness name: N/A | 2. Title: N/A |
| 2. Staff witness statement: N/A | |

Inmate Statement:
"I am down here on a fighting ticket. When I got that ticket, I was almost 6 months DR free. I don't believe  I belong down here. If I go back to SRG, I am thru catching tickets."

| Inmate witness name: N/A | Inmate number: N/A |
|---|---|

Inmate witness statement:
N/A

*EXHIBIT 1*

# NOTICE OF ADMINISTRATIVE SEGREGATION HEARING

NAME: Brooks, Corey                NUMBER: 237651

A hearing will take place on  Sept. **6**, 2002  at  9:45am  to determine
                                      (Date)                  (Time)
whether or not your presence in general population represents a threat to the
safety and security of the institutional community.

REASON FOR HEARING:    On July 30, 2001 you transferred from Greensville,
                        Virginia back to Northern CI for the Close Custody
                        program. Since that time, you have received eight (8)
                        disciplinary reports for Threats, Interfering w/ Safety &
                        Security, two (2) Fighting and four (4) Disobeying
                        Direct Order. Per Directive 9.2 Section 12 Subsection
                        C 7: "Continues to present a threat to safety, security
                        and/or orderly operation after one (1) year in Close
                        Custody for Security Risk Groups."

Therefore, a special classification hearing will be held for review to consider
you for placement on Administrative Segregation status.
If you desire a staff advocate to act in your behalf, you are to indicate this
below, in ranking order, the Advocate of your choice. A reasonable number
of relevant and non-redundant witnesses may appear on your behalf. This
hearing will determine possible placement into Administrative Segregation. If
placed into Administrative Segregation, you will be managed in accordance
with Administrative Directive 9.4, Restrictive Status, which includes but is
not limited to the provision in paragraph 5 which states that an inmate on
Administrative Segregation shall not be allowed to earn statutory good time.

| Advocate Choice: | Witnesses Requested: |
|---|---|
| CC Bradway | ← Bradway |
| CC J. Kay | |
| CTO Pelkey | |

**Advocate Declined**          **Witnesses Declined**

Delivered by CC R. DiGennaro      on 9/4/02  at 11:25AM.
              Staff name & title - print        date        time

Inmate Signature: C. Brooks

Staff Signature: R. DiGennaro

ICF and forwarded to the Unit Administrator and Director of Offender Classification and Population Management for transfer if appropriate.

12. **Placement in Administrative Segregation Status.** Restrictive Housing/Death Row Status for the purpose of Administrative Segregation or Administrative Segregation Transition Phases shall be authorized only at the Northern CI and York CI. Any facility not authorized to place inmates on Administrative Segregation shall place the inmate on Administrative Detention in accordance with this Unit Directive and notify the Inmate Classification Administrator to conduct a hearing. Placement of an inmate on Administrative Segregation shall be at the discretion of the Inmate Classification Administrator in accordance with this Unit Directive.

A. **Hearing.** An inmate shall not be placed in Administrative Segregation without a hearing. An Administrative Segregation Hearing Officer, appointed by the Inmate Classification Administrator, shall hear testimony, including the inmate's testimony, and/or testimony from the inmate's witnesses. The inmate, upon request, shall be represented by an Advocate who may call witnesses on the inmate's behalf. Procedures governing the choice of advocate and the appearance of witnesses shall be the same as those in Administrative Directive 9.5, Code of Penal Discipline. The Administrative Segregation Hearing Officer shall determine the need for witnesses. Witnesses shall be relevant and not redundant.

B. **Hearing Notice.** A written notice of the hearing shall be given a minimum of two (2) business days prior to the hearing to the inmate being considered for placement on Administrative Segregation. The notice shall state as explicitly as possible, consistent with the protection of any informant, why Administrative Segregation is being considered. The notice shall contain information that the inmate may be represented by an Advocate and that the inmate may request witnesses. The inmate may waive the notice provision in writing; however, the Administrative Segregation Hearing Officer may choose not to honor the waiver.

C. **Recommendation.** The Administrative Segregation Hearing Officer shall provide a written recommendation utilizing the Restrictive Status Report of Hearing for Placement or Removal Form, CN 9402, Attachment D, including the information which was relied upon and the reasons for or against placement in Administrative Segregation.

| Directive Reference 9.4.1 | Effective Date March 20, 2001 | Page 12 of 16 |
|---|---|---|
| Title      RESTRICTIVE STATUS | | |

Any confidential information shall be maintained in a file which is not accessible to any inmate. The use of confidential information, along with any assessment of its reliability, shall be included with the Restrictive Status Report of Hearing for Placement or Removal Form, Attachment D, as a

separate attachment.

D.    **Decision.**  The completed Restrictive Status Report of Hearing for Placement or Removal Form, Attachment D, shall be forwarded to the Inmate Classification Administrator within three (3) business days following the hearing. The Inmate Classification Administrator shall make a decision and inform the Complex Warden, Unit Administrator and the inmate within 30 calendar days of the inmate's initial placement on Administrative Detention or Punitive Segregation.

E.    **Automatic Placement.**  Automatic Placement of an inmate on Administrative Segregation in accordance with Administrative Directive 9.2, Inmate Classification shall require a hearing to be conducted in accordance with the above provisions.

F.    <u>Release.</u>   Release from Administrative Segregation or Administrative Segregation Transition Phases shall be in accordance with Attachment B by completing the appropriate section of the Restrictive Housing Report of Hearing for Placement or Removal Form, CN 9402, Attachment D.

13.    <u>High Security Monitoring</u>.  An investigation shall be conducted by the unit administrator or designee to determine if an inmate may be considered a High Security inmate. The unit administrator, in consultation with the Director of offender Classification and Population Management, may consider an inmate as a High Security inmate if the inmate meets one or more of the criteria listed below. A High Security inmate shall be overall risk level 4 or above. A High Security Inmate shall be housed in a Level 4 or 5 facility. Classification of an inmate as a High Security Inmate shall not preclude, and may be used in conjunction with, placement in any other restrictive status.

A.    <u>Review Procedures</u>.  ▮Northern CI▮ Shall establish procedures to review each inmate, consistent with classification practices, to determine if an inmate shall be considered as a High Security Inmate.

B.    <u>Criteria for Placement</u>. An inmate may be classified as a High Security Inmate for any of the following reasons:

| Directive Reference 9.4.1 | Effective Date March 20, 2001 | Page 13 of 16 |
|---|---|---|
| Title        RESTRICTIVE STATUS | | |

1.    Has a staff threat profile, including but not limited to, hostage taking, level 1 assault, and/or murder of a Department of Correction or other law enforcement staff member.

2.    Has a facility threat profile, including but not limited to, history of leading food strikes or work stoppages and/or





# STATE OF CONNECTICUT

*DEPARTMENT OF CORRECTION*

**OFFENDER CLASSIFICATION & POPULATION MANAGEMENT UNIT**
*1151 East Street South*
*Suffield, Connecticut 06078*


October 31, 2002

Corey Brooks #237651
Northern CI
287 Bilton Rd.
Somers. CT 06071

Dear Mr. Brooks,

This will acknowledge receipt of your correspondence received here on October 28, 2002 concerning your appeal of your placement on Administrative Segregation at the Northern CI.

Please be advised that I have reviewed your case.  My investigation reveals that on August 20, 2002 Warden Myers recommended your placement on Administrative Segregation as a Close Custody for Security Risk Group Threat Member failure. The cause for this recommendation was due to your poor disciplinary behavior while in the Close Custody program.  I authorized your placement on Administrative Segregation on September 13, 2002.  I find no reason to alter my decision.

I urge you to modify your behavior and to participate in all programming at the Northern CI.

I will, via copy, apprise Warden Myers of this correspondence.

Sincerely,

Fred Levesque, Director
Offender Classification &
Population Management

FL/iv

Cc:    Warden Larry Myers, Northern CI
        OCPM, Administrative Segregation file

EXHIBIT 4

# Incident Report – Page 1

CN6601
04-04-02

☐ Individual
☒ Summary

## Connecticut Department of Correction

| Facility / CEO | NORTHERN C.I. | Incident location | 1E112 | Report No. | 020806 3 |

| Incident Class | ☐ 1 ☒ 2 ☐ 3 | Type | F | Date | 8-26-02 | Time | 2:59pm | ☐ a.m. ☒ p.m. |

| Prepared by | Manley, K | Title | Lieutenant |

| Inmate Name (last and first) | Hsg unit | Race | ID no. | Status | Staff Name (last and first) | Race | Title | Status |
|---|---|---|---|---|---|---|---|---|
| Robinson, Vernon | 1E112b | B | 280966 | S | Manley, Kevin | W | LT | EW |
| Brooks, Corey | 1E112a | B | 237651 | W | Butkiewicus, Dave | W | LT | EW |
| ----------Additional Staff---- | Race | Title | Status | -------- | Keeney, William | W | CO | EW |
| Dudley, Colleen | W | CN | EW | -------- | Pafumi, Mike | W | CO | EW |
| Jones, Mike | W | CO | EW | -------- | Rivera, Eduardo | H | CO | EW |
| Howes, Jeremy | W | CO | EW | -------- | Rae, Bryan | W | CO | EW |

**Status Code:**  V = victim, S = suspect, E = escape, R = first employee responder, W =inmate witness, EW = employee witness

**Race Code:**  W =White, B =Black, H =Hispanic, N = Native American, O =Other

Narrative:

On 8-26-02 This writer was assigned as an evening watch supervisor at Northern Correctional Institution. At approximately 2:59pm I was summoned to the 1 East housing unit by Captain M. Butler (1East & 1West Unit Manager). Upon arriving in the unit I was informed by Capt. Butler that I/M Vernon Robinson #280966 and Corey Brooks #237651 had covered the window of cell 112. Both inmates were housed in cell 112 b &112a respectively. Captain Butler informed me that I/M Robinson was an active participant in covering the window of the cell. Captain Butler educated me that I/M Robinson had covered his window because he thought that Officer Young, K had removed a poem from his mail on 8-25-02 when she collected mail from his cell. Robinson stated that when Officer Young collected mail on the evening watch 8-25-02 that she may have removed a poem from his envelope and he felt disrespected by that. Officer Young denied the allegations and stated to me that she never removed the poem. She said Robinson's mail was secured in the appropriate unit mailboxes. Robinson admitted that he had in fact covered the window because of his belief. I approached that cell and instructed I/M Robinson to remove the obstruction covering his cell window. Robinson failed to comply. I informed Robinson that his failure to comply would result in him being placed on In-Cell Restraints Robinson again failed to comply with direction. Officer Williams, T was designated as the camera operator for the incident. At this time I exited the tier to assemble an extraction team. The extraction team was to be utilized due to the fact that I had learned that I/M Robinson had a mattress against the cell door and was barricaded in cell 112.

| Reporting employee signature | Manley, K | Title | Lieutenant |

| Report date | 8-26-02 | Report time | 8:24pm | ☐ a.m. ☒ p.m. | Type | ☐ Individual | ☒ Summary |

## FOLLOW - UP

| Property Damage | None | | Value $ | N/A |

| Contraband recovered | No |

| Physical force | Yes | Chemical agents | Yes | Restraints | Yes |

Assigned to:
☐ Protective Custody    ☐ Isolation    ☐ Medical
☐ Administrative detention    ☐ Outside Hospital  _____
☐ 15 – minute watch    ☒ Other  IN-CELL RESTRAINTS

EXHIBIT B PG. 1 OF 2

CN6601

# Incident Report – Page 2

03-08-96

## Connecticut Department of Correction

### CONTACTS

| | | Date | | Time | | a.m. | p.m. |
|---|---|---|---|---|---|---|---|
| Unit Administrator | Major Lajoie | Date 8-26-02 | | Time 4pm | | a.m. ☐ | p.m. ☐ |
| Lead Warden | | Date | | Time | | a.m. ☐ | p.m. ☐ |
| Central Office | | Date | | Time | | a.m. ☐ | p.m. ☐ |
| Outside Agency | | Date | | Time | | a.m. ☐ | p.m. ☐ |
| Police/Fire | | Date | | Time | | a.m. ☐ | p.m. ☐ |
| C.I.S.R.T. (Critical Incident Stress Response Team) | | Date | | Time | | a.m. ☐ | p.m. ☐ |

### OTHER ATTACHED REPORTS

☒ Use of force          ☒ Medical incident

☒ Disciplinary          ☒ Other (specify) SEE CHECKSHEET

### CRIMINAL PROSECUTION

| If a staff member was assaulted during the incident, is criminal prosecution requested? ☐ Yes ☐ No | CT State Police investigation no. |
|---|---|

**Shift Supervisor's Review:**

Due to the fact that staff was unable to observe I/M Robinson and Brooks action the safest course of action was to utilize the extraction team. As the team was being assembled this writer along with Lieutenant Butkiewicus approached cell 112. I directed both inmates Robinson and Brooks to remove the obstruction from the cell window both inmates failed to comply with the direction. Both inmates were again informed that if they failed to comply with direction chemical agent would be deployed. Both inmates refused to comply with direction. At this point Lieutenant Butkiewicus utilizing the trap shield attempted to block the trap. I unsecured the trap in an attempt to gain visual access into the cell. I/M Robinson attempted to throw an unidentified liquid substance on this writer, however due to the trap shield being present I was not struck with the liquid. I then deployed one, one-second area burst of oleoresin capsicum into cell 112 utilizing the Z-305 standard duty model unit. I/M Robinson was directed to approach the trap to be restrained. Robinson failed to comply. At this point a second area burst of oleoresin capsicum was deployed into cell 112. I/M Robinson then removed the obstruction from his cell window and turned on his cell light. Robinson was again directed to approach the trap to be restrained and failed to comply. At this point the trap was secured. I/M Robinson then approached the window and began to taunt staff. He then approached his sink, which was full of water and began to decontaminate himself. (continued on pg. 3)

| Signature | Title Lieutenant | Date 8-26-02 |
|---|---|---|

Unit administrative review: The review indicates the I/M's presented a combative, hostile environment while jeopardizing the safety of staff and each other. Numerous orders (verbal) were given both I/M's refused to comply. Chemical agent was deployed several times eventually the

| Signature | Title Mtr | Date 8/30/02 |
|---|---|---|

Central Office review: agent took effect at which point the I/M's surrendered. They were physically contact personnel. They were decontaminated and treated by medical. They were then placed in a cell awaiting restrictive housing for their actions.

| Signature | Title | Date |
|---|---|---|

# Incident Report – Supplemental Page

**Connecticut Department of Correction**

| | |
|---|---|
| 3 | of 10 |

CN6601/3
REV 4/4/02

| Facility/CEO | NORTHERN C.I. | Incident location | 1E112 | Report no. | 0208063 |
|---|---|---|---|---|---|

| Incident class | ☐ 1 ☒ 2 ☐ 3 | Type F | Date 8-26-02 | Time 2:59pm | ☐ a.m. ☒ p.m. |
|---|---|---|---|---|---|

| Prepared by | Manley, K | Title | Lieutenant |
|---|---|---|---|

**Additional narrative:**

at this point I deployed third one second burst of oleoresin capsicum into cell 112. At this point I/M Robinson approached the trap and blocked the trap with his mattress. I then attempted to deploy another burst of oleoresin capsicum into the cell however I wqas prevented partially due to the mattress. At this point I/M VBrooks was instructed to approache the door to be restrained and he complied. Once secured he returned to his bunk. Roibinson then eventually was secured in handcuffs. At point I awaited the arrival of the extraction team to the unit to take the escort of I/M Robinson and Brooks. The following staff were utilized. Officers Pafumi and Keeney under my direction escorted I/M Robinson to the unit dayroom where he was secured. Lt. Butkiewicus supervised the escort of I/M Brooks to the unit shower for decontamination. Once decontaminated the unit shower was vacated and Robinson was escorted to the shower where he was decontaminated with cool running water. Once decontaminated he was escorted to cell 103 where he was strip searched and issued non-contaminated linen and clothing. He was assessed by medical with no medical issues noted (see medical incident report). Medical staff also flushed Robionsons eyes with water. I/M Robinson was secured in cell 103 on In-Cell Restraint status without further incident. Robinson was issued a Class 'A' Disciplinary Report for Inrterfering with safety and seurtity. Robinson was placed on a custody 15 minute watch and modified meal status. Robinson property was packed inventoried and secured in the property storage room. There were no staff injuries to report as a result of this incident. The duty officer Major lajoie was notified of this incident at 4pm. Two videotapes were bagged, tagged and secured as evidence.

| Reporting employee signature | Manley,K | Title | Lieutenant |
|---|---|---|---|

| Report date 8-26-02 | Report time 8:24pm ☐ a.m. ☒ p.m. | Type ☐ Individual ☒ Summary |
|---|---|---|

infliction of serious physical injury upon another person; and (2) if, where feasible, the employee has given warning of intent to use deadly physical force.

7.    Chemical Agents.

A.    Category I Chemical Agents. A properly trained and currently certified custody supervisor, designated Community Services staff member, designated Security Division staff member and Central Transportation staff member may be authorized to routinely carry and use as appropriate a Category I chemical agent. Oleoresin Capsicum (OC) shall be authorized for use as appropriate during transportation in accordance with this Directive. A custody supervisor may authorize the issuance and use as appropriate of Category I chemical agents to trained and certified staff in accordance with this Directive. Upon the direction of a supervisor, a tactical operations team member shall be authorized to carry and use Category I chemical agents in accordance with this Directive.

B.    Category II Chemical Agents. Specially trained and designated staff may use Category II chemical agents on the authorization of the highest ranking onsite facility supervisor and subject to the direct supervision of a custody supervisor in accordance with this Directive.

C.    Decision Factors. The decision to utilize chemical agents should consider among other factors: (1) immediate danger posed by the inmate (e.g., active aggression, presence of weapons, known history of assaultive behavior); (2) potential injury to staff and/or inmate; (3) area where agent shall be employed; (4) potential exposure or impact on uninvolved persons; or (5) presence of known physical conditions which may contraindicate use, (e.g., heart or respiratory condition).

D.    Decontamination. Decontamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control. Protective equipment shall be utilized. Personal decontamination shall include at a minimum: (1) flushing of the eyes; (2) a shower and change of clothing; (3) medical attention; and (4) removal of the person from the effected area if possible.

8.    Restraints.

A.    Authorized Use. Restraints as a use of physical force may be authorized: (1) to prevent escape; (2) to prevent injury to others or self; (3) to prevent property damage; and (4) to ensure compliance with an order. An inmate placed in restraints for a period longer than one (1) hour shall be placed on restrictive status in accordance with Administrative Directive 9.4, Restrictive Housing. Use of restraints in accordance with Administrative Directives 6.4, Transportation and Community Supervision of Inmates, 9.4, Restrictive Housing, or for routine movement shall not be considered a use of physical force under this Directive.

For Corey Brooks

53

AFFIDAVIT

Subscribed and Sworn to before me, a Notary
Public in and for County of _____
and State of Connecti _____

Dec. 12. 002.

Presented By _____

NAME: V. Robinson 280966#

Adress: P.o Box 665 Somers, CT 06071

ON 8-26-02. I WAS Being Desruptive
Do To A FaBercated Disaplinary Action, The
Reporting officers underlined Below wear called
The reporting officers Are: Lieutenant Mantley, LT.
Knapp, and other Jhon Doe C/o, inconjunction
with Use of Force Rules under, 6.5 adminstrative
Directive it was vidated also The Due process
Clause. Do To my Negative Behavior my
cell mate: mR. Corey Brooks was mased
(6) Times Six cans of capstun, and Then Lefte
in The cell For The apstraction Team For
30 min. Refused Medical Attention and is
Now suffering From The Resulting affects.
and The D.O.C is Trying to act like this hiedoruse
Assalt Never happened on 8-26-02.

MARK R. SUSE
NOTARY PUBLIC
MY COMMISSION EXPIRES 03/31/2007

EXHIBIT 18
1 OF 2 PAGES

# Disciplinary Report – Page 1
## Connecticut Department of Correction

CN 9503
1-10-94

| Unit N.C.I | Report date 8-26-02 | Report no. | |
|---|---|---|---|
| **Inmate name** Brooks, Corey | **I.D. no.** 237651 | **Housing** 1E10⬤ | |
| **Location** 1E112 | **Incident date** 8-26-02 | **Time** 2:59pm | ☐ a.m. ☒ p.m. |
| **Charge** Interfering with Safet and Security | | **Class** A | |

**Description of violation:**

On the above date and time above named inmate had a covering over his cell window. The named inmate was given several lawful orders from staff and supervisors to remove the obstruction and refused to comply. The cell extraction team had to be mobilized to deal with I/M Brooks.

**Witness(es):**

**Physical evidence:**

| Reporting employee Manley | | Employee requests copy ☒ yes ☐ no | |
|---|---|---|---|
| **Title** Lt | **Date** 8-26-02 | **Time** 5pm | ☐ a.m. ☒ p.m. |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☐ **Administrative detention** | **Date** | **Time** | ☐ a.m. ☐ p.m. |
|---|---|---|---|
| ☐ **Interview accused** | ☐ **Informal disposition** | | |

| Custody supervisor / unit manager signature | | | |
|---|---|---|---|
| **Title** Lt | **Date** 8-26-02 | **Time** 5:45pm | ☐ a.m. ☒ p.m. |

## INMATE NOTICE

| Delivered by CURRAN | | | |
|---|---|---|---|
| **Title** C/O | **Date** 8/26/0c | **Time** 1135 | ☐ a.m. ☒ p.m. |

EXHIBIT # 9
3 OF 3 PAGES

CN 9504
1-14-94

# Disciplinary Process Summary Report-Page 1
## Connecticut Department of Correction

| Unit · N.C.I | Report No. NCI 0206158 | Report Date 8-26-02 | Hearing Date 8-27-02 |
|---|---|---|---|

| Inmate Name Brooks Corey | ID No. 237651 | Housing 1E 112 |
|---|---|---|

| Reporting Employee Manley | Title Lt |
|---|---|

| Investigator Smith | Advocate N/A |
|---|---|

| Inmate Appearance ☐ Yes ☐ No | Reason |
|---|---|

☐ Suspended Sentence

| ☐ Deferred Prosecution | No. of Days | Through |
|---|---|---|

| ☑ Charge Dismissed By Capt. Vinton (B) | Reason See Back |
|---|---|

Continuances (Dates and Reasons):

## SUMMARY

| | Charge | Class | Plea | Finding | Sanctions |
|---|---|---|---|---|---|
| Original | Int Sac Sec. | A | NG | — | |
| Substitute | | | | | Dismissed |

| ☐ Confidential information | Reliability |
|---|---|

| Documentation Submitted | ☐ Incident Report | ☐ Medical Incident Report |
|---|---|---|
| | ☐ Use of Force Report | ☐ Other (Specify) |

| Witness Name | ☐ Appearance |
|---|---|

Testimony:

| Witness Name | ☐ Appearance |
|---|---|

Testimony

| Witness Name | ☐ Appearance |
|---|---|

Testimony:

| ☐ Witness Exclusion | Name | Reason |
|---|---|---|

Physical Evidence, Written Testimony

EXHIBIT 9
PG
1 OF 2

# CONNECTICUT DEPARTMENT OF CORRECTION
## NORTHERN CORRECTIONAL INSTITUTION

### INMATE REQUEST FORM

Date: 2-17-2003

HOUSING UNIT:   I   II   (III)    (EAST) or  WEST        Cell # 221
(Circle One)

Inmate Name: Corey Brooks                    Number: 237661

Request: I would like to know what number am I on the list to get my right EYE checked. On the request I recieved back in november 13 2002 they told me I was sixth on the list to see the eye doctor & havent seen anyone yet, & my EYE is still puffy and swollen. SEE Attach request Dated Nov 8 2002

(Continue on back if necessary)

Submitted to: _____   Date Received: _____

Acted on by: _____

Action taken and/or response: _____

# means nothing
It is based on priorities
You are on the list, but it

Date of Response to Inmate: 2/20/03

Signature of Staff Member: _____

Was found your went 5/1/02.
Appt's are every 2 years

NCI 150

EXHIBIT 9
PG 2011
2 OF 2



# Inmate Grievance Form A, Level 1
## Connecticut Department of Correction

CN 9601 A
Rev. 1/8/0?

Inmate Name **COREY BROOKS**    Inmate no. **237651**

Facility **NORTHERN C.I**    Housing unit **3 EAST**    Date **MARCH 38, 2002**

[✓] Line grievance    [ ] Line emergency    [✗] Health grievance    [ ] Health emergency

1. Informal resolution. Attach a copy of Inmate Request Form (CN 9602) containing the appropriate staff member's response, or indicate why the form is not attached.

2. Nature of grievance. Indicate the events and reasons that led you to file this grievance. Specify dates, places, personnel involved, and how you were affected. (If you need more space, use an 8 ½ by 11 inch sheet of paper and attach it to this form.) ON AUGUST 26, 2002 I WAS SUBJECTED TO MACE AND I WAS NOT DECONTAMINATED PROPERLY I WAS ONLY ALLOWED TO PLACED MY FACE UNDER SOME WATER AND MY EYES WERE NOT FLUSHED PROPERLY BY MEDIC COLLEN DUDLEY. WHILE ON IN-ce RESTRAINTS THE MACE STARTED TO REACTIVATE AND BURN MY SKIN, EYES, AND FACE. WHEN I COMPLAINED OF THIS WHEN MEDIC STEPHEN DID HIS ROUNDS he SAID IT WAS NOTHING HE could do THAT I WOULD HAVE TO DEAL WITH IT. BECAUSE OF THIS MY EYE IS PUFFY FROM THE MACE THE MEDIC SAID I ALREADY SAW THE EYE DOCTOR SO I HAVE TO WAIT 2 YEARS

3. Action requested. Describe what action you want taken to remedy the grievance.
    I WOULD ASK THAT I SEE EYE DOCTOR
    AND HAVE SAID MEDICS REPRIMANDED

Inmate signature **Corey Brooks**

You may appeal this decision within 5 days. Use Inmate Grievance Form B.

### FOR OFFICIAL USE ONLY – LEVEL 1 REVIEW

IGP no. **M1410366**    T no.

Date received **4/4/03**    Disposition **Denied**    Date of disposition **4/4/03**

Grievance issue **Treatment**

Reasons
    You will be seen by the eye doctor when your
    turn comes up. He has a long list

Level 1 reviewer **S Hughes CHS**

## CERTIFICATION

I HEREBY CERTIFY THAT A COPY OF THE FORGOING DOCS EXHIBITS WERE MAILED ON JUNE 22, 2004 TO:

ASSISTANT ATTORNEY
      GENERAL

ANN E. LYNCH
110 SHERMAN STREET
HARTFORD, CT 06105

#237651

BY COREY BROOKS

Corey Brooks
CHESHIRE CORR. INST.
900 HIGHLAND AVE
CHESHIRE CONN. 06410