FILED

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

2004 MAY 28 P 1: 32

U.S. DISTRICT COURT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 27, 2004 |

## MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

### FACTS

Inmate Corey Brooks is a 26-year old man currently in the custody of the Commissioner of the Department of Correction. Statement of Material Facts Not In Dispute, par. 1.

He has been in and out of the Commissioner's custody since 1995. Statement of Material Facts Not In Dispute, par. 2. In September 2000, he was sentenced to ten years for violation of Connecticut General Statutes §53a-32, violation of probation, and §21a-277, Illegal, Manufacturing, Distribution and Sale of Hallucinogenic substance. Statement of Material Facts Not In Dispute, par. 3. Plaintiff was previously designated a member of the gang known as the Brotherhood. Statement of Material Facts Not In Dispute, par. 4. Plaintiff told a lieutenant at Garner that he was a member of the Brotherhood. Statement of Material Facts Not In Dispute, par. 4.

On August 12, 2002, plaintiff received a disciplinary report for fighting and he pled guilty on this disciplinary report. Statement of Material Facts Not In Dispute, par. 5. The next day, plaintiff was placed in administrative detention and moved into a cell with

inmate Vernon Robinson.  Statement of Material Facts Not In Dispute, par. 6.    After a

hearing, plaintiff was placed into administrative segregation.    Statement of Material

Facts Not In Dispute, par. 7.  Mr. Robinson was five feet three inches and plaintiff was

somewhere between five feet eleven inches and six feet one.  See redacted Inmate

Identification cards attached hereto;  Statement of Material Facts Not In Dispute, par. 8.

Inmate Robinson was "short", smaller than the plaintiff.  Statement of Material Facts Not

In Dispute, par. 9.  Plaintiff had no problems with inmate Robinson between August 13,

2002 and August 26, 2002.  Statement of Material Facts Not In Dispute, par. 10.

On August 26, 2002, inmate Robinson got angry with a female correctional

officer because inmate Robinson believed that she had thrown out a request to his

counselor.  Statement of Material Facts Not In Dispute, par. 11.  Accordingly, inmate

Robinson covered the cell window.  Statement of Material Facts Not In Dispute, par. 11.

According to the plaintiff, a correctional officer came to the door and then Lt. Manley

came to the door.  Statement of Material Facts Not In Dispute, par. 12.  Lt. Manley

ordered plaintiff to take down the cell window covering.  Statement of Material Facts Not

In Dispute, par. 13.  Lt. Manley ordered plaintiff or inmate Robinson to remove the cell

covering two or three times.  Statement of Material Facts Not In Dispute, par. 14;

Videotape.    Lt. Manley also warned both plaintiff and inmate Robinson that if the cell

covering was not removed, he would use force, including a chemical agent.  Statement of

Material Facts Not In Dispute, par. 15.  Someone yelled at Lt. Manley to "shove it up

your ass." Videotape at 3:00:30PM.

2

Lt. Manley had called for a cell extraction team. Statement of Material Facts Not In Dispute, par. 16. This takes some time to assembe as staff have to be pulled from other positions throughout the facility. Statement of Material Facts Not In Dispute, par. 16. In addition, staff have to put on special protective gear. Statement of Material Facts Not In Dispute, par. 16.

Any time a cell window is covered, staff has to be concerned about what is happening inside the cell. Statement of Material Facts Not In Dispute, par. 17. While he was awaiting the arrival of the cell extraction team, Lt. Manley went to cell 112 in an attempt to get the inmates in said cell, Robinson and Brooks to remove the window covering. Statement of Material Facts Not In Dispute, par. 18.

Knowing that Lt. Manley was going to use mace, plaintiff tied a towel around his head covering his mouth. Statement of Material Facts Not In Dispute, par. 19. Neither inmate initially responded to Lt. Manley's orders to remove the window covering. Videotape; Statement of Material Facts Not In Dispute, par. 20. Thereafter, Lt. Manley opened the food trap slot to spray the cap-stun. Statement of Material Facts Not In Dispute, par. 20. Someone threw an unknown liquid substance out of the food trap. Videotape; Statement of Material Facts Not In Dispute, par. 21. Lt. Manley then deployed one, one second burst of cap-stun. Statement of Material Facts Not In Dispute, par. 22. Inmate Robinson was ordered to remove the window covering which he refused to do. Statement of Material Facts Not In Dispute, par. 23. Accordingly, Lt. Manley deployed a second, one second burst of cap stun into the cell. Statement of Material Facts Not In Dispute, par. 24. The cap-stun was not used until after Lt. Manley issued

the warnings that the cap stun would be used if the window covering was not removed. Statement of Material Facts Not In Dispute, par. 25. After the cap-stun was sprayed, inmate Robinson removed the cell window covering. Statement of Material Facts Not In Dispute, par. 26. However, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. Statement of Material Facts Not In Dispute, par. 27. Accordingly, Lt. Manley disbursed a third burst of cap stun into the cell. Statement of Material Facts Not In Dispute, par. 28.

Lt. Manley ordered plaintiff to come to the door to be handcuffed and plaintiff complied with this order. Statement of Material Facts Not In Dispute, par. 29. Plaintiff was not concerned about being in the cell, cuffed up while plaintiff was uncuffed. Statement of Material Facts Not In Dispute, par. 30. Plaintiff testified that the mace did not affect inmate Robinson. Statement of Material Facts Not In Dispute, par. 31. According to the plaintiff, the only reason inmate Robinson cuffed up was because he thought plaintiff was having problems. Statement of Material Facts Not In Dispute, par. 32.

Thereafter, plaintiff was removed from the cell and escorted to a shower and then to the medical unit. Statement of Material Facts Not In Dispute, par. 33. A nurse asked plaintiff is he had any injuries and he shook his head no  Statement of Material Facts Not in Dispute par. 34. Two minutes later, the nurse again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set. Statement of Material Facts Not in Dispute par. 34. The plaintiff was then placed in the day room while his cell was prepared. Statement of Material Facts Not in Dispute par. 35. At no time did plaintiff

4

indicate that he was having any difficulty with after effects of the mace. Statement of Material Facts Not in Dispute par. 36.

Plaintiff was placed into in cell restraints for his failure to remove the cell window covering. Statement of Material Facts Not In Dispute. par. 37. In cell restraints consist of handcuffs in front, shackles on ankles and a tether chain. Statement of Material Facts Not in Dispute par. 37. Regardless of whether plaintiff covered his cell window, he was required to remove the cell covering when ordered to do so. Statement of Material Facts Not In Dispute, par. 37. Plaintiff's failure to remove the cell covering jeopardized safety and security of the facility. Statement of Material Facts Not In Dispute, par. 38. Staff had to pulled from other positions throughout the facility to assemble a cell extraction team. Statement of Material Facts Not In Dispute, par. 38. Thus, if a fight or riot were to break out, there would be even less staff than usual to respond to it thereby placing other inmates and staff at risk. Statement of Material Facts Not In Dispute, par. 38. Anytime, less staff is available or are pulled from posts, the safety of staff and other inmates are placed into jeopardy. Statement of Material Facts Not In Dispute, par. 38. Plaintiff could have avoided placing staff and other inmates in harms way, simply by removing a cell window covering, but did not. Statement of Material Facts Not In Dispute, par. 38.

After plaintiff was placed into in cell restraints, Nurse Dudley checked his restraints by sliding two fingers between his restraints and his limbs. Statement of Material Facts Not In Dispute, par. 39. Prior to his placement into in cell restraints, Nurse Dudley listened to plaintiff's lungs and took his vital signs. Statement of Material Facts Not In Dispute, par. 40. Plaintiff's lungs were clear, his blood pressure and respiration were normal.

Statement of Material Facts Not In Dispute, par. 40.  Nurse Stephen Badura checked in on plaintiff at approximately 8:30 PM that evening and noted that plaintiff was alert and oriented.  Statement of Material Facts Not in Dispute par. 41.  Nurse Badura did not observe any injuries on plaintiff nor did the plaintiff voice any medical complaints. Statement of Material Facts Not in Dispute par. 41.  Nurse Badura did note that plaintiff had ample spacing between his restraints and his extremities.  Statement of Material Facts Not in Dispute par. 41.

The next day when plaintiff's restraints were removed, plaintiff denied that he had any medical issues.  Statement of Material Facts Not In Dispute, par. 42.

Plaintiff never requested to press charges against inmate Robinson and indeed at his deposition stated that he did not want to press charges because he understood where inmate Robinson was coming from.  Statement of Material Facts Not In Dispute, par. 43.

Plaintiff testified that he sued Larry Myers, because he was the warden and in placing plaintiff into administrative detention, plaintiff was placed into a cell with an administrative segregation inmate.  Statement of Material Facts Not In Dispute, par. 45. Plaintiff stated that this was his only claim against defendant Myers.  Statement of Material Facts Not In Dispute, par. 45.

According to plaintiff, his only claim against Major Coates was that he had "supervisory responsibility."  Statement of Material Facts Not In Dispute, par. 46. Plaintiff could not recall any other claims he had against Major Coates.  Statement of Material Facts Not In Dispute, par. 46.  Plaintiff testified that his claims against Captain Regan were that the Captain was the second shift commander and was supposed to be

supervising the correctional officers and lieutenants. Statement of Material Facts Not In Dispute, par. 47. Plaintiff admitted that Captain Regan was not on the scene at the time the mace was used. Statement of Material Facts Not In Dispute, par. 47.

Plaintiff could not recall what Lt. Knapp, Lt. Butkiewicus did or did not do which made them liable to plaintiff for money damages in this case. Statement of Material Facts Not In Dispute, par. 48. He later said that his claims were that Lt. Butkiewicus should have stopped the macing of plaintiff. Statement of Material Facts Not In Dispute, par. 48. As to Captain Butler, initially plaintiff testified that he could not recall what Captain Butler did, but then stated that Captain Butler was liable because he was the unit manager who was supposed to supervise the correctional officers and the lieutenant. Statement of Material Facts Not In Dispute, par. 49. Plaintiff testified that C/O Howes, C/O Oberg, C/O Pafumi, and C/O Jones were part of the extraction team who removed him from his cell. Statement of Material Facts Not In Dispute, par. 50. However, plaintiff stated that he could not remember what Howes, Oberg, Pafumi and Jones did which made them liable to plaintiff for money damages Statement of Material Facts Not In Dispute, par. 50. Plaintiff testified that it was fair to say that Howes, Oberg, Pafumi and Jones did not use the cap-stun on him. Statement of Material Facts Not In Dispute, par. 50. However, plaintiff later said that it took these defendants fifteen minutes to remove him from his cell. Statement of Material Facts Not In Dispute, par. 50.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Because plaintiff cannot establish that defendants violated his constitutional rights, summary judgment should enter in favor of the defendants.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (emphasis added). The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. § 56(e).

Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See, e.g., Celotex Corp. v. Catrett 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1968); H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9,

8

12 (2nd Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Thus "[w]here the record could not lead a rational trier of facts to find for the non-moving party, there is then no 'genuine issue for trial.'" Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987).

The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of a summary judgment in favor of the defendants.

## II.    PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECTED TO EXCESSIVE FORCE

This court should enter summary judgment in favor of Lt. Manley and Lt. Butkiewicus ("Manley defendants"). Plaintiff cannot establish that the Manley defendants used excessive force against him.

"Prison administrators should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22, 89 L. Ed. 2d 251, 106 S. Ct. 1078, 1085 (1986) citing Bell v. Wolfish, 441 U.S. at 547, 99 S.Ct. at 1878. The eighth amendment "does not give judges carte blanche to impose their theories of penology on the nation's prisons." Bass v. Perrin, 1999 U.S. App. Lexis 5905 (11th Cir. 1999).

In Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether Eighth Amendment violations have occurred:

> officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the

9

weight of these competing concerns, corrections officials must make their
decisions "in haste, under pressure, and frequently without the luxury of a
second chance." 475 US, at 320, 89 L Ed 2d 251, 106 S Ct 1078 . . . .
whenever prison officials stand accused of using excessive physical force
in violation of the Cruel and Unusual Punishments Clause, the core
judicial inquiry is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 106
S.Ct. 1078, 89 L.Ed.2d 251 (1986) "whether force was applied in a good-
faith effort to maintain or restore discipline, or maliciously and sadistically
to cause harm."

<u>Id</u>. at 6, 7, 112 S.Ct. at 999.

More specifically, a court should consider both the "objective" and "subjective"

components of an alleged violation when examining an Eighth Amendment claim.  <u>See</u>

<u>Hudson</u>, 503 U.S. at  8, 112 S.Ct. at 999.   The objective component relates to the level of

force physical force used and whether it is repugnant to mankind.  <u>Id</u>. at 9-10, 112 S.Ct.

at 1000.   The subjective component relates to whether the defendants had a "wanton"

state of mind when they were engaging in the alleged misconduct.  <u>See Id</u>. at 8, 112 S.Ct.

at 999;  <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271

(1991).

The Court indicated in <u>Hudson</u> that:

> Under the <u>Whitley</u> approach, <u>the extent of injury suffered by an inmate is</u>
> <u>one factor that may suggest "whether the use of force could plausibly have</u>
> <u>been thought necessary" in a particular situation, "or instead evinced such</u>
> <u>wantonness with respect to the unjustified infliction of harm as is</u>
> <u>tantamount to a knowing willingness that it occur.</u>" 475 US, at 321, 89 L
> Ed 2d 251, 106 S Ct 1078.  In determining whether the use of force was
> wanton and unnecessary, it may also be proper to evaluate the need for
> application of force, the relationship between that need and the amount of
> force used, the threat "reasonably perceived by the responsible officials,"
> and "any efforts made to temper the severity of a forceful response." <u>Ibid</u>.
> The absence of serious injury is therefore relevant to the Eighth
> Amendment inquiry, but does not end it.

Hudson, 503 U.S. at 7, 112 S.Ct. at 999 (quoting Whitley, 475 U.S. at 321, 106 S.Ct. at 1085) (emphasis added); see also Johnson v. Glick, 431 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). If the defendants acted maliciously, wantonness has been established and an Eighth Amendment violation has occurred. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). If, on the other hand, the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Johnson, 481 F.2d at 1033 (emphasis added).

Allegations of being "bumped, grabbed, elbowed and pushed" by correctional officers "do not approach an Eighth Amendment claim." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). "Indeed, not even 'every malevolent touch by a prison guard gives rise to a federal cause of action.' Hudson, 503 U.S. at 9." Id.

In a case similar to the one at bar, the court granted summary judgment in favor of the defendants. Pete v. DeGray, Ruling on Motion for Summary Judgment, 3:00CV2384(AWT) (D.Conn. March 12, 2004)(attached).

The court concludes that the plaintiff cannot meet his burden of demonstrating that he suffered any injury as a result of the alleged use of excessive force by the defendants. . . Thus, he has not satisfied the objective prong of the Eighth Amendment standard. Even if the plaintiff had submitted evidence in support of his contention that he suffered an injury as a result of the alleged use of force by the defendants, he has not provided evidence that would satisfy the subjective prong of the Eighth Amendment standard. . . . . The plaintiff conceded during his deposition that his cellmate covered the window in the cell door with a towel. The plaintiff does not dispute that he failed to remove the towel from the window after Officer Blue ordered him to do so on several occasions. The videotape shows that Captain DeGray gave the plaintiff and his cellmate another chance to remove the towel prior to employing the cell extraction team. The defendants had safety and security concerns regarding their inability to see what was happening in the plaintiff's cell. Captain DeGray sprayed a short blast of pepper spray into the cell, the extraction team members entered the cell, subdued the plaintiff, handcuffed and shackled him, and took him to the shower to rinse off the spray. The plaintiff exhibited no respiratory distress upon leaving the shower but was nonetheless provided with albuterol for his asthma condition. No force was used once the plaintiff reached the new cell. The plaintiff fails to adduce any facts to demonstrate that the defendants' course of conduct was malicious and sadistic, or otherwise not performed in a good-faith attempt to maintain discipline in the prison. The court concludes that the amount of force used by the defendants was not excessive and was used in an appropriate effort to restore order in a prison facility. The defendants are entitled to judgment on the excessive force claim as a matter of law.

Pete v. DeGray, Ruling on Summary Judgment Motion at p. 10, 11, and 12.

Similarly, in Johnson v. Gilmore, 2003 U.S. Dist Lexis 9863 (N.D. Tex 2003)(attached) the court dismissed the excessive force claim the court stating:

Plaintiff has alleged defendant Gilmore first ordered plaintiff's cellmate to remove his hand from the beanslot, but the order was disobeyed. Only then did defendant Gilmore use chemical force in what appears to have been an attempt to re-establish security and discipline. Further, the only injury plaintiff suffered was de minimis.

Id at *5-*6.

Finally, the Fifth Circuit reversed a finding that using cap stun on a bus full of inmates constituted excessive force when only one or two inmates were acting up. Baldwin v. Stalder, 137 F.3d 836 (5th Cir. 1998).

> It appears that the linchpin to the excessive force finding is the finding that only "one or two inmates—not 19 were acting up" on the bus. . . . In light of the situation Herron encountered, and based on our review of the record, the trial court clearly erred in finding that a two second use of mace, including not allowing immediate washing, was not a good faith effort to maintain or restore discipline. [citations omitted]. In this regard, we find absolutely no evidence to support finding that Herron acted with a malicious and sadistic intent to cause harm.

> Baldwin v. Stalder, 137 F.3d at 841.

Here, at all times, force was applied in a good faith effort to restore discipline to the facility. On August 26, 2002, the window, which allowed correctional staff to look into plaintiff's prison cell was covered. Statement of Material Facts Not in Dispute par. 11, 17,20,37, 38.    There were two inmates at the time in the cell, inmate Vernon Robinson and the plaintiff. Statement of Material Facts Not in Dispute par. 6, 11,14, 37. Any time a cell window is covered, staff is concerned about what is happening in the cell. Statement of Material Facts Not in Dispute par. 17. Accordingly, Lt. Manley ordered the inmates inside the cell to remove the window covering. Statement of Material Facts Not in Dispute par. 14, 15, 18. When neither inmate complied, Lt. Manley called for a cell extraction team. Statement of Material Facts Not in Dispute par. 16. While awaiting the arrival of the cell extraction team, Lt. Manley went to plaintiff's prison cell and again attempted to get plaintiff and/or his cellmate, Vernon Robinson to remove the window covering. Statement of Material Facts Not in Dispute par. 18. Lt. Manley issued two or three orders for the cell covering to be removed. Statement of

Material Facts Not in Dispute par. 14, 18. In addition, Lt. Manley warned both plaintiff and inmate Robinson that if the cell covering was not removed, he would use force, including a chemical agent. Statement of Material Facts Not in Dispute par. 15.

After hearing Lt. Manley's warning, rather than removing the window covering, plaintiff wrapped a towel around his head, in anticipation of Lt. Manley's use of the cap-stun. Statement of Material Facts Not in Dispute par. 19.

Lt. Manley opened the trap to disburse the cap-stun. Statement of Material Facts Not in Dispute par. 20. Someone from within the cell threw an unknown liquid substance out of the food trap. Statement of Material Facts Not in Dispute par. 21. Lt. Manley then deployed a one, one second burst of cap-stun. Statement of Material Facts Not in Dispute par. 22. Lt. Manley again ordered the removal of the window covering. Statement of Material Facts Not in Dispute par. 23. The window covering was not removed. Statement of Material Facts Not in Dispute par. 23. Accordingly, Lt. Manley then deployed a second, one second burst of cap-stun into the cell. Statement of Material Facts Not in Dispute par. 24. Inmate Robinson then removed the window covering. Statement of Material Facts Not in Dispute par. 26. However, inmate Robinson ran to the cell window yelling that he had a bag of books, that staff should get ready and come on it. Statement of Material Facts Not in Dispute par. 27. Accordingly, Lt. Manley then disbursed a third burst of cap-stun into the cell. Statement of Material Facts Not in Dispute par. 28.

Lt. Manley ordered plaintiff to come to the door to be handcuffed and plaintiff complied. Statement of Material Facts Not in Dispute par. 29. In the meantime, the

extraction team was assembling. Statement of Materia Facts Not in Dispute par. 16, 38. Staff needed to be pulled from other positions throughout the facility. Statement of Material Facts Not in Dispute par. 16, 28. In addition, staff on the extraction team had to put on special, protective gear. Statement of Material Facts Not in Dispute par. 16.

After the extraction team arrived at the cell, plaintiff was removed from the cell and escorted to the shower for decontaminaton and then taken to medical. Statement of Material Facts Not in Dispute par. 33. A nurse listened to plaintiff's lungs and took his vital signs. Statement of Material Facts Not in Dispute par. 34, 40. Plaintiff's lungs were clear, his blood pressure and respiration were normal. Statement of Material Facts Not in Dispute par. 40. The nurse also asked plaintiff if he had any injuries and he shook his head no. Statement of Material Facts Not in Dispute par. 34. The nurse again inquired if plaintiff had any injuries and plaintiff indicated that he was okay. Statement of Material Facts Not in Dispute par. 34. Plaintiff was placed into a day room while his cell was prepared. Statement of Material Facts Not in Dispute par. 35. At no time did plaintiff indicate that he was having any difficulty with the after effects of mace. Statement of Material Facts Not in Dispute par. 34, 41.

The next day, when plaintiff's restraints were removed, plaintiff denied that he had any medical issues. Statement of Material Facts Not in Dispute par. 42.

It cannot be contested that Lt. Manley's use of the Cap-stun was a good faith effort to restore discipline. All orders to remove the window covering were not followed until after two, one second bursts were used. Statement of Material Facts Not In Dispute, par. 14, 15, 18, 20, 22, 25. Then Lt. Manley ordered plaintiff and inmate Robinson to

come to the door to place their hands through the food trap to be handcuffed. Statement of Material Facts Not In Dispute, par. 29, 32. Lt. Manley, then awaited the arrival of the cell extraction team. Statement of Material Facts Not In Dispute, par. 16, 38.

The use of Cap-stun in this circumstance cannot by any stretch of the imagination be deemed malicious or sadistic. There is no genuine issue of material fact, plaintiff cannot prevail on his excessive force claims and summary judgment should enter in defendants' favor on those claims.

Here, during his deposition, plaintiff did not complain about being placed into in cell restraints. Indeed, plaintiff testified that his only claims against Lt. Butkiewicus were that he failed to stop Lt. Manley from using cap-stun. Statement of Material Facts Not in Dispute par. 48. However, if this court does consider the use of in cell restraints, in Bruscino v. Carlson, 854 F.2d 162 (7th Cir. 1988), cert. denied, 491 U.S. 907, 105 L.Ed. 2d 701, 109 S. Ct. 3193 (1989) in an examination of the federal penitentiary at Marion, Illinois, the court found that "inmates who throw food or otherwise misbehave in their cells are sometimes tied spread-eagled on their beds, often for hours at a stretch." Id. at 164. The Bruscino court found this practice to be within constitutional limits as one of the few ways order could be maintained, and felt such drastic measures were justified, given the "history of violence at the prison and the incorrigible, undeterrable character of the inmates." Id. at 165-66.

In Hewitt v. Helms, 459 U.S. 460, 474, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983) the United States Supreme Court noted that  the assessment of when seriousness of threat has abated is purely subjective and involves the prediction of "not just one inmate's future

actions ... but those of an entire institution". See also Williams v. Burton, 943 F.2d 1572

(11th Cir. 1991) reh'g en banc denied 953 F. 2d 652 cert denied 505 U.S. 1208, 112 S.Ct.

3002, 120 L. Ed. 2d 877 (1992) (Eighth Amendment not violated when inmate kept in

four-point restraints for 28 1/2 hours after inmate cursed, threatened to kill officers and

spat on them, threw bodily fluids at them, creating a disturbance in the prison); Key v.

McKinney, 176 F.3d 1083 (8th Cir. 1999)(Twenty four hours in handcuffs and leg irons

for throwing water on a correctional officer was not deprivation of the minimal civilized

measure of life's necessities); Malik v. Mack, 15 F. Supp. 2d 1047, 1050 (D. Kan. 1998)

(placement of hand and feet restraints which caused slight wrist injury insufficient to

support Eighth Amendment claim); Ventura v. Lopes, Recommended Ruling on Cross

Motions for Summary Judgment, H85-440(PCD) (D.Conn. 1988, Magolis USMJ)(Use of

leg irons on inmate in courthouse lockup did not give rise to an eighth amendment

claims)(attached);   McGee v. Griffith, 1998 U.S. Dist Lexis 12291 (M.D. N.C.

1998)(Placement of inmate into four point restraints for forty eight hours after he threw a

cup of liquid at a correctional employee did not give rise to an eighth amendment claim,

and/or defendants had qualified immunity)(attached);

Here, both inmate Robinson and plaintiff were placed into in cell restraints for

their failure to remove the cell window covering.  Statement of Material Facts Not in

Dispute par. 37.   In cell restraints consist of handcuffs in front, shackles on the ankles

and a tether chain connecting the handcuffs to the shackles. Statement of Material Facts

Not in Dispute par. 37. Regardless of whether plaintiff covered his cell window, he was

required to remove the cell covering when ordered to do so. Statement of Material Facts

Not in Dispute par. 37. Plaintiff's failure to remove the cell covering jeopardized safety and security of the facility. Statement of Material Facts Not in Dispute par. 38. Staff had to pulled from other positions throughout the facility to assemble a cell extraction team. Statement of Material Facts Not in Dispute par. 38. Any time, staff has to pulled from other posts, this leaves less staff able to handle other disturbances in the correctional facility. Statement of Material Facts Not in Dispute par. 38. Thus, if a fight or riot were to break out, there would be even less staff, than usual to respond to it, thereby placing other inmates and staff at risk. Statement of Material Facts Not in Dispute par. 38. Plaintiff could have avoided placing staff and other inmates in harms way, simply by removing a cell window covering, but did not. Statement of Material Facts Not in Dispute par. 38.

Moreover, at his deposition, plaintiff did not mention that he was suing any of the defendants for his placement into in cell restraints. Here because placement of plaintiff into in cell restraints was not objectively serious and were used in a good faith effort to restore order, summary judgment should issue in favor of the defendants.

### III. PLAINTIFF CANNOT PROVE THAT MYERS, COATES, KNAPP, BUTLER, REGAN, HOWES, OBERG, PAFUMI AND JONES DID ANYTHING TO VIOLATE HIS CONSTITUTIONAL RIGHTS

Because plaintiff did not articulate any facts to suggest that defendants Myers, Coates, Knapp, Butler, Regan, Howes, Oberg, Pafumi, Jones, Dudley or Badura ("Myers defendants") violated any of his civil rights, summary judgment should issue in their favor.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Sec. 1983.' McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282 (1978). "The general doctrine of respondent superior does not suffice and a showing of some personal responsibility of the defendant is required." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060 (2d Cir. 1989).

Supervisory officials may be "personally involved" within the meaning of 42 U.S.C. Sec. 1983 when their conduct is tantamount to actual participation in the alleged deprivation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). This the plaintiff has not done.

Here, plaintiff testified that he sued Warden Myers because he was the warden and placed him into a cell with inmate Robinson. Statement of Material Facts Not in Dispute par. 42. Plaintiff testified that he was an administrative detention inmate, pending a hearing for his placement into administrative segregation and thus should not have been placed into a cell with an administrative segregation inmate. Statement of Material Facts Not in Dispute par. 42. However, plaintiff admitted that he was placed into administrative detention after he received a disciplinary report for fighting, to which he pled guilty. Statement of Material Facts Not in Dispute par. 5. In addition, after a hearing, plaintiff was later placed into administrative segregation. Statement of Material Facts Not in Dispute par. 7. Finally, plaintiff had no right not to be housed with inmate

19

Robinson. See Rhodes v. Chapman, 452 U.S. 337, 341, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (63 square feet sufficient for two inmates); Moody v. Daggett, 429 U.S. 78, 88n.9 (1976)(Prisoners do not have a liberty interest under the Federal Constitution in "prisoner classifications"); Olim v. Wakinekona, 461 U.S. 238, 248 (1983)(inmates have no right to be confined in a particular state or particular prison within a given state); Sandin v. Conner, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293, 2301 (1995) (Prisoner's placement in segregated confinement for 30 days did not "work a major disruption in his environment," and therefore "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest); Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993)(Confinement in Administrative Segregation is confinement which an inmate should reasonably anticipate).

Indeed, plaintiff, who is six feet one inches tall, was not afraid to be in the cell cuffed up, while inmate Robinson, who is five feet three inches, was un-cuffed. Statement of Material Facts Not in Dispute par. 8, 30. Moreover, plaintiff was housed with inmate Robinson for almost two weeks, without incident, prior to August 26, 2002. Statement of Material Facts Not in Dispute par. 5,6. Finally, inmate Robinson showed a great deal of respect and/or caring for plaintiff in taking full responsibility for the incident and in cuffing up only for plaintiff's wellbeing. Statement of Material Facts Not in Dispute par. 30, 32, 44. Quite simply, plaintiff has not articulated and cannot articulate any facts to suggest that the defendant Myers was personally involved in the any violation of plaintiff's constitutional rights. Accordingly, summary judgment should issue in defendant Myers' favor.

As to the defendants Coates, Reagan, and Butler plaintiff only stated that each was sued, because each defendant had "supervisory responsibility." Statement of Material Facts Not in Dispute par. 43, 44, and 46. Plaintiff could not articulate any other claims he had against Major Coates, Captain Reagan or Captain Butler. The fact that Major Coates, Captain Reagan and Captain Butler were supervisors, is an insufficient basis upon which to maintain this action against them. Accordingly, summary judgment should issue in favor of Coates, Reagan and Butler.

Similarly, because plaintiff failed to articulate any facts to suggest that Lt. Knapp violated plaintiff's constitutional rights, summary judgment should issue in favor of Lt. Knapp. Statement of Material Facts Not in Dispute par 45.

Finally, because plaintiff's only claim against defendants Howes, Oberg, Pafumi and Jones was that it took them fifteen minutes to arrive at his cell and remove him, summary judgment should be issued in their favor. As a matter of law, the time that it took these officers to leave other posts, and put on protective gear, cannot be deemed to give rise to a § 1983 claim against them. Statement of Material Facts Not in Dispute par. 16, 38.

## IV. PLAINTIFF CANNOT RECOVER COMPENSATORY DAMAGES AS HE CANNOT DEMONSTRATE AN ACTUAL PHYSICAL INJURY AS REQUIRED UNDER THE PLRA

Plaintiff alleges that he suffered emotional distress as a result of the use of force. However, because plaintiff did not suffer a physical injury, summary judgment should issue in this matter.

The Prison Litigation Reform Act provides that "No federal civil action may be brought by a prisoner. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e).

> Although the statute does not define "physical injury," the developing case law in this area reflects the view that, consistent with the Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than de minimis. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (physical injury required as predicate for emotional distress claim must simply be more than de minimis); Leon v. Johnson, 96 F.Supp. 2d 244, 2000 WL 674698 at *3 (W.D.N.Y. 2000) (accord).

Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000). In Warren, the plaintiff suffered two superficial scratches to his face as a result of an altercation between the plaintiff and a correctional officer. The district court held that this was a de minimis injury insufficient to base a claim for emotional distress under the PLRA. Accordingly, the plaintiff's excessive force claim was dismissed.

> The Fifth Circuit in Siglar v. Hightower, supra, offered no definition of what is a physical injury, or a de minimis injury. The only standard offered was a de minimis injury was not sufficient to carry the day. A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice? In the prison setting in the Texas Department of Correction Justice-Institutional Division, and in other prisons like this private prison, after an

altercation the correction officers are usually required regardless of observable injuries, no injuries, etc., to take the inmate to the prison infirmary to have an examination to determine if the prisoner received any physical injury requiring professional medical care. Thus, the mere reporting of cuts and abrasions, or swollen wrists by the medical personnel does not prove the inmate has received a physical injury which would measure up to the standards set out in the current statute, 42 U.S.C. 1997e(e), and Siglar v. Hightower, supra.

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise above de minimis, would under Siglar v. Hightower, supra, require more than the types and kinds of bruises and abrasions above which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F.Supp. 481, 486 (N.D. Tex. 1997) (emphasis added) cited by Chief Judge Walker in Concurring Opinion in Dawes v. Walker, 2001 U.S. App. LEXIS 2438 (2d Cir. 2001).

Here, after the use of force, plaintiff indicates twice on camera, that he has no medical issues and no complaints. Statement of Material Facts Not In Dispute, par. 34. Nurse Dudley asked plaintiff is he had any injuries and he shook his head no. Statement of Material Facts Not In Dispute, par. 34. Two minutes later, the nurse again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set. Statement of Material Facts Not in Dispute par. 34. The next day, when plaintiff's in cell restraints were removed, plaintiff denied that he had any medical issues. Statement of Material Facts Not in Dispute par. 42. Because plaintiff did not sustain any physical injury as a

result of the defendants' alleged actions his claim for compensatory damages in this case

should be dismissed.

## II.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT SUGGESTING THAT DEFENDANTS DUDLEY OR BADURA WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS

This court should enter summary judgment in favor of defendants Badura and

Dudley.  Plaintiff cannot establish that they were deliberately indifferent to his medical

needs.

> . . . the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. . . . prison officials must ensure that inmates receive adequate. . . . medical care. . . .

Farmer v. Brennan, _____ U.S. _____, 114 S.Ct. 1970, 1976 (1994).

> Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively, sufficiently serious. . . The second requirement . . . [is that] a prison official must have a sufficiently culpable state of mind.  [citations omitted].  In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.  [citations omitted].

Id. at 1977.

In order to establish an unconstitutional denial of medical care, a prisoner must

show that prison officials were deliberately indifferent to his serious medical needs.

Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) cert denied, 115 S. Ct. 1108 (1995)

(citing Estelle v. Gamble, 429 U.S. 97, 103 (1976).  However, every claim by an inmate

that he has not received adequate medical attention does not constitute a violation of the

Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291 (1976).

Deliberate indifference is more than negligence. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). "[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." Davidson v. Cannon, 474 U.S. 344, 348 106 S.Ct. 668, 671 (1986); Daniels v. Williams, 474 U.S. 327, 332-333, 106 S.Ct. 662, 666 (1986). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Daniels v. Williams, 474 U.S. at 333, 106 S.Ct. at 666 citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct 285, 292, 50 L.Ed. 251 (1976).

Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. Thomas v. Pate, 493 F.2d 151, 157 (7th Cir. 1974), cert denied, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed. 2d 110 (1975). Moreover, courts have repeatedly held that a prisoner does not have the right to the treatment of his choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986); see also Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988); Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y. 1992).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) cert. denied sub nom. Foote v. Hathway, 513 U.S. 1154 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) citing Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second the defendants must have been deliberately indifferent to his medical condition. Id.

## A. PLAINTIFF CANNOT ESTABLISH THAT HE SUFFERED FROM A SUFFICIENTLY SERIOUS CONDITION

Here, plaintiff cannot satisfy the first prong. He cannot establish that he was suffered from a sufficiently serious condition as a result of the use of the cap-stun or the use of in cell restraints.

A medical condition is serious when "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000)(Meskill, J. dissenting) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). In other words, it is one that "a reasonable doctor or patient would find important and worthy of comment or treatment" Id; See also Sheldon v. Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995) ("'serious medical need' is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious even a layperson would easily recognize the necessity for a doctor's attention'") (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1992)); Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). See, e.g. Neitzke, 490 U.S. at 319 (brain tumor); Hathaway, 841 F.2d at 48 (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (doctor discarded inmate's ear and stitched stump rather than attempting to reattach ear); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (prison doctor refused to follow surgeon's instructions and refused to give prescribed painkiller to inmate), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, satisfy this component of the standard. See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989)

(mild concussion and broken jaw); <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir. 1988) (kidney stone); <u>Malsh v. Austin</u>, 901 F.Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); <u>Glasper v. Wilson</u>, 559 F.Supp. 12 (W.D.N.Y. 1982) ("bowel problems").

Here, plaintiff did not have a sufficiently serious condition. This is best evidenced by the fact that plaintiff indicated on both August 26, 2002 and the next day that he had no medical issues or complaints. Statement of Material Facts Not in Dispute par. 34, 41, 42. Because, plaintiff did not suffer a sufficiently serious injury, summary judgment should issue on his deliberate indifference claims.

If it had been a serious condition, presumably plaintiff would not have stated on at least three occasions, that he had no issues or complaints. <u>See</u> <u>Malsh v. Austin</u>, 901 F. Supp. 757, 762 (S.D.N.Y. 1995)(His actions subsequent to June 13, 1994 belie the urgency of the scheduled appointment because the plaintiff refused to attend his rescheduled dental appointment on July 6, 1994. If the plaintiff's dental problems rose to the level of a "serious medical need", the plaintiff hardly would have skipped his rescheduled appointment, regardless of how disgruntled he felt about the handling of his grievance.")

Because plaintiff himself stated that he had no medical issues or complaints, on camera, Statement of Material Facts Not in Dispute par. 34, he cannot establish that he suffered from a sufficiently serious condition and summary judgment should enter in favor of Dudley and Badura.

## B.    DEFENDANT WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S CONDITION

In addition, summary judgment should issue in defendant's favor on the deliberate

indifference claim because plaintiff cannot satisfy the second component of an Eighth

Amendment case.    Plaintiff cannot establish that defendants Dudley and Badura were

deliberately indifferent to plaintiff's medical condition

> [T]he deliberate indifference standard requires the plaintiff to prove that the prison official knew of and disregarded the plaintiff's serious medical needs. See Farmer, 511 U.S. at 837; Hathaway, 37 F.3d at 66. It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See, e.g., Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim. See Estelle, 429 U.S. at 105-06.

Chance v. Armstrong, 143 F.3d at 703.

> Deliberate Indifference is conduct that offends evolving standards of decency in a civilized society. DeRosiers v. Moran, 949 F.2d at 18.    The indifference must be deliberate and not inadvertent or negligent.    Wilson v. Seiter, 501 U.S. 294, 301, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1990); Ferola v. Moran, 622 F. Supp. 814, 820 (D.R.I. 1985).

Figueroa v. Vose, 874 F. Supp. 500, 506 (D.R.I. 1994)

"[T]he Constitution is not a medical code that mandates specific medical

treatment." Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997) citing Snipes v. DeTella,

95 F.3d 586 (7th Cir. 1996) cert. denied ___ U.S.___, 117 S.Ct. 980, 136 L.Ed. 2d 863.

Moreover, an inmate's mere disagreement with his medical treatment is

insufficient to support a claim under the Eighth Amendment. United States Ex Rel. Hyde

v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970). The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves." Ross v. Kelly, 784 F. Supp. 35, 45 (W.D.N.Y. 1992) quoting Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir.) vacated in part as moot 688 F.2d 266 (5th Cir. 1982), cert denied 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed. 2d 795 (1983).

Here, plaintiff was asked twice by Nurse Dudley if he was okay. Statement of Material Facts Not in Dispute par. 34. Twice, plaintiff indicated that he had no medical issues or complaints. Statement of Material Facts Not in Dispute par. 34. In addition, Nurse Dudley listened to plaintiff's lungs and checked his vital restraints. Statement of Material Facts Not in Dispute par. 40. Plaintiff's lungs were clear, his blood pressure and respiration were normal. Statement of Material Facts Not in Dispute par. 40. Finally, Nurse Dudley checked plaintiff's restraints by sliding two fingers between his

issues. Statement of Material Facts Not in Dispute par. 42. Quite simply, plaintiff cannot show that he had a sufficiently serious condition or that defendants were deliberately indifferent to it. Accordingly, summary judgment should issue in favor of Nurses Dudley and Badura.

###### V.    DEFENDANTS HAVE QUALIFIED IMMUNITY AND THUS ARE ENTITLED TO SUMMARY JUDGMENT

Because the defendants did not violate any clearly established statutory or constitutional rights of the plaintiff, they are entitled to qualified immunity.

The defense of qualified immunity is a well-settled doctrine which protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995).

"The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 483 U.S. at 641; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on whether reasonable officials in the position of the defendants could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. Id. The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. See Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1997); Harlow v. Fitzgerald, 457 U.S. at 814, 102 S.Ct. at 2736.

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

Here, at a minimum, defendants are entitled to qualified immunity. A reasonable Correctional lieutenant, like Lt. Manley would have believed he was acting in accordance with an inmate's Eighth Amendment rights in using Cap-stun after an inmate refused to remove an obstruction blocking the view into his cell. Statement of Material Facts Not In Dispute, par. 14-28. In addition, a reasonable Correctional lieutenant would believe they were acting in accordance with an inmate's eighth amendment rights in placing the inmate into in cell restraints after he refused several orders to remove an obstruction blocking the view into his cell but rather chose to tie a towel around his face to lessen the effects of the cap-stun. Statement of Material Facts Not In Dispute, par. 14-28, 37-38.

31

At a minimum, reasonable correctional captains could disagree over the need for the use of cap-stun and in cell restraints in this situation. As discussed above, where reasonable correctional officers and captains can disagree, defendants are entitled to qualified immunity.

Similarly, defendants Badura and Dudley are, at a minimum entitled to qualified immunity. Reasonable correctional nurses could disagree over the need for treatment to cap-stun exposure when the inmate twice indicates that he has no complaints, his lungs are clear, his blood pressure is clear and his respiration is normal. Statement of Material Facts Not in Dispute par. 34, 40. Similarly, at a minimum, reasonable correctional nurses could disagree over the need for medical intervention or treatment when the nurse is able to put two fingers between the restraint and an inmate's extremity and when the inmate voices no medical complaints about the restraints. Statement of Material Facts Not in Dispute par. 39, 41, 42. Because, at a minimum reasonable correctional nurses could disagree over the manner of treating plaintiff for cap stun exposure and placement into in cell restraints, defendants Dudley and Badura are entitled to summary judgment.

## VI. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Here, as defendants are entitled to judgment as a matter of law on the federal claims, this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them.

28 U.S.C. § 1367(c)(3) states in relevant part:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--. . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .

This Court has previously noted that absent usual circumstances, the failure to dismiss pendent state law claims in situations where the federal claims were dismissed might constitute an abuse of discretion. Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) aff'd 954 F.2d 63 (2d Cir. 1992)

> In this ruling the court dismisses the anchor claims and thus the pendent state claims must also be dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) ("certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); Albany Insurance Co. v. Esses, 831 F.2d 41, 45 (2d Cir. 1987) ("since the only subject matter jurisdictional basis for this lawsuit . . . was properly dismissed, it was well within the discretion of the district court to dismiss the pendent state law claims"). Furthermore, absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim already disposed of pursuant to a Rule 12(b)(6) motion. See Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.) cert. denied, 423 U.S. 1034, 46 L. Ed. 2d 408, 96 S. Ct. 567 (1975); Smith v. Weinstein, 578 F. Supp. 1297, 1304 (S.D.N.Y.), aff'd, 738 F.2d 419 (2d Cir. 1984).

Id.

Here, because defendants are entitled to judgment as a matter of law on the federal claims, this court should dismiss the state law claims under 28 U.S.C. §1367(c)(3).

## CONCLUSION

For all the foregoing reasons, defendants respectfully move for summary judgment in this action.

DEFENDANTS

Larry Myers, et al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By:    Ann E. Lynch
       Assistant Attorney General
       110 Sherman Street
       Hartford, CT 06105
       Tel : (860)808-5450
       Fax: (860) 808-5591
       Federal Bar No. ct08326

## CERTIFICATION

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a copy of the foregoing was mailed, postage prepaid, this 27th day of May 2004 to:

Corey Brooks, #237651
Cheshire Correctional Institution
900 Highland Ave.
Cheshire Ct 06410

Ann E. Lynch
Assistant Attorney General