UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR 12 P 4: 07
U.S. DISTRICT COURT
HARTFORD, CT.

```
-------------------------------X
JASON PETE,                    :
              Plaintiff,       :
                               :                PRISONER
       v.                      :        Case No. 3:00cv2384 (AWT)
                               :
CAPTAIN KEVIN DEGRAY,          :
AND CORRECTIONAL OFFICERS      :
COUTURE, BROWN, DAVIS and      :
RICHARDSON,                    :
              Defendants.      :
-------------------------------X
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Jason Pete, an inmate confined at Northern Correctional Institution in Somers, Connecticut, brings this civil rights action pursuant to 28 U.S.C. § 1915. The plaintiff alleges that the defendants used excessive force against him when they extracted him from his cell on August 23, 2000.

On August 2, 2002, the court granted the defendants' motion to dismiss the plaintiff's claim that the defendants denied the plaintiff due process by placing him in in-cell restraints for twenty-four hours and denied the motion to dismiss the plaintiff's excessive force claims. (See doc. # 38.) On April 4, 2003, the court granted the defendants leave to file a motion for summary judgment. On the same date, the court issued a notice informing the plaintiff of his obligation to respond to the motion, explaining the relevant procedural rules and describing the contents of a proper response to a motion for

summary judgment; the notice also cautioned the plaintiff that the motion could be granted and judgment entered against him if he failed to respond. To date, The plaintiff has not responded to the motion. For the reasons that follow, the motion for summary judgment is being granted.

I.  Legal Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.

2

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). He "must come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotation marks omitted). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary

3

judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991).

II. <u>Facts</u>

The following facts are taken from the defendants' Local Rule 56(a)1 Statement [doc. #50] and the affidavits [docs. ## 51-59] submitted in support of their motion. Because the statement is unopposed, the facts are deemed admitted. <u>See</u> D. Conn. L. Civ. R. 56(a)1.

On August 23, 2000, the plaintiff and his cellmate were housed in One West cell 209 at Northern Correctional Institution. At approximately 12:00 a.m. that day, Officer Blue noticed that the window to the plaintiff's cell was covered with a towel. Officer Blue gave the plaintiff and his cellmate several orders to remove the towel. Both inmates swore at Officer Blue and told him to "get a team." (Blue Aff. ¶ 5.) Officer Blue notified Captain DeGray, the shift supervisor, concerning the situation and he proceeded to the plaintiff's cell. Captain DeGray gave the plaintiff and his cellmate direct orders to remove the towel from the window, but both inmates refused to do so and told Captain DeGray to "get the team." (DeGray Aff. ¶ 7.)

It is important that prison staff be able to see the inmates at all times. (DeGray Aff. ¶ 8.) Because the window was covered, Captain DeGray did not know whether the plaintiff and his cellmate were assaulting each other, destroying items in their cells, making weapons, attempting suicide or planning to

4

escape or to assault prison staff or other prisoners. (DeGray Aff. ¶ 8.) Because the plaintiff and his cellmate refused to remove the towel from the window despite several direct orders to do so, Captain DeGray assembled two extraction teams to remove the plaintiff and his cellmate from the cell. (Id.)

The first extraction team included Correctional Officers Stork, Fargo and Richardson. (DeGray Aff. ¶ 16; see Videotape.) The second extraction team included Officers Couture, Smiley and Pease. (DeGray Aff. ¶ 18; see Videotape.) The first team was responsible for securing the plaintiff and the second team was responsible for the plaintiff's cellmate. (See DeGray Aff. ¶¶ 17-19; Videotape.) Captain DeGray assigned Correctional Officer Brown to apply the restraints to the plaintiff. (DeGray Aff. ¶ 20; see Videotape.)

Upon reaching the plaintiff's cell, Captain DeGray gave the plaintiff and his cellmate orders to turn on their light, remove the obstruction from the cell door window and come to the trap door to be handcuffed. (See Videotape.) Captain DeGray informed the plaintiff and his cellmate that their failure to comply with his orders would result in the use of a chemical agent. (See id.) When the inmates failed to comply with the orders, Captain DeGray sprayed a one-second burst of Cap-stun for each inmate through the trap door in the cell. (See id.) Captain DeGray then asked the two inmates to come to the trap door to be

5

handcuffed. When neither inmate complied with this order, the two cell extraction teams entered the cell. (See id.) The first team secured the plaintiff on the floor of the cell. (See id.) Officer Brown applied the handcuffs and shackles and Correctional Officers Stork and Fargo transported the plaintiff to the shower to rinse off the Cap-stun. (See id.) The plaintiff did not cough or show signs of respiratory distress when he left the shower to be transported to a new cell. (See id.) Nurse Bujnevicie gave the plaintiff a puff of his albuterol inhaler anyway. (Bujnevicie Aff. ¶ 5; see Videotape.) After the plaintiff was placed in a new cell, Nurse Bujnevicie gave the plaintiff another puff of the inhaler at his request. (Bujnevicie Aff. ¶ 6; see Videotape.) Nurse Bujnevicie asked the plaintiff if he was okay and he nodded in the affirmative. (Bujnevicie Aff. ¶ 7; see Videotape.) Nurse Bujnevicie noted no respiratory distress. (Bujnevicie Aff. ¶ 7.) Officer Brown relieved Officer Stork in the new cell (Brown Aff. ¶ 12) and Officer Couture conducted a routine strip search (Couture Aff. ¶ 13). After the strip search, the officers placed the plaintiff in in-cell restraints. (See id.) Nurse Bujnevicie checked the restraints to ensure that they were not too tight and asked the plaintiff if he had any medical issues. (See id.) He indicated that he did not have any issues. (See id.)

    Correctional Officer Davis videotaped the extraction of the

6

plaintiff from his cell. (Davis Aff. ¶¶ 4-5.) Correctional Officer Davis did not "observe any staff member kick, punch, or beat" the plaintiff. (Davis Aff. ¶ 6.)

III. Discussion

The defendants argue in support of their motion for summary judgment that: (1) the plaintiff cannot establish facts that would support an Eighth Amendment excessive force claim; (2) the plaintiff fails to state a claim for a violation of his constitutional rights against defendant Davis; (3) the plaintiff cannot establish that he suffered physical injury; and (4) they are entitled to qualified immunity. Because the court finds that the defendants prevail on the first three arguments, it does not address the issue of qualified immunity.

A.  Excessive Force; Physical Injury

In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in a context other than a prison disturbance. United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (citing Hudson, 503 U.S. at 8-9);

7

Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The objective component relates to the seriousness of the injury. However, "a claim of excessive force may be established even if the victim does not suffer 'serious' or 'significant' injury, provided that the amount of force used is more than 'de minimus,' or involves force that is 'repugnant to the conscience of mankind.'" Walsh, 194 F.3d at 47-48 (citing Hudson, 503 U.S. at 7-10) (internal citations omitted). This component is "contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

The subjective component requires the inmate to show that the prison officials acted wantonly. See Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000). With regard to an excessive force claim, the question of wantonness turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotations and citation omitted).

The defendants contend that Officer Couture did not participate in the extraction of the plaintiff from the cell.

8

The defendants also contend that the force used by Officers Richardson and Brown in extracting the plaintiff from the cell was applied in a good faith effort to restore order.

As a preliminary matter, the plaintiff has provided no evidence to support his contention that he suffered injuries as a result of the alleged force used by defendants Richardson and Brown in extracting him from the cell. The defendants have submitted an affidavit from Nurse Bujnevicie, who was present during the extraction of the plaintiff from his cell and afterwards when he was placed in the shower and later transported to another cell. She avers that the plaintiff is an asthmatic and that she gave him two puffs from an albuterol inhaler after his extraction from the cell. She also avers that she did not "observe any abrasions, cuts, bleeding, bruises or other injuries" on the plaintiff after his extraction from the cell. (Bujnevicie Aff. ¶ 10.) In addition, Nurse Bujnevicie avers that she asked the plaintiff whether he had any medical issues and he indicated that he did not. (Id. ¶ 9.) The defendants also submitted a videotape of the cell extraction. No cuts or abrasions on the plaintiff's face or head are visible on that videotape. The plaintiff does not complain about receiving injuries to his head or face during the period when he was taken to the shower after the extraction and then to another cell. The plaintiff was coughing during the time he was rinsing his head

9

and face in the shower and asked for his inhaler, and Captain DeGray responded that the plaintiff would be getting the inhaler when he was done in the shower. See Videotape. The plaintiff was not coughing or in apparent respiratory distress when he left the shower to be transported to another cell. (See id.) In addition, the videotape shows Nurse Bujnevicie giving him a puff of his inhaler as he is being transported to his cell and then again at his request in the new cell. At no time did it appear that the plaintiff was in respiratory distress.

The court concludes that the plaintiff cannot meet his burden of demonstrating that he suffered any injury as a result of the alleged use of excessive force by the defendants. There is no evidence of even the slightest injury; nor is there any evidence that the defendants used force that is "repugnant to the conscience of mankind." See Walsh, 194 F.3d at 47-48. Thus, he has not satisfied the objective prong of the Eighth Amendment standard.

Even if the plaintiff had submitted evidence in support of his contention that he suffered an injury as a result of the alleged use of force by the defendants, he has not provided evidence that would satisfy the subjective prong of the Eighth Amendment standard. To meet the burden under the subjective component of the Eighth Amendment standard, the plaintiff must demonstrate that the defendants acted "maliciously and

10

sadistically to cause harm . . . ." Hudson, 503 U.S. at 7 (adding that inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm").

The plaintiff conceded during his deposition that his cellmate covered the window in the cell door with a towel. The plaintiff does not dispute that he failed to remove the towel from the window after Officer Blue ordered him to do so on several occasions. The videotape shows that Captain DeGray gave the plaintiff and his cellmate another chance to remove the towel prior to employing the cell extraction team. The defendants had safety and security concerns regarding their inability to see what was happening in the plaintiff's cell. Captain DeGray sprayed a short blast of pepper spray into the cell, the extraction team members entered the cell, subdued the plaintiff, handcuffed and shackled him, and took him to the shower to rinse off the spray. The plaintiff exhibited no respiratory distress upon leaving the shower but was nonetheless provided with albuterol for his asthma condition. No force was used once the plaintiff reached the new cell.

The plaintiff fails to adduce any facts to demonstrate that the defendants' course of conduct was malicious and sadistic, or otherwise not performed in a good-faith attempt to maintain discipline in the prison. The court concludes that the amount of

11

force used by the defendants was not excessive and was used in an appropriate effort to restore order in a prison facility. The defendants are entitled to judgment on the excessive force claim as a matter of law.

B.  Claims Against Defendant Davis

Officer Davis videotaped the cell extraction. The plaintiff claims that Officer Davis failed to properly videotape the extraction and did not ask an officer who was blocking the view of the plaintiff to move out of the way. The plaintiff alleges that blocking the view of a video camera is a violation of the State of Connecticut Department of Correction Administrative Directives. The court cannot discern how any failure by defendant Davis to properly videotape the cell extraction would rise to the level of a violation of the plaintiff's federally protected rights. Furthermore, the videotape shows that for the majority of the time the correctional officers were in the cell applying the handcuffs and shackles to the plaintiff and his cellmate there was no one blocking the view of the video camera. The plaintiff conceded at his deposition that he had not viewed the videotape prior to making the allegation against Officer Davis.

Accordingly, the motion for summary judgment should be granted as to the claim that Officer Davis failed to properly videotape the extraction of the plaintiff from his cell because

12

it fails to state a claim upon which relief may be granted. The motion should also be granted as to any claim that Officer Davis failed to intervene in the alleged use of excessive force, because the plaintiff has failed to meet his burden of producing evidence that the other defendants used excessive force while extracting him from his cell.

IV. Conclusion

The defendants' motion for summary judgment [doc. #48] is hereby GRANTED. The Clerk shall enter judgment in favor of the defendants and shall close this case.

It is so ordered.

Dated this 12th day of March 2004, at Hartford, Connecticut.

                                    Alvin W. Thompson
                                    United States District Judge