

RECEIVED    FILED
NOV - 1988   SEP 2 1988
ATTORNEY GENERAL'S OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------------------x
PETER P. VENTURA, ET AL.      : CIVIL NO. H-85-440(PCD)
                              :
v.                            :
                              :
RAYMOND LOPES, ET AL.         : DATE: SEPTEMBER 2, 1988
                              :
------------------------------x

ORDER

By agreement of counsel, the Recommended Ruling on Cross-Motions for Summary Judgment filed August 24, 1988 is hereby withdrawn and a new recommended ruling is filed in lieu thereof.

Dated at New Haven, Connecticut, this 2nd day of September, 1988.

Joan Glazer Margolis
United States Magistrate

---

11/22/88: Over objection and after review, the recommended ruling of the magistrate is adopted, ratified and approved. Plaintiff has made no showing that the use of leg irons during in-courthouse lockups was for punitive reasons or constituted the unnecessary and wanton infliction of pain. Thus, the magistrate was justified in her finding that the use of leg irons in this case did not rise to the level of cruel and unusual punishment in violation of the eighth amendment. SO ORDERED.

Peter C. Dorsey, U.S.D.J.

70

FILED

SEP 2 [illegible]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------x
PETER P. VENTURA, ET AL.       :   CIVIL NO. H-85-440 (PCD)
                               :
v.                             :
                               :
RAYMOND LOPES, ET AL.          :   DATE: SEPTEMBER 2, 1988
                               :
-------------------------------x
```

RECOMMENDED RULING ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs commenced this action on May 29, 1985, pursuant to 42 U.S.C. §1983, seeking injunctive relief and an award of nominal money damages for the alleged violations of their Eighth and Fourteenth Amendment rights. Plaintiffs' amended complaint alleges that defendants subjected them to cruel and unusual punishment by placing plaintiffs in leg irons while transporting them outside the prison and during in-courthouse lockups.

On September 23, 1986, the court granted summary judgment for the defendants with respect to the shackling of plaintiffs in leg irons while transporting

them to medical and court facilities and denied, without prejudice, both parties' motions for summary judgment with respect to in-courthouse lockups. See Recommended Ruling on Cross-Motions for Summary Judgment, filed September 23, 1986, approved October 17, 1986 ("Ruling"): Familiarity with such Ruling is presumed.

On June 27, 1988, defendants filed a motion for summary judgment,[1] memorandum of law in support thereof, and Local Rule 9(c) statement. On the same date, plaintiffs filed a motion for summary judgment, memorandum in support[2] and Local Rule 9(c) statement. Thereafter, on July 27, 1988, plaintiffs filed the affidavit of plaintiff Ventura ("Ventura Aff't").[3]

For the reasons set forth herein, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

I.   FACTS

The prior Ruling denied summary judgment in part, as there was a factual issue whether plaintiff Ventura[4] was shackled in leg irons during in-courthouse lockups and if so, under what circumstances was he so

- 2 -

restrained. Based on the evidence filed by both sides, the undisputed facts are as follows.

Plaintiff Ventura was transported from the Connecticut Correctional Institution at Somers, Connecticut ("CCIS") to various courthouses in the state on six different occasions from March 16, 1984 to October 17, 1985. (Ventura Aff't ¶2; Plaintiff's Statement ¶7; Defendants' Statement ¶¶42-47; CCIS Log at 93, 321, 397, 420, 452, 492). On each such occasion, Ventura was transported in leg irons and remained shackled while in courthouse lockups. (Ventura Aff't ¶¶2-4; Plaintiff's Statement ¶¶8, 9; Defendants' Statement ¶¶42-47). The approximate time during which Ventura remained shackled in the courthouse lockup varied, but he was shackled in lockup for no more than five hours on any one occasion.[5] (Defendants' Statement ¶¶42-47; CCIS Log at 93, 321, 397, 420, 452, 492). The fit of Ventura's leg irons was checked by a correctional officer on only one occasion. (Ventura Aff't ¶18). While shackled in leg irons during in-courthouse lockups, Ventura suffered pain in his ankles, which at times lasted for three to five days. (Ventura Aff't ¶7; Plaintiff's Statement ¶11).

CCIS is a maximum security prison and inmates are required to wear restraints when leaving the prison for court appearances. (Bronson Aff't ¶¶5, 8, 25; Sanders Aff't ¶¶9, 33). Leg irons are not applied, however, to inmates with special medical problems or to inmates who are grossly overweight (Bronson Aff't ¶¶20, 26; Sanders Aff't ¶¶24, 34; Blanchette Aff't ¶7), neither of which applies to Ventura. The two types of restraints commonly emloyed are a belly-chain with handcuffs, and leg irons. (Bronson Aff't ¶¶9-10; Sanders Aff't ¶¶10-11). The leg irons used at CCIS are standard issue steel leg irons which are used by other correctional institutions in and out of the State of Connecticut. (Sanders Aff't ¶¶18-19). Leg irons are used primarily for security reasons to prevent escapes but also are used to protect correctional officers and the general public. (Bronson Aff't ¶¶11, 13, 23-24, 29; Sanders Aff't ¶¶12, 14, 31-32, 36). The application of leg irons shortens the length of the inmate's gait, thereby allowing him to walk but impeding his ability to run. (Bronson Aff't ¶12; Sanders Aff't ¶13).

Leg irons are applied to inmates under the

- 4 -

supervision of a lieutenant or higher ranked officer (Bronson Aff't ¶14; Sanders Aff't ¶15) and the fit of the leg irons is checked by correctional officers when an inmate leaves CCIS. (Bronson Aff't ¶16; Sanders Aff't ¶17). Correctional officers are trained in the application, fitting and adjusting of leg irons. (Bronson Aff't ¶15; Sanders Aff't ¶16).

Defendants have established written policies and procedures with respect to the use of restraints, particularly leg irons, for the transportation, custody and control of inmates. (Bronson's Response No. 2; Adm. Dir. 2.16, Revised; Adm. Dir. 2.16). Specified procedures are required to be followed when an inmate is restrained within CCIS "beyond escorted movement." (Adm. Dir. 2.2a, §II(C)). There is, however, no analogous particularized procedure governing the use, adjustment or removal of leg irons on an inmate during a courthouse lockup.

Defendants' policy with respect to inmates being held in court custody is as follows:

> The transporting officer <u>may</u> apply handcuffs to replace the belly chains when in a <u>secure area</u>. Restraints will not otherwise be removed unless ordered by the

- 5 -

>presiding judge. Where an inmate is designated a highly [sic] security risk, the escorting officer will communicate this information to the chief prosecutor and request that the presiding judge allow the restaints [sic] to remain on the inmate.

Adm. Dir. 2.16, Revised (emphasis in original). See also Adm. Dir. 2.16 (same). Correctional officers escorting an inmate to court are also instructed to follow a certain procedure in making such court trips. Post Orders ¶¶7-8.[6]

    Inmates often cause injury to themselves while wearing leg irons in their attempts to twist, turn or remove the leg irons. (Blanchette Aff't ¶¶6, 14). Injuries caused in this manner are minor and usually consist of superficial abrasions or minor soft tissue damage. (Id. ¶6). Broken blood vessels and swelling of the ankles may also result. (Id. ¶¶10, 12). Such minor injuries would only occur if an inmate remained standing and/or sitting in leg irons for five to eight hours during in-courthouse lockup. (Id. ¶¶18-19).

- 6 -

II.  DISCUSSION

In <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1980), a case involving the double celling of prisoners, the United States Supreme Court stated:

> Today the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," ... or are grossly proportionate to the severity of the crime. ... Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification." ... No static "test" can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."

452 U.S. at 346 (citations and footnote omitted). The "unnecessary and wanton infliction of pain" occurs where a prison official's conduct constitutes "deliberate indifference to serious medical needs of prisoners." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).

While "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1973), prison administrators are to be accorded "wide ranging

- 7 -

deference" in the implementation of measures which are designed to maintain security in the prison. <u>Bell v. Wolfish</u>, 441 U.S. 520, 562 (1979). The decision of prison administrators "will be upheld unless they have exaggerated their response to security and discipline considerations so that their actions are unreasonable and arbitrary." <u>Tubwell v. Griffith</u>, 742 F.2d 250, 252 (5th Cir. 1984)(upholding against Eighth Amendment challenge the use of leg shackles and waist chains while inmates are in the library, which is less secure than other parts of the prison). <u>Cf. Turner v. Safley</u>, 107 S. Ct. 2254, 2263 (1987).

With respect to the use of physical restraints on inmates, it has been observed that

> while there is no <u>per se</u> constitutional prohibition on the use of restraints such as shackles, chains, handcuffs and the like, courts must review with great care the circumstances surrounding their use in a particular instance to determine whether the strictures of the Eighth Amendment have been satisfied.

<u>Ferola v. Moran</u>, 622 F. Supp. 814, 820 (D.R.I. 1985). As the court noted in <u>Leon v. Harris</u>, 489 F. Supp. 221, 223 (S.D.N.Y. 1980), "[t]he constitutionality of a

- 8 -

particular confinement depends upon its duration and circumstances considered in light of the legitimate penal objectives sought to be served."

In analyzing the circumstances under which Ventura was restrained during in-courthouse lockups, the court notes that there is less of a security risk when an inmate is within a holding cell than when he is being transported from place to place outside the prison. See Spain v. Procunier, 600 F.2d 189, 198 (9th Cir. 1979)(inherent threat to guards and the public when prisoners are moved outside the prison justifies the use of mechanical restraints); Stewart v. Rhodes, 473 F. Supp. 1185, 1193 n.9 (S.D. Ohio 1979)(transportation of prisoners to hospital or court may require stricter measures of restraint). Nevertheless, given the deference which the court must accord to prison administration regulations, it cannot be concluded that there is no security risk in allowing an inmate to remain free of mechanical restraints while in-courthouse lockup. Decisions as to the nature of the restraint to be employed are more appropriately left to the expertise of prison officials. See Rhodes v. Chapman, supra, 452

U.S. at 351 n.16; Bell v. Wolfish, supra, 441 U.S. at 562.

There is no allegation here that the use of leg irons was for punitive reasons. Plaintiff's contention that only on one occasion were the leg irons checked for proper fit, however, warrants consideration. There is support in the case law for Ventura's assertion that his condition should be monitored regularly while he is in physical restraints. See Ferola v. Moran, supra, 622 F. Supp. at 821 (and cases cited therein). Although the fit of Ventura's leg irons was not checked on a regular basis during his in-courthouse lockups, Ventura was restrained in such manner for no more than eight hours, including transportation to and from the courthouse. While it may be advisable to check the condition of an inmate in courthouse lockup periodically,[7] the most serious injury which an inmate would sustain under such conditions would be broken blood vessels, abrasions and swelling. (Blanchette Aff't ¶¶18-19).

In addition, the court notes that defendant Bronson did personally inspect Ventura's ankles,

authorized a medical examination of his alleged injuries and advised Dr. Blanchette in writing of such alleged injuries. As this court opined earlier, "plaintiff's claims that Dr. Blanchette did not examine him does not support a finding that defendant Bronson was insensitive to plaintiff's claims." Ruling at 13 n.3. Furthermore, Ventura's complaint of pain in the ankles which "sometimes" lasted for three to five days (Ventura Aff't ¶7) can hardly be characterized as "serious medical needs." Thus, the court concludes that defendants did not display "deliberate indifference to [Ventura's] serious medical needs" in violation of the Eighth Amendment.

Nor does the use of leg irons on Ventura during in-courthouse lockups constitute the "unnecessary and wanton infliction of pain." Plaintiff alleges that as a result of his being restrained in leg irons, he suffered pain and discomfort including broken blood vessels in his ankles. In Wells v. Franzen, 777 F.2d 1258 (7th Cir. 1985), plaintiff claimed that the careless application of bodily restraints caused him to suffer abrasions and bruises and restricted his blood

- 11 -

flow. The Seventh Circuit held, however, that "carelessness and minor discomfort" do not come within the Eighth Amendment's prohibition on "wanton infliction of pain." 777 F.2d at 1264. See also Fulford v. King, 692 F.2d 11, 14 (5th Cir. 1982)(some discomfort such as numbness of the arms and temporary marks does not give rise to Eighth Amendment violations).

### III. CONCLUSION

For the reasons stated above, the Court finds that the use of leg irons on plaintiff Ventura during in-courthouse lockups did not constitute cruel and unusual punishment under the Eighth Amendment. Accordingly, plaintiffs' motion for summary judgment is hereby denied and defendants' motion for summary judgment is hereby granted.

See 28 U.S.C. Section 636(b)(written objections to ruling must be filed within ten days after service of same); F. R. Civ. P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut.

Dated at New Haven, Connecticut, this 2nd day of September, 1988.

_____
Joan Glazer Margolis
United States Magistrate

- 12 -

## FOOTNOTES

[1] Attached to such motion were the following: Affidavit of George Bronson ("Bronson Aff't"); excerpts from Log Book at Connecticut Correctional Institution at Somers, Connecticut for the dates March 16, 1984, June 6 and 9, 1985, August 12 and 29, 1985, September 20, 1985 and October 17, 1985 ("CCIS Log"); Affidavit of Lieutenant James Sanders ("Sanders Aff't"): and Affidavit of Edward A. Blanchette, M.D. ("Blanchette Aff't").

[2] Attached to such memorandum were the following: Excerpts from Log Book (see note 1 supra); copy of defendant Bronson's response to plaintiffs' interrogatories, dated February 29, 1988 ("Bronson's Response"); Administrative Directive 2.16, Transportation Procedures ("Ad. Dir. 2.16"); Administrative Directive 2.2a, Use of Restraints ("Ad. Dir. 2.2a"); Administrative Directive 2.16, Transportation and Custody of Inmates ("Ad. Dir. 2.16(2)"); Post Orders re Court Trips ("Post Orders"); Affidavit of Peter Paul Ventura, dated July 23, 1986; and Affidavit of Armando Valeriano ("Valeriano Aff't"). The Post Orders were placed under seal pursuant to the protective order, entered May 24, 1988.

[3] Plaintiffs' motion for leave to file additional affidavit, filed June 27, 1988, was granted by the court on July 1, 1988.

[4] Plaintiff Valeriano does not allege that he was shackled during in-courthouse lockups but rather that he was restrained in leg irons while being transported to medical appointments. (See Valeriano Aff't ¶¶4-9).

[5] Even were the court to take into consideration the time that Ventura was in leg irons while being transported to court, the total time of his restraint would be eight hours.

[6] These Post Orders are under seal. See note 2 supra.

[7] Defendants do have detailed procedures for supervising the use of restraints within CCIS. See Adm. Dir. 2.2a, §II(C).



0280966
Name(Last,First,Middle Init.)
ROBINSON, VERNON
Date of Birth    Bond
Height    Weight
5 ft 03 in    142 lbs
Hair Color    Eye Color
BLACK    BROWN    Photo Date 10/23/2001
Race    SSN
B
SRG Affiliation

Special Management Issues    Alias

Scars, Tattoos, Physical Abnormalities(i.e.,limp



Inmate Number
0237651
Name(Last,First,Middle Init.)
BROOKS, COREY
Date of Birth    Bond
Height    Weight
6 ft 01 in    160 lbs
Hair Color    Eye Color
BLACK    BROWN    Photo Date 03/09/20
Race    SSN
B
SRG Affiliation

Special Management Issues    Alias

Scars, Tattoos, Physical Abnormalities(i.e.,limp

# Medical Incident Report
Connecticut Department of Correction

CN6602
Rev. 4-12-93

| | |
|---|---|
| Facility: Northern CI | Report Date: 8/27/02 |
| Inmate Name: BROOKS | Time: 9:30 (a.m.) / p.m. |
| Staff Name: L Nordellen | I.D. no.: 237651 |
| Incident report submitted: (Yes) / No | Number: | Date: 8/27/02 |

**Treatment location:** 1E 112

**Injury Description (must be completed if no other report):** none observed or c/o by I/m.

**Diagnosis:** In cell removal

**Treatment administered:** visual, verbal assessment

**Required follow up:** None anticipated may utilize sick call prn

**Placement after treatment:** 1E 112

**Observations/remarks:** I/m alert & oriented denied any medical issues. Resp rate 18.

| Patient signature: | Date: |
|---|---|
| Medical staff signature: Lnordellen | Date: 8/27/02 |
| Custody staff signature: | Date: |