UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

COREY T. BROOKS                       :
                                      :               PRISONER
            v.                        :   Case No.  3:03CV544 (WWE)(HBF)
                                      :
WARDEN LARRY MYERS, ET AL.[1]         :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Corey Brooks, has filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges inter alia that the defendants used excessive force against him when they sprayed a chemical agent into his cell on August 26, 2002, and later failed to provide him with medical treatment for injuries suffered as a result of his exposure to the chemical agent.  On July 27, 2004, the court granted in part and denied in part a motion to dismiss filed by the defendants. The court granted the motion as to as to all official capacity claims for monetary damages and declaratory relief and as to all other claims against defendants Myers, Butler, Dudley and Regan. The court denied the motion as to claims against defendant Badura in his individual capacity and denied the motion as moot as to all claims for injunctive relief.  The court also declined to exercise supplemental jurisdiction over the plaintiff's state law

_____

[1]  The named defendants are Warden Larry Myers, Major Thomas Coates, Captains Matthew Regan and Maurice Butler, Lieutenants Knapp, Butkiewicus and Manley, Correctional Officers Howes, Oberg, Pafumi, Jones and Nurses Stephen Badura and Collen Dudley.

claims against Myers, Butler, Dudley and Regan and dismissed those claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Thus, the action remains pending against defendants Coates, Knapp, Butkiewicus, Manley, Howes, Oberg, Pafumi, Jones and Badura in their individual capacities.  Pending is the defendants' motion for summary judgment.  For the reasons that follow, the motion for summary judgment will be granted in part and denied in part.

I.    Facts[2]

On August 12, 2002, prison officials at Northern Correctional Institution ("Northern") issued the plaintiff a disciplinary ticket for fighting.  The plaintiff pleaded guilty to the ticket the same day.  At that time, the plaintiff was housed in the closed custody unit as a Security Risk Group Threat Member.  On August 13, 2002, prison officials placed the plaintiff on administrative detention and moved him to a cell with another inmate.  The plaintiff had no problems with his cellmate from August 13, 2002 until August 26, 2002.

On August 26, 2002, his cellmate became angry when he thought that a female correctional officer had removed a poem from an envelope he had placed in the mailbox.  His cellmate

_____

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement, the exhibits attached to the statement including the videotape of the events that occurred on August 26, 2002, the Affidavits of Kevin Manley, Colleen Dudley, Stephen Badura and David Butkiewicus and exhibits attached to the Affidavits, the Plaintiff's Local Rule 56(a)2 Statement, and the Plaintiff's Affidavit and exhibits attached to the Affidavit.

covered the window in his cell door because he felt the female correctional officer had been disrespectful to him.

Defendants Manley and Knapp and a unit manager issued several orders to the plaintiff and his cellmate to remove the covering from the cell window, but neither the plaintiff nor his cellmate complied with the orders. Defendant Manley then went to the plaintiff's cell a second time and ordered the plaintiff's cellmate to remove the covering from the window. The plaintiff's cellmate did not comply with the order. Instead, he swore at defendant Manley. Defendant Manley then indicated that he would issue a request that an extraction team be mobilized to remove the plaintiff and his cellmate from the cell.

Any time a cell window is covered, defendants Manley and Butkiewicus are concerned about what might be happening in the cell. While defendant Manley was waiting for the extraction team, he and defendants Knapp and Butkiewicus went to the plaintiff's cell and issued several orders to both the plaintiff and his cellmate to remove the covering over the window. Defendant Manley warned the plaintiff that he would use a chemical agent if the covering as not removed from the window. At one point, the plaintiff yelled that he had not done anything. He did not, however, remove the covering from the window. The plaintiff alleges that his cellmate hit him and threatened to harm him when he attempted to take the covering down.

Defendant Manley then informed the plaintiff and his cellmate that he would spray a chemical agent into the cell. When defendant Manley opened the slot in the cell door to spray the chemical agent, the plaintiff's cellmate threw a liquid substance out through the slot.  Defendant Manley then sprayed a one-second burst of chemical agent in through the slot in the cell door and again ordered the plaintiff and his cellmate to remove the covering from the window and to come to the door to be restrained.  Approximately one minute later, defendant Manley deployed a second one-second burst of chemical agent in through the slot in the door and ordered the plaintiff and his cellmate to remove the covering from the window and to come to the door to be restrained.  In response, the plaintiff's cellmate uncovered the window and attempted to rinse his face and eyes in the sink in the cell.  The plaintiff was lying on the top bunk in the cell with a towel around his mouth.

The plaintiff's cellmate then put a mattress against the door in front of the slot in the door.  Defendant Manley deployed a third one-second burst of chemical agent into the cell, but it was blocked by the mattress.  A minute later, defendant Manley deployed a fourth one-second burst of chemical agent into the cell.

Defendant Manley ordered the plaintiff to come to the door to be handcuffed.  The plaintiff came down from the bunk and put

4

his hands through the door slot to be handcuffed.  After he was handcuffed, he climbed back up on the top bunk.  The plaintiff's cellmate submitted to being placed in handcuffs approximately one minute later.  He informed defendant Manley that he had only agreed to submit to handcuffs because the plaintiff was having trouble breathing.

The plaintiff and his cellmate remained in handcuffs in the cell for approximately fifteen minutes until the extraction team arrived to remove them from the cell.  Five members of an extraction team entered the plaintiff's cell to remove him and his cellmate.  Neither the plaintiff nor his cellmate offered any resistance when the extraction team members entered the cell. Two members of the extraction team and defendant Butkiewicus escorted the plaintiff from the cell to the shower room right next door and the plaintiff rinsed his face with water.  Two members of the extraction team took the plaintiff to the medical screening room.

Two members of the extraction team then escorted the plaintiff to an area outside of the medical department.  A short time later, defendant Butkiewicus informed the plaintiff that he would be placed in in-cell restraints because he had disobeyed direct orders to remove the cell covering from the window.  A correctional officer strip-searched the plaintiff, provided him with new clothes and then placed him in handcuffs, leg irons and

a tether chain.  The plaintiff alleges that he remained in in-cell restraints for eighteen hours.  Both defendant Butkiewicus and defendant Dudley checked the plaintiff's restraints prior to leaving him in the cell.

Defendant Badura checked on the plaintiff at approximately 8:30 p.m. that evening.  The plaintiff alleges that he complained of burning eyes and skin, but defendant Badura failed to offer him any medical treatment.  Defendant Badura avers that he did not observe any injuries, the plaintiff did not voice any medical complaints and that the plaintiff had ample space between the restraints and his extremities.

A nurse examined the plaintiff the following day and noted that he was alert and oriented, his respiratory rate was eighteen and had no observable injuries.  The nurse also reported that the plaintiff had denied any medical issues.

II.  <u>Standard of Review</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

6

material fact . . . .'" <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see also</u> <u>Anderson</u>, 477 U.S. at 256.  The nonmoving party must present "significant probative evidence to create a genuine issue of material fact." <u>Soto v. Meachum</u>, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir.

7

1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991). <u>See also Suburban Propane v. Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. <u>See Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). <u>See also Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. <u>See Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion" unsupported by

8

evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

III. Discussion

The defendants raise six grounds in support of their motion for summary judgment.  They argue that (1) the plaintiff has failed to allege the personal involvement of defendants Coates, Knapp, Howes, Oberg, Pafumi or Jones in alleged use of excessive force against him; (2) the plaintiff has failed to allege that defendant Badura was deliberately indifferent to his medical needs; (3) the plaintiff has failed to allege that defendants Manley and Butkiewicus used excessive force against him; (4) the plaintiff's claim concerning his placement in in-cell restraints fails to state a claim upon which relief may be granted; (5) the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims; (6) the plaintiff has failed to allege that he suffered a physical injury sufficient to state a claim under 42 U.S.C. 1997e(e); and (7) the defendants are entitled to qualified immunity.

A.   Personal Involvement

The defendants argue that the plaintiff has failed to allege the personal involvement of defendants Coates and Knapp in the alleged use of excessive force against him on August 26, 2002. The plaintiff does not respond to this argument.

In order to state a claim for damages under section 1983,

9

the plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation.  See Gill v. Mooney, 824 F.2d 192, 196 (2d. Cir. 1987).  A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

A supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmate's rights in other ways.

> The personal involvement of a supervisory defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

1. <u>Defendant Coates</u>

The plaintiff alleges that on August 26, 2002, defendant Thomas Coates was a Major employed at Northern.  At the plaintiff's deposition, he conceded that he had named defendant Coates as a defendant solely because of his supervisory role at Northern.  The plaintiff has failed to provide any evidence to demonstrate that defendant Coates was involved in or aware of the decision to use a chemical agent in the plaintiff's cell, the decision to place the plaintiff in in-cell restraints or the decisions regarding plaintiff's medical treatment after the use of the chemical agent.  Thus, the plaintiff has failed to meet his burden of demonstrating that defendant Coates was personally involved in any of the incidents giving rise to the amended complaint.  The motion for summary judgment will be granted as to all claims against defendant Coates.

2. <u>Correctional Officers Oberg, Pafumi, Jones and Howes</u>

The defendants argue that the plaintiff has not alleged the involvement of defendants Oberg, Pafumi, Jones and Howes, members of the cell extraction team, in the use of a chemical agent in the plaintiff's cell.  The plaintiff does not address this argument.

The incident report completed by defendant Manley and attached to the plaintiff's affidavit reveals that Correctional Officer Oberg was not involved in the use of a chemical agent in

11

the plaintiff's cell or his extraction from the cell.  The plaintiff has submitted no evidence to contradict this report. Accordingly, the plaintiff has failed to meet his burden of demonstrating that defendant Oberg was involved in the use of chemical agent or his extraction from the cell.  The motion for summary judgment is granted as to defendant Oberg.

With respect to defendants Pafumi, Jones and Howes, the plaintiff conceded at this deposition that they did not use a chemical agent on him.  In addition, the videotape of the incident confirms that defendants Pafumi, Jones and Howes were not present at the plaintiff's cell when defendant Manley deployed the chemical agent.  The plaintiff has offered no evidence to contradict the videotape of this incident. Accordingly, the plaintiff has failed to meet his burden of demonstrating that a material issue of fact exists as to the involvement of Pafumi, Jones and Howes in the use of a chemical agent in his cell.  The motion for summary judgment will be granted on this ground.

The plaintiff's claims that defendants Pafumi, Howes and Jones failed to remove the plaintiff from his cell in a timely manner following the use of a chemical agent and that they used excessive force when extracting the plaintiff from his cell remain and placing him in in-cell restraints will be addressed in another section of this ruling.

12

B.    <u>Failure to State a Claim Against Defendant Badura</u>

The defendants argue that Nurse Badura was not deliberately indifferent to plaintiff's serious medical needs.  The plaintiff argues that defendant Badura failed to properly decontaminate him and treat him for burning and eyes and skin after the use of the chemical agent.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Id.</u> at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  <u>See</u> <u>Id.</u> at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  <u>McCloud v. Delaney</u>, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."  <u>Tomarkin v. Ward</u>, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law.  <u>Tomarkin</u>, 534 F. Supp. at 1230-31.  Thus, a claim of

misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983.  See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971).  In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment.  See Hyde v. Mcinnis, 429 F.2d 864, 868 (2d Cir. 1970).

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition:  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

14

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66. A prison official does not act in a deliberately indifferent manner unless that official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Id.

Although the plaintiff did not initially suffer any injuries due to his exposure to the chemical agent, he avers that in the evening hours of August 26, 2002, he complained to defendant Badura that the chemical agent had "reactivated" and that he was suffering from burning eyes and skin.  The plaintiff alleges that defendant Badura failed to provide him with any medical care. Defendant Badura filed an affidavit in which he avers that he saw the plaintiff at 8:30 p.m. on August 26, 2002, and observed no injuries to the plaintiff and that the plaintiff made no complaints of any injuries.  The next morning, a nurse examined the plaintiff and completed an incident report.  The nurse observed no injuries to the plaintiff and the plaintiff made no complaints of injuries.

15

The plaintiff does not allege or provide any evidence to contradict the medical incident report completed by the nurse on August 27, 2002.  Furthermore, the plaintiff has not submitted any evidence that he made complaints concerning his eyes or skin to defendant Badura or any other medical personnel on the day following the incident.  Thus, the court concludes that the plaintiff has not met his burden of demonstrating that there are genuine issues of material fact as to whether he suffered from a serious medical condition on August 26, 2002, when defendant Badura allegedly failed to provide him with medical treatment. The defendants' motion for summary judgment will be granted as to the Eighth Amendment claims against defendant Badura.

C.    Claims of Excessive Force

The defendants argue that the plaintiff has failed to allege that defendants Manley, Butkiewicus and Knapp used excessive force against him when they deployed a chemical agent into his cell.  The defendants also argue that the plaintiff has failed to demonstrate that defendants Pafumi, Howes and Jones used excessive force against him when they escorted him from his cell to the shower, the medical department and his new cell.

In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment

in contexts other than prison disturbances.  When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim.  See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  The objective component relates to the seriousness of the injury.  However, the use of excessive force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious or significant injury, provided that the amount of force used is more than de minimus, or involves force that is repugnant to the conscience of mankind.  Hudson, 503 U.S. at 8-9.

The subjective component requires the inmate to show that the prison officials acted wantonly.  With regard to an excessive force claim, the inmate must show that the prison officials acted maliciously and sadistically to cause the inmate harm.  Id. at 7.

This inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id.  The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id.

Here, the videotape of the incident reveals that prior to

17

using the chemical agent in the plaintiff's cell, defendants Manley, Butkiewicus and Knapp asked the plaintiff and his cellmate to remove the covering over the cell window on two separate occasions.  The plaintiff conceded at his deposition that although he tried to remove the covering from the window, neither he nor his cellmate successfully removed the window covering.  It was impossible for defendants Manley, Butkiewicus and Knapp to see in the cell with the window covered.  Defendants Manley and Butkiewicus were concerned about what was happening in the cell during the time the window was covered.

Based on the evidence presented by the plaintiff and the defendants, it is clear that defendant Manley deployed the chemical agent into the plaintiff's cell in an effort to restore security in the facility and maintain the safety of the plaintiff and his cellmate.  The court concludes that the plaintiff has failed to meet his burden of demonstrating that the deployment of a chemical agent into the plaintiff's cell by defendant Manley while defendants Butkiewicus and Knapp looked on, was employed maliciously and sadistically to cause harm rather than in an effort to restore or maintain discipline.  Thus, the motion for summary judgment is granted as to the claims that defendants Manley, Butkiewicus and Knapp used excessive force against the plaintiff when defendant Manley deployed a chemical agent into the plaintiff's cell and defendants  Butkiewicus and Knapp failed

18

to prevent defendant Manley from deploying a chemical agent into the cell.

The plaintiff alleges that defendants Pafumi, Jones and Howes entered his cell "forced" him against the cell wall, shackled him, escorted him "forcefully" to the shower to flush his eyes and face.  The videotape shows that two members of the extraction team helped the plaintiff down from the top bunk, placed him in leg shackles, walked him to the shower to wash his face and eyes and then walked to the medical unit.  The videotape reveals that the members of the extraction team did not use excessive force against the plaintiff when they escorted him to the showers, the medical department and his new cell.  The plaintiff has submitted no evidence to contradict the videotape. Thus, the motion for summary judgment will be granted as to the claims that defendants Pafumi, Jones and Howes used excessive force against the plaintiff during his extraction from his cell or his escort to the showers, the medical department or his new cell.

    D.    Claims of Improper Placement in In-Cell Restraints

The plaintiff alleges that the defendants placed him in in-cell restraints after he was removed from his cell for failing to take down a covering from the cell window.  The plaintiff alleges that he remained in in-cell restraints for eighteen hours and that it was difficult for him to sleep or move around in the

restraints.  The defendants argue that the plaintiff's allegations fail to state a claim upon which relief may be granted.

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347.

To prevail on a claim that conditions of confinement constitute cruel and unusual punishment, an inmate must again establish objective and subjective components of the deliberate indifference standard articulated in Hathaway v. Coughlin. Defendant Butkiewicus placed the plaintiff in in-cell restraints because he had disobeyed orders to remove the covering from his cell window and jeopardized the safety of the institution.  After a correctional officer placed the plaintiff in restraints, the plaintiff can be seen on the videotape getting up from the bed, standing beside the bed, bending over and pulling up his jumpsuit and then walking out of view of the camera.  Thus, the videotape

20

belies the plaintiff's claim that he was unable to move around at all while he was in in-cell restraints.

The plaintiff also avers that the restraints made it impossible to sleep. The plaintiff does not allege that he suffered any physical effects due to the lack of sleep over the eighteen hour period he was in in-cell restraints. The court concludes that the plaintiff's inability to sleep or move around for an eighteen hour period did not amount to a serious deprivation of the plaintiff's basic human needs. See Branham v. Meachum, 77 F.3d 626, 631 (2d Cir. 1996) (holding that absent facts demonstrating deliberate indifference to inmate's health or safety requiring inmate to wear handcuffs and leg irons failed to state a cause of action under the Eighth Amendment). Accordingly, the plaintiff has failed to meet his burden of demonstrating that the imposition of in-cell restraints by defendants constituted deliberate indifference to plaintiff's health and safety in violation of his rights under the Eighth Amendment. The motion for summary judgment will be granted as to this claim.

E.    Conditions of Confinement in Contaminated Cell

The plaintiff alleges that defendants Pafumi, Jones and Howes failed to arrive at his cell in a timely manner causing him to remain in his cell for an additional fifteen to twenty minutes after the chemical agent was deployed into the cell. Defendants

Pafumi, Jones and Howes contend that the delay in their arrival to the plaintiff's cell was not intentional.

Defendants Manley and Butkiewicus aver that it took some time for Extraction Team Members Pafumi, Jones and Howes to arrive at the plaintiff's cell because they had to be pulled from other positions in the correctional facility and had to put on special protective gear. The plaintiff has provided no evidence to suggest or demonstrate that defendants Pafumi, Jones and Howes were aware that a chemical agent had been deployed into the cell prior to their arrival or that they intentionally delayed their arrival to the cell. Thus, the plaintiff has failed to meet his burden of demonstrating that defendants Pafumi, Jones and Howes were aware of a risk to the plaintiff's safety or health and deliberately disregarded that risk. The motion for summary judgment will be granted as to defendants Pafumi, Jones and Howes on this ground.

The plaintiff also claims that defendants Manley, Butkiewicus and Knapp violated his Eighth Amendment right to be free from excessive force and unconstitutional conditions of confinement by failing to remove him immediately from the cell after he and his cellmate had submitted to handcuffs rather than let him remain in the contaminated cell. The plaintiff contends that defendants Manley, Butkiewicus and Knapp did not attempt to remove him or his cellmate until the extraction team arrived at

the cell, some fifteen minutes after he and his cellmate had been handcuffed.

The plaintiff has submitted a copy of State of Connecticut Department of Correction Administrative Directive 6.5(7)(D) which provides that "[d]econtamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control."

The defendants have not addressed this claim.  Accordingly, the motion for summary judgment will be denied without prejudice as to the plaintiff's claim that defendants Manley, Butkiewicus and Knapp violated his Eighth Amendment right to be free from excessive force and unconstitutional conditions of confinement when they failed to immediately remove him from his cell after he and his cellmate had been handcuffed.

F.    <u>State Law Claims</u>

The defendants also ask the court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Because the court has granted summary judgment as to the federal claims against defendants Coates, Howes, Oberg, Pafumi, Jones and Badura, it declines to exercise supplemental jurisdiction over the state law claims asserted against those defendants.

Supplemental or pendent jurisdiction is a matter of discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case.  See <u>United Mine Workers</u>

v. Gibbs, 383 U.S. 715, 715-26 (1966).  The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants.  The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.  See Id. at 726.

Although this court has the discretion to hear the plaintiff's state law claims against defendants Coates, Howes, Oberg, Pafumi, Jones and Badura, it declines to exercise that jurisdiction in this case.  See Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D. Conn. 1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), aff'd, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819 (1992).  Because the federal claims will proceed against defendants Manley, Butkiewicus and Knapp the court retains jurisdiction over the state law claims asserted against those defendants.[3]

---

[3]    The defendants raise two additional arguments in their motion for summary judgment.  The court does not address these arguments because they are not directed to the remaining claim in the amended complaint.

24

IV.   Conclusion

The Motion for Summary Judgment [**Doc. # 39**] is **GRANTED** as to all claims against defendants Coates, Howes, Oberg, Pafumi, Jones and Badura and the claims that defendants defendants Manley, Butkiewicus and Knapp used excessive force when they deployed a chemical agent into the cell and later placed the plaintiff in in-cell restraints for eighteen hours.  The Motion [**Doc. # 39**] is **DENIED** as to plaintiff's claim that defendants Manley, Butkiewicus and Knapp violated his Eighth Amendment right to be free from excessive force and unconstitutional conditions of confinement when they failed to immediately remove him from his cell after he and his cellmate had submitted to handcuffs and the claims that defendants Manley, Butkiewicus and Knapp violated his rights under state law.

If the defendants wish to file a motion for summary judgment addressing the remaining claims against defendants Manley, Butkiewicus and Knapp, they must do so within thirty days of the date of this ruling.  The plaintiff's Motion for Settlement Conference [**Doc. # 47**] is **DENIED** without prejudice to renew if defendants do not file another motion for summary judgment.

SO ORDERED this 25th day of April, 2005, at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge