UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL  NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 20, 2005 |

### DEFENDANTS' SUPPLEMENTAL LOCAL RULE 56(A)(1) STATEMENT

1.  On August 26, 2002, at approximately 2:59 PM, Lt. Manley was advised by Captain Butler, the Unit Manager for 1 East and 1 West, who worked first shift, 7AM to 3 PM,  that inmates Vernon Robinson and inmate Corey Brooks were in cell 1 East 112 with a covering over their cell door window and thus staff could not see into their cell. May 18, 2005 Affidavit of Lt. Manley ("Affidavit of Lt. Manley") par. 2;  Affidavit of Captain Knapp par. 3.

2.  Neither inmate in the cell removed the window covering.   Affidavit of Lt. Manley par. 3;  Affidavit of Lt. Butkiewicus par  3.   Lt. Manley left the tier and called for a cell extraction team.  Affidavit of Lt. Manley par. 3.

3.   During the routine day, no staff carry guns or batons inside Connecticut Correctional facilities.  Affidavit of Lt. Manley par.  4;  Affidavit of Lt. Butkiewicus par. 4;  Affidavit of Captain Knapp par. 4.

4.   Rather, correctional officers generally have their interpersonal skills to rely upon as protection against unruly or threatening inmates.  Affidavit of Lt. Manley par.  4; Affidavit of Lt. Butkiewicus par. 4;  Affidavit of Captain Knapp par. 4.

5.    Supervisors also carry a chemical agent.   Affidavit of Lt. Manley par.   4; Affidavit of Captain Knapp par. 4;   Affidavit of Lt. Butkiewicus par. 4.   However, line staff carries no other item which can be used to subdue unruly inmates.   Affidavit of Lt. Manley par.  4;  Affidavit of Captain Knapp par. 4;  Affidavit of Lt. Butkiewicus par. 4.

6.    Inmates have been known to slip handcuffs from behind their back to the front.   Affidavit of Lt. Manley par.  5;  Affidavit of Captain Knapp par. 5;  Affidavit of Lt. Butkiewicus par. 5.

7.   When an inmate has slipped his handcuffs to the front of his body, he is able to assault staff by raising his hands up and striking staff with the metal handcuffs.   Affidavit of Lt. Manley par.  5;  Affidavit of Captain Knapp par. 5;  Affidavit of Lt. Butkiewicus par. 5.

8.   In addition, an inmate who has slipped his handcuffs to the front, can still grab and use a shank or a homemade knife or other weapons.   Affidavit of Lt. Manley par.  5; Affidavit of Captain Knapp par. 5;  Affidavit of Lt. Butkiewicus par. 5.

9.    Staff have been seriously injured in the past by inmates slipping their handcuffs to the front and striking staff.   Affidavit of Lt. Manley par.  5;  Affidavit of Captain Knapp par. 5; Affidavit of Lt. Butkiewicus par. 5.

10.   Thus, whenever possible, to protect staff from as much injury as possible, when there is a planned use of force, and time permits, staff is ordered to put on protective gear such as helmets, vests, and knee pads to protect them from inmates who may attempt to strike them and injure them with handcuffs slipped to the front.   Affidavit of Lt. Manley par.  6;   Affidavit of Captain Knapp par. 6;  Affidavit of Lt. Butkiewicus par. 6.

11.   On August 26, 2002,  Lt. Manley ordered both inmate Brooks and inmate Robinson to take down the cell window covering and warned that if the cell covering was not removed, force would be used up to and including a chemical agent.  Affidavit of Lt. Manley par.  7;  Affidavit of Lt. Butkiewicus par. 7.

12.   Neither inmate removed the covering.  Affidavit of Lt. Manley par.  7; Affidavit of Lt. Butkiewicus par. 7.   Indeed, the only response to Lt. Manley's order was the comment "shove it up your ass."  Affidavit of Lt. Manley par.  7;  Affidavit of Lt. Butkiewicus par. 7.

13.   After spraying cap-stun into the cell, twice, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. Affidavit of Lt. Manley par.  8;  Affidavit of Lt. Butkiewicus par. 8.

14.   In addition, inmate Robinson refused to come to the door to be handcuffed. Affidavit of Lt. Manley par.  8;  Affidavit of Lt. Butkiewicus par. 8.

15.   When Lt. Manley disbursed a third one second burst of cap stun into the cell, inmate Robinson, attempted to block the food trap with his mattress so Lt. Manley attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.  Affidavit of Lt. Manley par.  9;  Affidavit of Lt. Butkiewicus par. 9.

16.  Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did.   Affidavit of Lt. Manley par.  10;  Affidavit of Lt. Butkiewicus par. 10.   Inmate Brooks then returned to his bunk.  Affidavit of Lt. Manley par.  10;  Affidavit of Lt. Butkiewicus par. 10.

17.  It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.  Affidavit of Lt. Manley par.  10;  Affidavit of Lt. Butkiewicus par. 10.

18.  Once both inmates were cuffed up, Lt. Manley and Lt. Butkiewicus awaited the arrival of the cell extraction team to escort both inmates out of the cell.   Affidavit of Lt. Manley par.  11;  Affidavit of Lt. Butkiewicus par. 11.

19.  The lieutenants waited for the cell extraction team for the safety of the staff on the tier who were not in protective clothing.  Affidavit of Lt. Manley par.  12; Affidavit of Lt. Butkiewicus par. 12.

20.  Inmate Robinson had threatened to use a bag of books against staff.  Affidavit of Lt. Manley par. 12;  Affidavit of Lt. Butkiewicus par. 12.

21.  Inmate Robinson was not incapacitated by three once second bursts of cap-stun.   Videotape attached to May 2004 motion for summary judgment ("Videotape")[1]; Affidavit of Lt. Manley par.  12;  Affidavit of Lt. Butkiewicus par. 12. Inmate Robinson was not coughing, and showed only minimal effect from the cap-stun. Videotape; Affidavit of Lt. Manley par. 12;  Affidavit of Lt. Butkiewicus par. 12.

22. Cap-Stun or Oleoresin Capsicum is an aersol made up from capsicum peppers (hot red cayenne peppers) and is typically used to temporarily render an inmate incapable of attacking or resisting correctional staff.  Affidavit of Dr. Blanchette par. 8.

23.  Cap-Stun typically causes an individual's eyes to burn and an individual to cough.  Affidavit of Dr. Blanchette par.  8.   Cap-stun is used by law enforcement personnel because there is no harmful after-effect.  Affidavit of Dr. Blanchette par. 8.

---

[1]  Rather then submit another copy of the videotape, the defendants respectfully refer the court to the copy already in its possession.  If the court requires another copy, defense counsel will gladly produce one upon the court's request.

24.   Inmate Robinson was clearly agitated and dangerous on August 26, 2002. Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13.   He covered his cell window, refused to cuff up, and threatened to harm staff.  Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13.

25.   Neither inmate Robinson nor his cell mate, inmate Brooks appeared to be in any sort of acute distress which required that they be removed from their cell immediately.  Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13. Indeed at his deposition, plaintiff testified that the mace did not affect inmate Robinson. Plaintiff's Deposition p. 38.

26.   Inmate Brooks was coughing and inmate Robinson claimed that inmate Brooks could not breath.  Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13.   However, inmate Brooks did not appear to have difficulty breathing.  Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13.  He was laying on his top bunk moving, and appeared to be in no acute distress.   Videotape; Affidavit of Lt. Manley par. 13; Affidavit of Lt. Butkiewicus par. 13.

27.   Given that inmate Robinson was agitated and out of control, and the cap-stun had minimal effect on him, the only way it appeared we would gain control over him was for correctional staff to place their hands on him.  Affidavit of Lt. Manley par. 14; Affidavit of Lt. Butkiewicus par. 14.

28.   Many times, once inmates see the extraction team in their helmets, vests, knee pads and other protective equipment, they settle down and comply with the supervisor's orders.  Affidavit of Lt. Manley par. 15; Affidavit of Captain Knapp par. 8; Affidavit of Lt. Butkiewicus par. 15.  That is indeed what happened in this case after the

cell extraction team arrived.   Affidavit of Lt. Manley par.   15;   Affidavit of Lt. Butkiewicus par. 15.

29.   In Lt Manley's Lt. Butkiewicus's and Captain. Knapp's professional opinions, opening the cell door without the presence of the cell extraction team, would have unnecessarily risked an assault by inmate Robinson to the staff on the tier.  Affidavit of Lt. Manley par.  16; Affidavit of Lt. Butkiewicus par. 16;  Affidavit of Captain Knapp par. 9.

30.   As neither inmate was in any acute distress requiring their immediate extraction from the cell, the more prudent course to take was to wait for a fully equipped cell extraction team to arrive.  Affidavit of Lt. Manley par.  16;   Affidavit of Lt. Butkiewicus par. 16.

31.   In addition, Dr. Edward Blanchette, Director of Clinical Services for the Department of Correction, reviewed the videotape of the deployment of the cap stun into inmate Brooks and inmate Robinson's cell on August 26, 2002.   Affidavit of Dr. Blanchette par. 9.

32.  In Dr. Blanchette's professional opinion, inmate Brooks did not appear to be in any sort of acute distress which warranted his immediate removal from the cell after the cap stun was deployed and he and his cell mate were handcuffed.  Affidavit of Dr. Blanchette par. 9.

33.  Indeed, after plaintiff was removed from the cell he was escorted to a shower and then to the medical unit.  Videotape.  There, a nurse asked plaintiff if he had any injuries and he shook his head no.  Videotape at 3:40 PM..  Two minutes later, the nurse

again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set.
Videotape at 3:42 PM.

34.    Nurse Dudley also listened to plaintiff's lungs and took his vital signs.
Affidavit of Nurse Dudley par. 2.[2]  Plaintiff's lungs were clear, his blood pressure and
respiration were normal.  Affidavit of Nurse Dudley par. 2.  Additionally, she noted that
plaintiff's oxygen saturation levels were excellent at 97%.  Affidavit of Nurse Dudley
par. 2.

35.    It is Dr. Blanchette's opinion beyond a reasonable degree of medical
probability that keeping Mr. Books in his cell, after the deployment of cap stun,  for
approximately 16 minutes until the cell extraction team arrived caused him no long term
harm or adverse effect.   Affidavit of Dr. Blanchette par. 11.

36.    Finally, the next day when plaintiff's restraints were removed, plaintiff
denied that he had any medical issues.  Medical Incident Report dated 8/27/02.

                                    DEFENDANTS

                                    Larry Myers, et al

                                    RICHARD BLUMENTHAL
                                    ATTORNEY GENERAL


                                        /s/
                              By:   Ann E. Lynch
                                    Assistant Attorney General
                                    110 Sherman Street
                                    Hartford, CT 06105
                                    Tel.:  (860)808-5450
                                    Fax:  (860) 808-5591
                                    Federal Bar No. ct08326

---

[2]   A copy is attached hereto.  The original  was attached to defendants May 2004 motion for summary
judgment

## CERTIFICATION

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a

copy of the foregoing was mailed, postage prepaid, this _____ day of May 2005 to:

Corey Brooks, #237651
Cheshire Correctional Institution
900 Highland Ave.
Cheshire Ct 06410

___/s/_____
Ann E. Lynch
Assistant Attorney General