UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL  NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 18, 2005 |

## AFFIDAVIT OF LT. DAVID BUTKIEWICUS

**I, LIEUTENANT DAVID BUTKIEWICUS**, being duly sworn, depose and say:

1.      I am employed by the State of Connecticut Department of Correction ("DOC") as a lieutenant at Northern Correctional Institution ("NCI").  I have been employed with DOC since September 1993 and have worked at NCI since November 30, 2001.   On August 26, 2002, I was a second shift lieutenant working 2PM to 12AM.   As such, I am duly familiar with the facts set forth below.  I provide this affidavit to supplement the one dated May 26, 2004 previously filed with the court.

2.   As previously stated, on August 26, 2002, at approximately 2:59 PM, I was advised by Captain Butler, the Unit Manager for 1 East and 1 West, who worked first shift, 7AM to 3 PM,  that inmates Vernon Robinson and inmate Corey Brooks were in cell 1 East 112 with a covering over their cell door window and thus staff could not see into their cell.

3.   Neither inmate in the cell removed the window covering.

4.      No staff carry guns or batons inside Connecticut Correctional facilities. Rather, correctional officers generally have their interpersonal skills to rely upon as protection against unruly or threatening inmates.  Supervisors such as myself also carry a

1

chemical agent.  However, line staff carries no other item which can be used to subdue unruly inmates.

5.  Inmates have been known to slip handcuffs from behind their back to the front. When an inmate has slipped his handcuffs to the front of his body, he is able to assault staff by raising his hands up and striking staff with the metal handcuffs.  In addition, an inmate who has slipped his handcuffs to the front, can still grab and use a shank or a homemade knife or other weapons.  Staff have been seriously injured in the past by inmates slipping their handcuffs to the front and striking staff.

6  Thus, whenever possible, to protect staff from as much injury as possible, when there is a planned use of force, and time permits, staff is ordered to put on protective gear such as helmets, vests, knee pads to protect them from inmates who may attempt to strike them and injure them with handcuffs slipped to the front.

7. As discussed in my previous affidavit in this matter, on August 26, 2002,  Lt. Manley ordered both inmate Brooks and inmate Robinson to take down the cell window covering and warned that if the cell covering was not removed, force would be used up to and including a chemical agent.   Neither inmate removed the covering.  Indeed, the only response to Lt. Manley's order was the comment "shove it up your ass."

8.  After Lt. Manley sprayed cap-stun into the cell, twice, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in.  In addition, inmate Robinson refused to come to the door to be handcuffed.

9.  When Lt. Manley disbursed a third one second burst of cap stun into the cell, inmate Robinson, attempted to block the food trap with his mattress so Lt. Manley

attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.

10.  Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did.  Inmate Brooks then returned to his bunk.    It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.

11.  Once both inmates were cuffed up, Lt. Manley and I awaited the arrival of the cell extraction team to escort both inmates out of the cell.

12.  I waited for the cell extraction team for my safety and the safety of the other staff on the tier who were not in protective clothing.  Inmate Robinson had threatened to use a bag of books against staff.  In addition,  as is readily apparent from the videotape which was submitted to the court in support of the first motion for summary judgment inmate Robinson was not incapacitated by three once second bursts of cap-stun into the cell.   Inmate Robinson was not coughing and was minimally affected by the cap-stun.

13.  Inmate Robinson was clearly agitated towards staff and dangerous on August 26, 2002.  He covered his cell window, refused to cuff up, and threatened to harm staff.  Neither inmate Robinson nor his cell mate, inmate Brooks appeared to be in any sort of acute distress which required that they be removed from their cell immediately.  Inmate Brooks was coughing and inmate Robinson claimed that inmate Brooks could not breath.  However, inmate Brooks did not appear to me to have difficulty breathing.  He was laying on his top bunk moving, and appeared to be in no acute distress.

14.  Given that inmate Robinson was agitated towards staff and out of control, and the cap-stun had minimal effect on him, the only way it appeared we would gain control over him was for correctional staff to place their hands on him.

15.  Many times, once inmates see the extraction team in their helmets, vests, knee pads and other protective equipment, they settle down and comply with the supervisors orders.  That is indeed what happened in this case after the cell extraction team arrived.

16.  In my professional opinion, opening the cell door without the cell extraction team, would have unnecessarily risked an assault by inmate Robinson to myself  or the other staff on the tier.  As neither inmate was in any acute distress requiring their immediate extraction from the cell, the more prudent course to take was to wait for a fully equipped cell extraction team to arrive.

_____/s/_____

Lt. David Butkiewicus

Subscribed to and sworn before me, this _____ day of May 2005.

___/s/_____
Notary Public/Commissioner of the
Superior Court
My Commission expires:

4

DEFENDANTS

LARRY MYERS, et al

RICHARD BLUMENTHAL
ATTORNEY GENERAL


_____/s/_____

By:    Ann E. Lynch
       Assistant Attorney General
       110 Sherman Street
       Hartford, CT 06105
       Tel.:  (860)808-5450
       Federal Bar No. ct08326

## **CERTIFICATION**

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a

copy of the foregoing was mailed, postage prepaid, this _____ day of May 2004 to:

       Corey Brooks, #237651
       Cheshire Correctional Institution
       900 Highland Ave.
       Cheshire Ct 06410


_____/s/_____
Ann E. Lynch
Assistant Attorney General

5