UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COREY BROOKS, | : | CIVIL  NO. 3:03CV544 (WWE) (HBF) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| WARDEN MYERS, ET AL, | : | |
| *Defendants* | : | MAY 20, 2005 |

## MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

## PROCEDURAL BACKGROUND

On  March 27, 2003, plaintiff commenced this action.  On July 27, 2004, this

court granted in part and denied in part defendants' motion to dismiss.

On April 25, 2005, the court granted defendants' motion for summary judgment

on the grounds that plaintiff failed to meet his burden of proving that defendant Coates,

and Oberg were personally involved in the alleged deprivation of plaintiff's constitutional

rights.   The court further found that plaintiff failed to demonstrate that there was a

genuine issue of material fact as to whether plaintiff suffered from a serious medical

condition on August 26, 2002.   The court also granted defendants Knapp, Butkiewicus

and Manley summary judgment on plaintiff's claim that they used excessive force in

deploying a chemical agent into his cell.  The court found that plaintiff failed to

demonstrate that the use of the chemical agent was sadistic and malicious for the purpose

of causing harm rather than in an effort to restore or maintain discipline.  The court

granted summary judgment in favor of defendants Pafumi, Jones and Howes, finding that

plaintiff had failed to submit any evidence to contradict the videotape which revealed that

no excessive force was used when plaintiff was escorted to the showers, the medical department and his new cell or that they intentionally delayed their arrival at plaintiff's cell. Finally, the court granted summary judgment on plaintiff's claim that he was wrongly placed into in cell restraints and as to the pendent state law claims against all defendants other than Knapp, Butkiewicus and Manley.

The court denied the motion for summary judgment on plaintiff's claim that Lts Knapp, Butkiewicus, and Manley left him in the contaminated cell for 15 minutes without prejudice. The court also denied defendant Knapp's, Manley's, and Butkiewicus's motion for summary judgment as to the pendent state law claims. The court ruled, "[i]f the defendants wish to file a motion for summary judgment addressing the remaining claims against defendants Manley, Butkiewicus and Knapp, they must do so within thirty days of the date of this ruling."

Defendants Knapp, Manley and Butkiewicus respectfully now move for summary judgment on the claims left pending against them.

## FACTS

On August 26, 2002, at approximately 2:59 PM, Lt. Manley was advised that inmates Vernon Robinson and inmate Corey Brooks were in cell 1 East 112 with a covering over their cell door window and thus staff could not see into their cell. May 18, 2005  Statement of Material Facts Not in Dispute dated May 20, 2005, ("Statement of Material Facts Not in Dispute") par.  1.  Lt. Manley ordered the removal of the cell window covering but neither inmate removed it.   Ruling on Defendant's Motion for Summary Judgment p. 3; Statement of Material Facts Not in Dispute par.  2.  Lt. Manley

left the tier and called for a cell extraction team.    Ruling on Defendant's Motion for Summary Judgment p. 3;  Statement of Material Facts Not in Dispute par.  2.

During the routine day, no staff carry guns or batons inside Connecticut Correctional facilities.  Statement of Material Facts Not in Dispute par.  3.  Rather, correctional officers generally have their interpersonal skills to rely upon as protection against unruly or threatening inmates.  Statement of Material Facts Not in Dispute par.  4. Supervisors also carry a chemical agent.  Statement of Material Facts Not in Dispute par. 5.  However, line staff carries no other item which can be used to subdue unruly inmates. Statement of Material Facts Not in Dispute par.  5.

Inmates have been known to slip handcuffs from behind their back to the front. Statement of Material Facts Not in Dispute par.  6.    When an inmate has slipped his handcuffs to the front of his body, he is able to assault staff by raising his hands up and striking staff with the metal handcuffs.  Statement of Material Facts Not in Dispute par. 7.   In addition, an inmate who has slipped his handcuffs to the front, can still grab and use a shank or a homemade knife or other weapons.  Statement of Material Facts Not in Dispute par. 8.  Staff have been seriously injured in the past by inmates slipping their handcuffs to the front and striking staff.  Statement of Material Facts Not in Dispute par. 9.

Thus, whenever possible, to protect staff from as much injury as possible, when there is a planned use of force, and time permits, staff is ordered to put on protective gear such as helmets, vests, and knee pads to protect them from inmates who may attempt to

strike them and injure them with handcuffs slipped to the front.    Statement of Material Facts Not in Dispute par.  10.

On August 26, 2002,   Lt. Manley ordered both inmate Brooks and inmate Robinson to take down the cell window covering and warned that if the cell covering was not removed, force would be used up to and including a chemical agent.   Ruling on Defendant's Motion for Summary Judgment p. 3;   Statement of Material Facts Not in Dispute par.  11.   Neither inmate removed the covering.  Ruling on Defendant's Motion for Summary Judgment p. 3;   Statement of Material Facts Not in Dispute par.   12. Indeed, the only response to Lt. Manley's order was the comment "shove it up your ass." Statement of Material Facts Not in Dispute par.  12.

After spraying cap-stun into the cell, twice, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. Statement of Material Facts Not in Dispute par.  13.      In addition, inmate Robinson refused to come to the door to be handcuffed.  Statement of Material Facts Not in Dispute par. 14.

When Lt. Manley disbursed a third one second burst of cap stun into the cell, inmate Robinson, attempted to block the food trap with his mattress so Lt. Manley attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.  Statement of Material Facts Not in Dispute par. 15.

Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did.    Ruling on

Defendant's Motion for Summary Judgment p. 4-5;  Statement of Material Facts Not in Dispute par.  16.    Inmate Brooks then returned to his bunk.  Ruling on Defendant's Motion for Summary Judgment p. 5;  Statement of Material Facts Not in Dispute par.  16. It was only after inmate Brooks cuffed up that inmate Robinson came to the door to be cuffed.    Ruling on Defendant's Motion for Summary Judgment p. 5; Statement of Material Facts Not in Dispute par.  17.

Once both inmates were cuffed up, Lt. Manley and Lt. Butkiewicus waited approximately 16 minutes for the arrival of the cell extraction team to escort both inmates out of the cell.    Ruling on Defendant's Motion for Summary Judgment p. 5;  Statement of Material Facts Not in Dispute par.  18.

The lieutenants waited for the cell extraction team for the safety of the staff on the tier who were not in protective clothing.  Statement of Material Facts Not in Dispute par. 19.    Inmate Robinson had threatened to use a bag of books against staff.  Statement of Material Facts Not in Dispute par.  20.    In addition, as is readily apparent from the videotape which was submitted to the court in support of the first motion for summary judgment inmate Robinson was not incapacitated by three once second bursts of cap-stun into the cell.  Statement of Material Facts Not in Dispute par.  21.  Inmate Robinson was not coughing, and showed only minimal effect from the cap-stun.    Statement of Material Facts Not in Dispute par.  21.

Cap-Stun or Oleoresin Capsicum is an aersol made up from capsicum peppers (hot red cayenne peppers) and is typically used to temporarily render an inmate incapable of attacking or resisting correctional staff.  Statement of Material Facts Not in Dispute

par. 22. It typically causes an individual's eyes to burn and to cough. Statement of Material Facts Not in Dispute par. 23. Cap stun is used by law enforcement personnel because there is no harmful after-effect. Statement of Material Facts Not in Dispute par. 23.

Inmate Robinson was clearly agitated and dangerous on August 26, 2002. Statement of Material Facts Not in Dispute par. 24. He covered his cell window, refused to cuff up, and threatened to harm staff. Statement of Material Facts Not in Dispute par. 24. Neither inmate Robinson nor his cell mate, inmate Brooks appeared to be in any sort of acute distress which required that they be removed from their cell immediately after they had cuffed up. Statement of Material Facts Not in Dispute par. 25. Indeed at his deposition, plaintiff testified that the mace did not affect inmate Robinson. Statement of Material Facts Not in Dispute par. 25. Inmate Brooks was coughing and inmate Robinson claimed that inmate Brooks could not breath. Statement of Material Facts Not in Dispute par. 26. However, inmate Brooks did not appear to have difficulty breathing. Statement of Material Facts Not in Dispute par. 26. He was laying on his top bunk moving, and appeared to be in no acute distress. Statement of Material Facts Not in Dispute par. 26.

Indeed, Dr. Edward Blanchette, Director of Clinical Services for the Department of Correction, reviewed the videotape of the deployment of the cap stun into inmate Brooks and inmate Robinson's cell on August 26, 2002. Statement of Material Facts Not in Dispute par. 31. In his professional opinion, inmate Brooks did not appear to be in any sort of acute distress which warranted his immediate removal from the cell after the

cap stun was deployed and he and his cell mate were handcuffed. Statement of Material Facts Not in Dispute par. 32.

Moreover, after plaintiff was removed from the cell he was escorted to a shower and then to the medical unit. Statement of Material Facts Not in Dispute par. 33. There, a nurse asked plaintiff if he had any injuries and he shook his head no. Statement of Material Facts Not in Dispute par. 33. Two minutes later, the nurse again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set. Statement of Material Facts Not in Dispute par. 33.

Nurse Dudley also listened to plaintiff's lungs and took his vital signs. Statement of Material Facts Not in Dispute par. 34 Plaintiff's lungs were clear, his blood pressure and respiration were normal. Statement of Material Facts Not in Dispute par. 34. Additionally, she noted that plaintiff's oxygen saturation levels were excellent at 97%. Statement of Material Facts Not in Dispute par. 34.

It is Dr. Blanchette's opinion beyond a reasonable degree of medical probability that keeping Mr. Books in his cell, after the deployment of cap stun,  for approximately 16 minutes until the cell extraction team arrived caused him no long term harm or adverse effect.  Statement of Material Facts Not in Dispute par. 35.

Given that inmate Robinson was agitated and out of control, and the cap-stun had minimal effect on him, the only way it appeared that correctional staff would gain control over him was for correctional staff to place their hands on him. Statement of Material Facts Not in Dispute par. 27.

Many times, once inmates see the extraction team in their helmets, vests, knee pads and other protective equipment, they settle down and comply with the supervisor's orders.   Statement of Material Facts Not in Dispute par.  28.  That is indeed what happened in this case after the cell extraction team arrived.  Statement of Material Facts Not in Dispute par.  29.

In Lt Manley's Lt. Butkiewicus's and Captain. Knapp's professional opinions, opening the cell door without the cell extraction team, would have unnecessarily risked an assault by inmate Robinson to the staff on the tier.  Statement of Material Facts Not in Dispute par.  29.   As neither inmate was in any acute distress requiring their immediate extraction from the cell, the more prudent course to take was to wait for a fully equipped cell extraction team to arrive.  Statement of Material Facts Not in Dispute par.  29.

Plaintiff suffered no harm.   He suffered no initial injuries from his exposure to the chemical agent.   Ruling on Defendants' Motion for Summary Judgment p. 15. Moverover, the next day when plaintiff's restraints were removed, plaintiff denied that he had any medical issues.  Statement of Material Facts Not in Dispute par.  36.

**<u>ARGUMENT</u>**

**I.    SUMMARY JUDGMENT STANDARD**

Because plaintiff cannot establish that defendants violated his constitutional rights, summary judgment should enter in favor of the defendants.

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the

moving party is entitled to judgment as a matter of law."  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (emphasis added).  The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. § 56(e).

Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose.  See, e.g., Celotex Corp. v. Catrett 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1968); H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).  Thus "[w]here the record could not lead a rational trier of facts to find for the non-moving party, there is then no 'genuine issue for trial.'"  Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987).

The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of a summary judgment in favor of the defendants.

**II.    PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECTED TO EXCESSIVE FORCE BECAUSE HE WAS LEFT IN HIS CELL FOR SIXTEEN MINUTES**

This court should enter summary judgment in favor of Lt. Manley, Captain Knapp and Lt. Butkiewicus ("defendants").  Plaintiff cannot establish that the defendants used excessive force in leaving him in a contaminated cell.

"Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Whitley v. Albers, 475 U.S. 312, 321-22, 89 L. Ed. 2d 251, 106 S. Ct. 1078, 1085 (1986) citing Bell v. Wolfish, 441 U.S. at 547, 99 S.Ct. at 1878.  The eighth amendment "does not give judges carte blanche to impose their theories of penology on the nation's prisons."  Bass v. Perrin, 1999 U.S. App. Lexis 5905 (11th Cir. 1999).

In Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court clarified the standards for determining whether Eighth Amendment violations have occurred:

> officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.  Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."  475 US, at 320, 89 L Ed 2d 251, 106 S Ct 1078 . . . . whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

Id. at 6, 7, 112 S.Ct. at 999.

More specifically, a court should consider both the "objective" and "subjective" components of an alleged violation when examining an Eighth Amendment claim. See Hudson, 503 U.S. at 8, 112 S.Ct. at 999. The objective component relates to the level of force physical force used and whether it is repugnant to mankind. Id. at 9-10, 112 S.Ct. at 1000. The subjective component relates to whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. See Id. at 8, 112 S.Ct. at 999; Wilson v. Seiter, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).

The Court indicated in Hudson that:

> Under the Whitley approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 US, at 321, 89 L Ed 2d 251, 106 S Ct 1078. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." Ibid. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

Hudson, 503 U.S. at 7, 112 S.Ct. at 999 (quoting Whitley, 475 U.S. at 321, 106 S.Ct. at 1085) (emphasis added); see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). If the defendants acted maliciously, wantonness has been established and an Eighth Amendment violation has occurred. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). If, on the other hand, the defendants acted in a good-faith effort to maintain and restore discipline, no

constitutional violation has occurred because the subjective component of the claim has not been satisfied.  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.  In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Johnson, 481 F.2d at 1033 (emphasis added).

Allegations of being "bumped, grabbed, elbowed and pushed" by correctional officers "do not approach an Eighth Amendment claim."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).  "Indeed, not even 'every malevolent touch by a prison guard gives rise to a federal cause of action.'  Hudson, 503 U.S. at 9."  Id.

In Hewitt v. Helms, 459 U.S. 460, 474, 74 L. Ed. 2d 675, 103 S. Ct. 864 (1983)(emphasis added)  the United States Supreme Court noted that  the assessment of when seriousness of threat has abated is purely subjective and involves the prediction of "not just one inmate's future actions ... but those of an entire institution".

Here, at all times, leaving plaintiff in his cell for sixteen minutes after he and his cellmate cuffed up was a good faith effort to restore discipline to the facility.  On August 26, 2002, Lt. Manley was told that inmates Vernon Robinson and inmate Corey Brooks were in cell 1 East 112 with a covering over their cell door window and thus staff could not see into their cell.  Statement of Material Facts Not in Dispute par.  1.  Lt. Manley

ordered the inmates to remove the covering but neither inmate in the cell removed the window covering.    Ruling on Defendants Motion for Summary Judgment p. 2-3; Statement of Material Facts Not in Dispute par.  2.  Lt. Manley left the tier and called for a cell extraction team.   Statement of Material Facts Not in Dispute par.  2.

During the routine day, no staff carry guns or batons inside Connecticut Correctional facilities.   Statement of Material Facts Not in Dispute par.  3.  Rather, correctional officers have only their interpersonal skills to rely upon as protection against unruly or threatening inmates.   Statement of Material Facts Not in Dispute par.  4. Supervisors also carry a chemical agent.  Statement of Material Facts Not in Dispute par. 5.  However, line staff carries no other item which can be used to subdue unruly inmates. Statement of Material Facts Not in Dispute par.  5.

After calling for the cell extraction team, Lt. Manley again ordered both inmate Brooks and inmate Robinson to take down the cell window covering and warned that if the cell covering was not removed, force would be used up to and including a chemical agent.   Ruling on Defendants' Motion for Summary Judgment p. 3-4;  Statement of Material Facts Not in Dispute par.  11.   Neither inmate removed the covering.  Statement of Material Facts Not in Dispute par.  12.    Indeed, the only response to Lt. Manley's order was the comment "shove it up your ass."    Statement of Material Facts Not in Dispute par.  12.

After spraying cap-stun into the cell, twice, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. Statement of Material Facts Not in Dispute par.  13.   In addition, inmate Robinson

refused to come to the door to be handcuffed.  Statement of Material Facts Not in Dispute par. 14.

When Lt. Manley disbursed a third one second burst of cap stun into the cell, inmate Robinson, attempted to block the food trap with his mattress so Lt. Manley attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.  Statement of Material Facts Not in Dispute par. 15.

Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did.    Ruling on Defendants' Motion for Summary Judgment p. 4-5;  Statement of Material Facts Not in Dispute par.  16.    Inmate Brooks then returned to his bunk.  Ruling on Defendants' Motion for Summary Judgment p. 4-5;  Statement of Material Facts Not in Dispute par. 16.    It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.  Ruling on Defendant's Motion for Summary Judgment p. 5; Statement of Material Facts Not in Dispute par. 17.

Although both inmates were handcuffed, the cell door was not opened.  This is because, even handcuffed inmates can be dangerous.   More specifically, inmates have been known to slip handcuffs from behind their back to the front.  Statement of Material Facts Not in Dispute par. 6.    When an inmate has slipped his handcuffs to the front of his body, he is able to assault staff by raising his hands up and striking staff with the metal handcuffs.  Statement of Material Facts Not in Dispute par.  7.    In addition, an inmate who has slipped his handcuffs to the front, can still grab and use a shank or a

14

homemade knife or other weapons.  Statement of Material Facts Not in Dispute par. 8.

Staff have been seriously injured in the past by inmates slipping their handcuffs to the

front and striking staff.  Statement of Material Facts Not in Dispute par.  9.

Thus, whenever possible, to protect staff from as much injury as possible, when

there is a planned use of force, and time permits, staff is ordered to put on protective gear

such as helmets, vests, and knee pads to protect them from inmates who may attempt to

strike them and injure them with handcuffs slipped to the front.   Statement of Material

Facts Not in Dispute par.  10.

Here, there was no reason why either inmate needed to be removed from the cell

immediately.  More specifically, neither  plaintiff nor his cell mate, inmate Robinson

appeared to be in any sort of acute distress.  Statement of Material Facts Not in Dispute

par.  25.   Indeed at his deposition, plaintiff testified that the mace did not affect inmate

Robinson.  Statement of Material Facts Not in Dispute par.  25.  Inmate Brooks also did

not appear to have difficulty breathing.  Statement of Material Facts Not in Dispute par.

26.  He was laying on his top bunk moving, and appeared to be in no acute distress.

Statement of Material Facts Not in Dispute par.  26.  In addition, Dr. Edward Blanchette,

Director of Clinical Services for the Department of Correction, reviewed the videotape of

the deployment of the cap stun into inmate Brooks and inmate Robinson's cell on August

26, 2002.  Statement of Material Facts Not in Dispute par.  31.  In his professional

opinion, inmate Brooks did not appear to be in any sort of acute distress which warranted

his immediate removal from the cell after the cap stun was deployed and he and his cell

mate were handcuffed.  Statement of Material Facts Not in Dispute par. 32.

Thus, even though both inmates Brooks and Robinson were cuffed up, there was no need for their immediate removal from their cell.    On the other hand, inmate Robinson was agitated and out of control, and the cap-stun had minimal effect on him, and to escort him out of the cell, correctional staff would have to gain control over him and place their hands on him.  Statement of Material Facts Not in Dispute par.  27.  Given that plaintiff had previously threatened to assault staff with a bag of books, Statement of Material Facts Not in Dispute par.  20, Lt. Manley and Lt. Butkiewicus waited approximately sixteen minutes for the cell extraction team to arrive before entering the cell so as to minimize the potential for staff assaults.    Statement of Material Facts Not in Dispute par.  18, 19.

Many times, once inmates see the extraction team in their helmets, vests, knee pads and other protective equipment, they settle down and comply with the supervisor's orders.    Statement of Material Facts Not in Dispute par.  28.  That is indeed what happened in this case after the cell extraction team arrived.  Statement of Material Facts Not in Dispute par.  29.

In Lt Manley's, Lt. Butkiewicus's and Captain. Knapp's professional opinions, opening the cell door without the cell extraction team, would have unnecessarily risked an assault by inmate Robinson to the staff on the tier.  Statement of Material Facts Not in Dispute par.  29.   As neither inmate was in any acute distress requiring their immediate extraction from the cell, the more prudent course to take was to wait for a fully equipped cell extraction team to arrive.  Statement of Material Facts Not in Dispute par.  29.  There is no genuine issue of material fact in this case.  Plaintiff cannot establish that the

defendants used excessive force in leaving him in his cell for sixteen minutes, until the cell extraction team arrived. Thus summary judgment should enter in defendants' favor.

**III.     PLAINTIFF CANNOT PROVE THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT IN LEAVING PLAINTIFF IN HIS CELL FOR SIXTEEN MINUTES**

Summary Judgment should issue on any claim that defendants were deliberately indifferent to plaintiff by leaving him in his cell for sixteen minutes after he and his cell mate cuffed up.

> prison officials have a duty to "provide humane conditions of confinement; . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates....'"
>
> Farmer v.Brennan, 128 L. Ed. 2d 811, 114 S. Ct. 1970, 1976 (1994)

In order for an inmate to state a claim that conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, the inmate must demonstrate that a prison official was deliberately indifferent to his health or safety. Farmer, 114 S. Ct. at 1979; Wilson v.Seiter, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991); Del Raine v. Williford, 32 F.3d 1024, 1036 (7th Cir. 1994). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S.Ct. at 1979.

> Deliberate Indifference is conduct that offends evolving standards of decency in a civilized society. DeRosiers v. Moran, 949 F.2d at 18. The indifference must be deliberate and not inadvertent or negligent. Wilson v. Seiter, 501 U.S. 294, 301, 111 S.Ct. 2321,

2325, 115 L.Ed.2d 271 (1990); Ferola v. Moran, 622 F. Supp. 814, 820 (D.R.I. 1985).

Figueroa v. Vose, 874 F. Supp. 500, 506 (D.R.I. 1994).

Here, plaintiff cannot establish that defendants knew of and disregarded an excessive risk to plaintiff's health or safety by leaving him in his cell. Indeed, this court previously found that "plaintiff did not initially suffer any injuries due to his exposure to the chemical agent." Ruling on Defendants' Motion for Summary Judgment p. 15. Cap-Stun or Oleoresin Capsicum is an aersol made up from capsicum peppers (hot red cayenne peppers) and is typically used to temporarily render an inmate incapable of attacking or resisting correctional staff. Statement of Material Facts Not in Dispute par. 22. It typically causes an individual's eyes to burn and to cough. Statement of Material Facts Not in Dispute par. 23. Cap stun is used by law enforcement personnel because there is no harmful after-effect. Statement of Material Facts Not in Dispute par. 23.

Neither inmate Robinson nor his cell mate, inmate Brooks appeared to be in any sort of acute distress which required their immediate removal from their cell after they were handcuffed. Statement of Material Facts Not in Dispute par. 25. Indeed at his deposition, plaintiff testified that the mace did not affect inmate Robinson. Statement of Material Facts Not in Dispute par. 25. Inmate Brooks was coughing and inmate Robinson claimed that inmate Brooks could not breath. Statement of Material Facts Not in Dispute par. 26. However, inmate Brooks did not appear to have difficulty breathing. Statement of Material Facts Not in Dispute par. 26. He was laying on his top bunk moving, and appeared to be in no acute distress. Statement of Material Facts Not in Dispute par. 26.

According to Dr. Edward Blanchette, Director of Clinical Services for the Department of Correction who reviewed the videotape of the deployment of the cap stun into plaintiff's cell on August 26, 2002, plaintiff did not appear to be in any sort of acute distress which warranted his immediate removal from the cell after the cap stun was deployed and he and his cell mate were handcuffed. Statement of Material Facts Not in Dispute par. 31, 32. Indeed, after plaintiff was removed from the cell he was escorted to a shower and then to the medical unit. Statement of Material Facts Not in Dispute par. 33. There, a nurse asked plaintiff if he had any injuries and he shook his head no. Statement of Material Facts Not in Dispute par. 33. Two minutes later, the nurse again stated, "No injuries, you're all set?" and the plaintiff indicated that he was all set. Statement of Material Facts Not in Dispute par. 33.

Nurse Dudley also listened to plaintiff's lungs and took his vital signs. Statement of Material Facts Not in Dispute par. 34 Plaintiff's lungs were clear, his blood pressure and respiration were normal. Statement of Material Facts Not in Dispute par. 34. Additionally, she noted that plaintiff's oxygen saturation levels were excellent at 97%. Statement of Material Facts Not in Dispute par. 34. Finally, the next day when plaintiff's restraints were removed, plaintiff denied that he had any medical issues. Statement of Material Facts Not in Dispute par. 36.

It is Dr. Blanchette's opinion beyond a reasonable degree of medical probability that keeping plaintiff in his cell, after the deployment of cap stun, for approximately 16 minutes until the cell extraction team arrived caused him no long term harm or adverse effect. Statement of Material Facts Not in Dispute par. 35.

As a matter of law, plaintiff cannot establish that defendants knew of and disregarded an excessive risk to inmate health or safety by keeping him in his cell for 16 minutes until the cell extraction team arrived to escort inmate Robinson and he out of their cell. There is no genuine issue of material fact. Accordingly, summary judgment should issue on plaintiff's claims that his constitutional rights were violated because he was forced to remain in a contaminated cell.

## IV.    DEFENDANTS HAVE QUALIFIED IMMUNITY AND THUS ARE ENTITLED TO SUMMARY JUDGMENT

Because the defendants did not violate any clearly established statutory or constitutional rights of the plaintiff, they are entitled to qualified immunity.

The defense of qualified immunity is a well-settled doctrine which protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995).

"The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). The subjective motivation of the officials is irrelevant to the inquiry. Anderson, 483 U.S. at 641; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). Rather, the focus is on

whether reasonable officials in the position of the defendants could have believed their actions were lawful. Where reasonable officials could disagree, the official is entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. Id. The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. See Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1997); Harlow v. Fitzgerald, 457 U.S. at 814, 102 S.Ct. at 2736.

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

Here, at a minimum, defendants are entitled to qualified immunity. Reasonable correctional lieutenants, like Lt. Manley, Butkiewicus and Knapp would have believed they were acting in accordance with an inmate's Eighth Amendment rights in waiting sixteen minutes, for the arrival of the cell extraction team, before removing the handcuffed plaintiff and his cell mate from their cell in which cap-stun was utilized. Particularly, here, where plaintiff was not in any sort of acute distress. Statement of

21

Material Facts Not in Dispute par. 32.  At a minimum, reasonable correctional lieutenants could disagree over whether plaintiff and his cellmate should be removed from the contaminated cell immediately after they were cuffed, or whether it was proper to wait for staff, fully equipped with vests, helmets and pads.  As discussed above, where reasonable lieutenants can disagree, defendants are entitled to qualified immunity. Accordingly, summary judgment should issue in favor of defendants on these claims.

**VI.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

Here, as defendants are entitled to judgment as a matter of law on the federal claims, this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them.

28 U.S.C. § 1367(c)(3) states in relevant part:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--. . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .

This Court has previously noted that absent usual circumstances, the failure to dismiss pendent state law claims in situations where the federal claims were dismissed might constitute an abuse of discretion.  Spear v. Town of West Hartford, 771 F. Supp. 521, 530 (D.  Conn. 1991) aff'd 954 F.2d 63 (2d Cir. 1992)

In this ruling the court dismisses the anchor claims and thus the pendent state  claims must also be dismissed.  United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) ("certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); Albany Insurance Co. v. Esses, 831 F.2d 41, 45 (2d Cir. 1987) ("since the only subject matter jurisdictional basis for this lawsuit . . . was properly dismissed, it was well within the discretion of the district court to dismiss the pendent state law claims"). Furthermore,

> absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim already disposed of pursuant to a Rule 12(b)(6) motion. See Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir.) cert. denied, 423 U.S. 1034, 46 L. Ed. 2d 408, 96 S. Ct. 567 (1975); Smith v. Weinstein, 578 F. Supp. 1297, 1304 (S.D.N.Y.), aff'd,738 F.2d 419 (2d Cir. 1984).

Id.

Here, because defendants are entitled to judgment as a matter of law on the federal claims, this court should dismiss the state law claims under 28 U.S.C. §1367(c)(3).

## CONCLUSION

For all the foregoing reasons, defendants respectfully move for summary judgment in this action.

                                        DEFENDANTS

                                        Lt. Manley
                                        Lt. Butkiewicus
                                        Captain Knapp

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL

                                        ___/s/_____
                                   By:  Ann E. Lynch
                                        Assistant Attorney General
                                        110 Sherman Street
                                        Hartford, CT 06105
                                        Tel.:  (860)808-5450
                                        Fax:  (860) 808-5591
                                        Federal Bar No. ct08326

## **CERTIFICATION**

I hereby certify that pursuant to § 5(b) of the Federal Rules of Civil Procedure a

copy of the foregoing was mailed, postage prepaid, this _____ day of May 2005 to:

Corey Brooks, #237651
Cheshire Correctional Institution
900 Highland Ave.
Cheshire Ct 06410

_____/s/_____
Ann E. Lynch
Assistant Attorney General