UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COREY T. BROOKS                                    CASE NO. 3:03CV00544 (WWE) (HBF)

VS.

LARRY MYERS ET. AL.,                               2005 JUN 21  P 4:30
                                                   DATE: JUNE 15, 2005

U.S. DISTRICT COURT

## AFFIDAVIT IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

I AM THE PLAINTIFF IN THE ABOVE INTITLED CASE. I MAKE THIS AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MY CLAIM CONCERNING THE USE OF EXCESSIVE FORCE AGAINST ME BY DEFENDANTS MANLEY, BUTKIEWICS AND KNAPP.

THE DEFENDANTS AFFIDAVITS CLAIM, IN SUMMARY, THAT I WAS LEFT IN CONTAMINATED CELL WHILE HANDCUFFED BEHIND MY BACK AS SO WAS THE PLAINTIFFS' CELLMATE. THEY CLAIM THAT INMATES ARE KNOWN TO SLIP THIER HANDCUFFS TO THE FRONT OF THIER BODY. THEY CLAIM INMATE ROBINSON WAS OUT OF CONTROL EVEN AFTER HE WAS HANDCUFFED BEHIND THE BACK. THE CLAIM THAT THE PLAINTIFF APPEARED TO BE IN NO ACUTE DISTRESS, THATS WHY HE WAS LEFT IN THE CELL FOR 15 TO 20 MINUTES.

THE DEFNDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUSES OF MATERIAL FACT TO BE RESOLVED. THESE ISSUES ARE IDENTIFIED IN THE ACCOMPANYING STATEMENT OF DISPUTED FACTUAL ISSUES FILED BY THE PLAINTIFF PURSUANT TO RULE 56 OF THE FEDDERAL RULES OF CIVIL PROCEDURE. THE FACTS ARE SET OUT IN THIS AFFIDAVIT.

ON AUGUST 26, 2002 THE PLAINTIFF WAS EXPOSED TO CHEMICAL AGENTS FOR 15 TO 20 MINUTES IN AN AREA THAT WAS IN COMPLETE CONTROL OF THE DEFENDANTS. WHICH CAN BE SEEN ON THE VIDEO TAPE AS EXHIBIT 1.

WHILE PLAINTIFF AND INMATE ROBINSON WERE HANDCUFFED BEHIND THEIR BACKS. PLAINTIFF HAD VOMITED, WAS CHOKING ON SPIT AND COULD NOT BREATHE, THIS WAS CLEAR TO DEFENDANTS. SEE AFFIDAVITS OF DEFENDANTS MANLEY, BUTKIEWICS FILED IN MAY OF 2005 PAR. 13 AS EXHIBIT 2.

DEFENDANTS SAY INMATES ARE KNOWN TO SLIP THIER CUFFES TO THE FRONT OF THIER BODY. THAT WHEN THIS HAPPENS THERE'S A CHANCE THAT THEY CAN BE ASSAULTED. THATS WHY THEY SAY PLAINTIFF WAS LEFT IN CONTAMINATED AREA BECAUSE OF THIS. GIVEN THAT DEFENDANTS HAD A CLEAR VIEW INTO PLAINTIFFS' CELL AFTER BOTH INMATES WERE CUFFED. IT WOULD HAVE BEEN IMPOSSIBLE FOR EITHER INMATE TO SLIP THIER CUFFES TO THE FRONT BEING THAT THIS IS A VERY DIFFICULT THING TO DO. NEITHER PLAINTIFF OR INMATE ROBINSON ARE KNOWN TO SLIP THIER CUFFES TO THE FRONT.

AFTER INMATE ROBINSON WAS CUFFED UP, HE WAS CALM AND ANSWERING QUESTIONS. SEE VIDEO TAPE OF INCIDENT AS EXHIBIT 3.

LT. BUTKIEWICS WANTED TO REMOVE THE PLAINTIFF FROM THE CONTAMINATED CELL, BUT WHEN HE ASKED LT. MANLEY "LETS REMOVE THEM FROM HERE" MANLEY SAYS NO THAT THEY CAN WAIT." INDEFIANCE OF NORTHERN CORRECTIONAL INSTITUTION RULES AND POLICIES, WHICH SAY ANY PERSON EXPOSED TO CHEMICAL AGENTS WILL BE REMOVED IMMIDIATELY FROM CONTAMINATED AREA. LT. MANLEYS' DEFIANCE OF THESE POLICIES CAN BE SEEN AND HEARD ON THE VIDEO TAPE OF THE INCIDENT, SEE ADMISSIONS RESPONSE, ADMINISTRATIVE DIRICTIVE 6.5.1 AND VIDEO TAPE OF THIS INCIDENT AS EXHIBITS 4. 5. AND 6.

DEFENDANTS MANLEY, BUTKIEWICS AND KNAPP WERE ANGRY THAT THE MACE HAD LITTLE TO NO HURTFUL EFFECT ON INMATE ROBINSON SO THEY LEFT HIM IN THERE, IN DELIBERATE DISREGARD OF PLAINTIFFS' COMPLAINTS THAT HE COULD NOT BREATHE SEE VIDEO TAPE OF INCIDENT AS EXHIBIT 7.

THE AFFIDAVITS OF DEFENDANTS BUTKIEWICS, AND MANLEY SAY NOTHING OF EITHER INMATE BEING OUT OF CONTROL AFTER THEY WERE CUFFED THEY SAY "ONLY THAT ONCE BOTH INMATES WERE CUFFED WE AWAITED THE EXTRACTION TEAM" THIS WAIT WAS 15 TO 20 MINUTES.

SEE AFFIDAVITS PAR 13. & 14. OF DEFENDANTS MSNLEY AND BUTKIEWICS FILED IN MAY OF 2004 AS EXHIBITS 7. & 8.

THE N.C.I INCIDENT REPORTS FROM DEFENDANTS MANLEY AND BUTKIEWICS IN WHOLE PORTRAY A DIFFERENT STORY FROM THEIR AFFIDAVITS OF WHY THE EXTRACTION TEAM HAD TO BE MOBILIZED. THEY SAY "THE EXTRACTION TEAM WAS TO BE UTILIZED DUE TO THE FACT THAT WE HAD LEARNED THAT I/M ROBINSON HAD A MATTRESS AGAINST THE CELL DOOR AND WAS BARRICADED IN CELL 112 DUE TO THE FACT THAT STAFF WAS UNABLE TO OBSERVE I/M ROBINSON AND BROOKS ACTION THE SAFEST COURSE OF ACTION WAS TO UTILIZE THE EXTRACTION TEAM". SEE INCIDENT REPORTS OF LT'S MANLEY & BUTKIEWICS AS EXHIBITS 9. & 10.

THE DEFENDANTS ARE CLEARLY TRING TO DUPE THE COURT INTO BELEAVING THAT INMATE ROBINSON WAS COMPLETELY OUT OF CONTROL WHEN ON VIDEO TAPE (IDINTIFIED AS EXHIBIT 3.) THAT INMATE ROBINSON WAS FULLY HANDCUFFED BEHIND HIS BACK WAITING TO BE EXTRACTED FROM THE CELL. AS STATED PRIOR IN PARAGRAPH 8 OF THIS AFFIDAVIT LT.MANLEY STATES "NO THEY CAN WAIT IN THE CELL FOR EXTRACTION TEAM". THE EVIDENCE IN THIS MATTER WHICH IS THE DEFENDANTS OWN VIDEO TAPE, REFUTES THIER CLAIM AS TO WHY THE PLAINTIFF WASN'T EXTRACTED FROM THE CELL IMMIDIATELY. THE PLAINTIFF BECAUSE HE WAS LEFT IN CONTAMINATED CELL FOR 15 TO 20 MINUTES HAS INJURIES TO HIS EYES. PLEASE SEE MEDICAL REQUEST & MEDICAL GREVANCE OF PLAINTIFFS COMPLAINTS AS EXHIBITS 11. & 12.

CONTRARY TO DEFENDANTS' AFFIDAVITS, DURING THESE EVENTS I COULD NOT BREATHE, I WAS CHOKING AND HAD VOMITED, DURING THIS TIME PLAITIFF AND INMATE ROBINSON WERE CUFFED BEHIND THE BACK AND DEFENDANTS HAD COMPLETE CONTROL OF THE SITUATION, AND COULD HAVE REMOVED PLAINTIFF IMMEDIATELY FROM CONTAMINATED CELL. INMATE ROBINSON WAS SUBDUED IN HANDCUFFES AND LET DEFENDANTS KNOW THAT PLAINTIFF WAS INACUTE DISTRESS.

THE FOREGOING FACTUAL ALLEGATIONS CREATE A GENUINE ISSUE OF MATERIAL FACT AND WILL, IF PROVED AT TRIAL, ENTITLE ME TO JUDGMENT, AS EXPLAINED IN THE BRIEF SUBMITTED WITH THIS DECLARATION. PURSUANT TO 28 U.S.C. 1746 I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


COREY T. BROOKS #237651
900 HIGHLAND AVE
CHESHIRE, CT 06410

*Corey Brooks* (signature)

DATE: JUNE 15, 2005



# Incident Report – Supplemental Page
**Connecticut Department of Correction**

11 of 14

CN6601/3 REV 4/4/02

| | | |
|---|---|---|
| Facility/CEO NORTHERN C.I. | Incident location 1E112 | Report no. 0208063 |
| Incident class ☐ 1 ☒ 2 ☐ 3 Type F | Date 8-26-02 | Time 2:59pm ☐ a.m. ☒ p.m. |
| Prepared by Butkiewicus, D | | Title Lieutenant |

Additional narrative:

On 8-26-02 This writer was assigned as an evening watch supervisor at Northern Correctional Institution. At approximately 2:59pm I was summoned to the 1 East housing unit along with Lt. Manley by Captain M. Butler (1East & 1West Unit Manager). Upon arriving in the unit I was informed by Capt. Butler that I/M Vernon Robinson #280966 and Corey Brooks #237651 had covered the window of cell 112. Both inmates were housed in cell 112 b &112a respectively. Captain Butler informed us that I/M Robinson was an active participant in covering the window of the cell. Captain Butler educated us that I/M Robinson had covered his window because he thought that Officer Young, K had removed a poem from his mail on 8-25-02 when she collected mail from his cell. Robinson stated that when Officer Young collected mail on the evening watch 8-25-02 that she may have removed a poem from his envelope and he felt disrespected by that. Officer Young denied the allegations and stated to that she never removed the poem. She said Robinson's mail was secured in the appropriate unit mailboxes. Robinson admitted that he had in fact covered the window because of his belief. Lt. Manley approached that cell and instructed I/M Robinson to remove the obstruction covering his cell window. Robinson failed to comply. Lt. Manley informed Robinson that his failure to comply would result in his being placed on In-Cell Restraints Robinson again failed to comply with direction. Officer Williams, T was designated as the camera operator for the incident. At this time We exited the tier to assemble an extraction team. The extraction team was to be utilized due to the fact that we had learned that I/M Robinson had a mattress against the cell door and was barricaded in cell 112. Due to the fact that staff was unable to observe I/M Robinson and Brooks the safest course of action was to utilize the extraction team. As the team was being assembled this writer along with Lieutenant Manley approached cell 112. He directed both inmates Robinson and Brooks to remove the obstruction from the cell window both inmates failed to comply with the direction. Both inmates were again informed that if they failed to comply with direction chemical agent would be deployed. Both inmates refused to comply with direction. At this point I assisted Lt. Manley by utilizing the trap shield attempting to block the trap. Lt. Manley unsecured the trap in an attempt to gain visual access into the cell. I/M Robinson attempted to throw an unidentified liquid substance on this writer and Lt. Manley, however due to the trap shield being present we were was not struck with the liquid. Lt. Manley then deployed one, one-second area burst of oleoresin capsicum into cell 112 utilizing the Z-305 standard duty model unit. I/M Robinson was directed to approach the trap to be restrained. Robinson failed to comply. At this point a second area burst of oleoresin capsicum was deployed into cell 112. I/M Robinson then removed the obstruction from his cell window and turned on his cell light. Robinson was again directed to approach the trap to be restrained and failed to comply. At this point the trap was secured. I/M Robinson then approached the window and began to taunt staff. He then approached his sink, which was full of water and began to decontaminate himself at this point Lt. Manley deployed a third one second burst of oleoresin capsicum into cell 112. At this point I/M Robinson approached the trap and blocked the trap with his mattress. Lt. Manley then attempted to deploy another burst of oleoresin capsicum into the cell however I was prevented partially due to the mattress. At this point I/M VBrooks was instructed to approach the door to be restrained and he complied. Once secured he returned to his bunk. Roibinson then eventually was secured in handcuffs. At point we awaited the arrival of the extraction team to the unit to take the escort of I/M Robinson and Brooks. The following staff were utilized. Officers Pafumi and Keeney under Lt. Manley's direction escorted I/M Robinson to the unit dayroom where he was secured. I supervised the escort of I/M Brooks to the unit shower for decontamination. Once decontaminated he was escorted to cell 101 where he was strip searched and issued non-contaminated linen and clothing. He was assessed by medical with no medical issues noted (see medical incident report). Medical staff also flushed Brooks eyes with water. I/M Brooks was secured in cell 101 on In-Cell Restraint status without further incident. Brooks was issued a Class 'A' Disciplinary Report for Inrterfering with safety and seurtity. Brooks was placed on a custody 15 minute watch and modified meal status.

| | | |
|---|---|---|
| Reporting employee signature | | Title Lt |
| Report date 8-26-02 | Report time 1200 ☒ a.m. ☐ p.m. | Type ☐ Individual ☒ Summary |

# SERIOUS INCIDENT SUMMARY REPORT

IR# 020866

| | | | |
|---|---|---|---|
| Facility: Northern CI | Date: 8-26-02 | | Time: 2:59pm |
| Location: 1E112 | Incident Class: 2F | | |

**Inmate(s) Involved:**

Robinson, Vernon #280966     Brooks, Corey #237651

**Staff Involved:**

| Manley, K | Butkiewicus | Keeney, W | Pafumi, M |
| Rivera, E | Rae | Jones, M | Howes |
| Dudley | | | |

**Synopsis of Incident:**

On 8-26-02 This writer was assigned as an evening watch supervisor at Northern Correctional Institution. At approximately 2:59pm I was summoned to the 1 East housing unit by Captain M. Butler (1East & 1West Unit Manager). Upon arriving in the unit I was informed by Capt. Butler that I/M Vernon Robinson #280966 and Corey Brooks #237651 had covered the window of cell 112. Both inmates were housed in cell 112 b &112a respectively. Captain Butler informed me that I/M Robinson was an active participant in covering the window of the cell. Captain Butler educated me that I/M Robinson had covered his window because he thought that Officer Young, K had removed a poem from his mail on 8-25-02 when she collected mail from his cell. Robinson stated that when Officer Young collected mail on the evening watch 8-25-02 that she may have removed a poem from his envelope and he felt disrespected by that. Officer Young denied the allegations and stated to me that she never removed the poem. She said Robinson's mail was secured in the appropriate unit mailboxes. Robinson admitted that he had in fact covered the window because of his belief. I approached that cell and instructed I/M Robinson to remove the obstruction covering his cell window. Robinson failed to comply. I informed Robinson that his failure to comply would result in his being placed on In-Cell Restraints Robinson again failed to comply with direction. Officer Williams, T was designated as the camera operator for the incident. At this time I exited the tier to assemble an extraction team. The extraction team was to be utilized due to the fact that I had learned that I/M Robinson had a mattress against the cell door and was barricaded in cell 112Due to the fact that staff was unable to observe I/M Robinson and Brooks action the safest course of action was to utilize the extraction team. As the team was being assembled this writer along with Lieutenant Butkiewicus approached cell 112. I directed both inmates Robinson and Brooks to remove the obstruction from the cell window both inmates failed to comply with the direction. Both inmates were again informed that if they failed to comply with direction chemical agent would be deployed. Both inmates refused to comply with direction. At this point Lieutenant Butkiewicus utilizing the trap shield attempted to block the trap. I unsecured the trap in an attempt to gain visual access into the cell. I/M Robinson attempted to throw an unidentified liquid substance on this writer, however due to the trap shield being present I was not struck with the liquid. I then deployed one, one-second area burst of oleoresin capsicum into cell 112 utilizing the Z-305 standard duty model unit. I/M Robinson was directed to approach the trap to be restrained. Robinson failed to comply. At this point a second area burst of oleoresin capsicum was deployed into cell 112. I/M Robinson then removed the obstruction from his cell window and turned on his cell light. Robinson was again directed to approach the trap to be restrained and failed to comply. At this point the trap was secured. I/M Robinson then approached the window and began to taunt staff. He then approached his sink, which was full of water and began to decontaminate himself. at this point I deployed third one second burst of oleoresin capsicum into cell 112. At this point I/M Robinson approached the trap and blocked the trap with his mattress. I then attempted to deploy another burst of oleoresin capsicum into the cell however I wqas prevented partially due to the mattress. At this point I/M VBrooks was instructed to approache the door to be restrained and he complied. Once secured he returned to his bunk. Roibinson then eventually was secured in handcuffs. At point I awaited the arrival of the extraction team to the unit to take the escort of I/M Robinson and Brooks. The following staff were utilized. Officers Pafumi and Keeney under my direction escorted I/M Robinson to the unit dayroom where he was secured. Lt. Butkiewicus supervised the escort of I/M Brooks to the unit shower for decontamination. Once decontaminated the unit shower was vacated and Robinson was escorted to the shower where he was decontaminated with cool running water. Once decontaminated he was escorted to cell 103 where he was strip searched and issued non-contaminated linen and clothing. He was assessed by medical with no medical issues noted (see medical incident report). Medical staff also flushed Robionsons eyes with water. I/M Robinson was secured in cell 103 on In-Cell Restraint status without further incident. Robinson was issued a Class 'A' Disciplinary Report for Inrterfering with safety and seurtity.



# Inmate Grievance Form A, Level 1
## Connecticut Department of Correction

CN 9601
Rev. 1/8/0?

| Inmate Name | COREY BROOKS | | Inmate no. 237651 |
|---|---|---|---|
| Facility NORTHERN C.I | | Housing unit 3 EAST | Date MARCH 28, 2003 |

☑ Line grievance   ☐ Line emergency   ☒ Health grievance   ☐ Health emergency

1. Informal resolution. Attach a copy of Inmate Request Form (CN 9602) containing the appropriate staff member's response, or indicate why the form is not attached.

2. Nature of grievance. Indicate the events and reasons that led you to file this grievance. Specify dates, places, personnel involved, and how you were affected. (If you need more space, use an 8 ½ by 11 inch sheet of paper and attach it to this form.) ON AUGUST 26, 2002 I WAS SUBJECTED TO MACE AND I WAS NOT DECONTAMINATED PROPERLY I WAS ONLY ALLOWED TO PLACED MY FACE UNDER SOME WATER AND MY EYES WERE NOT FLUSHED PROPERLY BY MEDIC COLLEN DUDLEY. WHILE ON IN-ce RESTRAINSTS THE MACE STARTED TO REACTIVATE AND BURN MY SKIN, EYES, AND FACE. WHEN I COMPLAINED OF THIS WHEN MEDIC STEPHEN DID HIS ROUNDS HE SAID IT WAS NOTHING HE COULD DO THAT I WOULD HAVE TO DEAL WITH IT. BECAUSE OF THIS MY EYE IS PUFFY FROM THE MACE THE MEDIC SAID I ALREADY SAW THE EYE DOCTOR SO I HAVE TO WAIT 2 YEARS

3. Action requested. Describe what action you want taken to remedy the grievance.
I WOULD ASK THAT I SEE EYE DOCTOR AND HAVE SAID MEDICS REPRIMANDED

Inmate signature Corey Brooks

You may appeal this decision within 5 days. Use Inmate Grievance Form B.

### FOR OFFICIAL USE ONLY – LEVEL 1 REVIEW

| IGP no. M1410366 | | T no. |
|---|---|---|
| Date received 4/4/03 | Disposition Denied | Date of disposition 4/4/03 |

Grievance issue  Treatment

Reasons  You will be seen by the eye doctor when your turn comes up. He has a long list

Level 1 reviewer  J. Hughes C.H.S

## CONNECTICUT DEPARTMENT OF CORRECTION
### NORTHERN CORRECTIONAL INSTITUTION

## INMATE REQUEST FORM

Date: 2-17-2003

HOUSING UNIT:  I   II   (III)        (EAST) or  WEST        Cell # 221
(Circle One)

Inmate Name: Corey brooks        Number: 237651

Request: I would like to know what number am I on the list to get my Right EYE checked, On the request I recieved back in november 13, 2002 they told me I was sixth on the list to see the eye doctor & havent seen anyone yet, & my EYE is still puffy and swollen. SEE Attach request Dated NOV, 8 2002

(Continue on back if necessary)

Submitted to: _____     Date Received: _____

Acted on by: _____

Action taken and/or response: _____

# means nothing

It is based on priorities

You are on the list, but it was found you went 5/1/02. Appt's are every 2 years

Date of Response to Inmate: 2/20/03

Signature of Staff Member: [signature]

NCI 950

fourth one second burst of cap-stun, however, I was partially prevented from doing so by the mattress.

12. I then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did. Inmate Brooks then returned to his bunk. It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.

13. <u>Once both inmates were cuffed up, I awaited the arrival of the cell extraction team to escort both inmates out of the cell.</u>

Lt. Kevin Manley

Subscribed to and sworn before me, this 27 day of May 2004.

Notary Public/Commissioner of the Superior Court
My Commission expires:
4-30-05

4

Manley then deployed one, one second burst of cap-stun. Inmate Robinson was ordered to remove the window covering and approach the trap and be restrained which he refused to do.

11. Accordingly, Lt. Manley deployed a second one second burst of cap-stun into the cell. After the cap-stun was deployed, inmate Robinson removed the cell window covering and turned on the cell light. However, inmate Robinson ran into the cell window yelling that he had a bag of books, that staff should get ready and come on in. In addition, inmate Robinson refused to come to the door to be handcuffed.

12. Accordingly, Lt. Manley disbursed a third one second burst of cap stun into the cell. Inmate Robinson, then attempted to block the food trap with his mattress so Lt. Manley attempted to disburse a fourth one second burst of cap-stun, however, he was partially prevented from doing so by the mattress.

13. Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did. Inmate Brooks then returned to his bunk. It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.

14. Once both inmates were cuffed up, we awaited the arrival of the cell extraction teams to escort both inmates out of the cell.

15. Both inmates were placed into in cell restraints for their failure to remove the cell window covering. In cell restraints consist of handcuffs in front, shackles on the ankles and a tether chain connecting the handcuffs to the shackles. Regardless of whether plaintiff covered his cell window, he was required to remove the cell covering when ordered to do so.

16. Inmate Brooks' failure to remove the cell covering jeopardized safety and security of the facility. Staff had to pulled from other positions throughout the facility to assemble cell

4

extraction teams. Any time, staff has to pulled from other posts, this leaves less staff able to handle other disturbances in the correctional facility. Thus, if a fight or riot were to break out, there would be even less staff, than usual to respond to it, thereby placing other inmates and staff at risk. Plaintiff could have avoided placing staff and other inmates in harms way, simply by removing a cell window covering, but did not.

Lt. David Butkiewicus

Subscribed to and sworn before me, this __19__ day of May 2004.

Robyn DiGennaro
Notary Public/Commissioner of the
Superior Court
My Commission expires: 6/30/05

5

4. The plaintiff was secured in handcuffs and was left in a contaminated cell, after having been maced and left there for 15 minutes without decontamination.

    **RESPONSE:** Admit that after cap-stun was disbursed plaintiff was hand cuffed, his cellmate was hand cuffed and remained in their cell until the cell extraction teams arrived.

5. The plaintiff was not given an adequate decontamination shower after being placed in in-cell restraints for eighteen hours.

    **RESPONSE:** Deny. Plaintiff was taken to a shower for decontamination on 8/26/02.

6. It is the routine and established practice at Northern C.I. to decontaminate any exposed person immediately upon restoration of control.

    **RESPONSE:** Admit.

7. It is the routine and established practice at N.C.I. for inmates to have an A.S. hearing before placement in administrative segregation.

    **RESPONSE:** Admit that inmates have a hearing before placement into the Administrative Segregation Program.

8. The use of restraints are to be utilized to prevent escape, injury to others or self, property damage, and to ensure compliance with an order.

    **RESPONSE:** Admit that use of force is to be in compliance with Administrative Directive 6.5.

9. The plaintiff's cellmate was given a disciplinary report on August 26, 2002 right before he covered the cell window.

2

| Directive Reference 6.5.1 | Effective Date March 20, 2001 | Page 4 of 8 |
|---|---|---|
| Title    USE OF FORCE | | |

Upon the direction of a supervisor, a tactical operations team member shall be authorized to carry and use Category I chemical agents in accordance with this Unit Directive.

B. <u>Category II Chemical Agents.</u> Specially trained and designated staff may use Category II chemical agents on the authorization of the highest ranking onsite facility supervisor and subject to the direct supervision of a custody supervisor in accordance with this Unit Directive.

C. <u>Decision Factors.</u> The decision to utilize chemical agents should consider among other factors: (1) immediate danger posed by the inmate (e.g., active aggression, presence of weapons, known history of assaultive behavior); (2) potential injury to staff and/or inmate; (3) area where agent shall be employed; (4) potential exposure or impact on uninvolved persons; or (5) presence of known physical conditions which may contraindicate use, (e.g., heart or respiratory condition).

D. <u>Decontamination.</u> <u>Decontamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control.</u> Protective equipment shall be utilized. Personal decontamination shall include at a minimum: (1) flushing of the eyes; (2) a shower and change of clothing; (3) medical attention; and (4) removal of the person from the effected area if possible.

8. <u>Restraints</u>.

A. <u>Authorized Use</u>. Restraints as a use of physical force may be authorized: (1) to prevent escape; (2) to prevent injury to others or self; (3) to prevent property damage; and (4) to ensure compliance with an order. An inmate placed in restraints for a period longer than one (1) hour shall be placed on restrictive status in accordance with Administrative Directive 9.4, Restrictive Housing. Use of restraints in accordance with Administrative Directives 6.4, Transportation and Community Supervision of Inmates, 9.4, Restrictive Housing, or for routine movement shall not be considered a use of physical force under this Unit Directive. Any time staff have to extract, four point, or escort an inmate and there is a high risk of exposure by staff to that inmate's bodily fluids or secretions, a Tyvek Coverall will be issued to staff by a supervisor. The Tyvek Coverall Procedure (Attachment C) shall be followed when utilizing this item.


10. Lt. Manley then ordered inmate Brooks who had a towel wrapped around his mouth and head to approach the door to be handcuffed, which he did. Inmate Brooks then returned to his bunk. It was only after inmate Brooks cuffed up that inmate Robinson agreed to come to the door to be cuffed.

11. ~~Once both inmates were cuffed up, Lt. Manley and I awaited the arrival of the cell extraction team to escort both inmates out of the cell.~~

12. ~~I waited for the cell extraction team for my safety and the safety of the other staff on the tier who were not in protective clothing. Inmate Robinson had threatened to use a bag of books against staff.~~ In addition, as is readily apparent from the videotape which was submitted to the court in support of the first motion for summary judgment inmate Robinson was not incapacitated by three once second bursts of cap-stun into the cell. Inmate Robinson was not coughing and was minimally affected by the cap-stun.

13. Inmate Robinson was clearly agitated towards staff and dangerous on August 26, 2002. He covered his cell window, refused to cuff up, and threatened to harm staff. Neither inmate Robinson nor his cell mate, inmate Brooks appeared to be in any sort of acute distress which required that they be removed from their cell immediately. <u>Inmate Brooks was coughing and inmate Robinson claimed that inmate Brooks could not breath.</u> However, inmate Brooks did not appear to me to have difficulty breathing. He was laying on his top bunk moving, and appeared to be in no acute distress.

14. ~~Given that inmate Robinson was agitated towards staff and out of control, and the cap-stun had minimal effect on him, the only way it appeared we would gain control over him was for correctional staff to place their hands on him.~~

3

15. Many times, once inmates see the extraction team in their helmets, vests, knee pads and other protective equipment, they settle down and comply with the supervisors orders. That is indeed what happened in this case after the cell extraction team arrived.

16. In my professional opinion, opening the cell door without the cell extraction team, would have unnecessarily risked an assault by inmate Robinson to myself or the other staff on the tier. As neither inmate was in any acute distress requiring their immediate extraction from the cell, the more prudent course to take was to wait for a fully equipped cell extraction team to arrive.

Lt. David Butkiewicus

Subscribed to and sworn before me, this 18 day of May 2005.

Notary Public/Commissioner of the
Superior Court
My Commission expires:

4

## CERTIFICATION

I HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS MAILED THIS DAY OF JUNE 15 TO:

ASSISTANT ATTORNEY GENERAL
ANN E. LYNCH
110 SHERMAN STREET
HARTFORD, CONNECTICUT 06105

P

BY: COREY T. BROOKS
Pro se litigant
Corey Brooks
900 HIGHLAND AVE
CHESHIRE, CT 06410