```
             UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT
```

```
COREY T. BROOKS                 :
                                :            PRISONER
         v.                     :  Case No.  3:03CV544 (WWE)(HBF)
                                :
WARDEN LARRY MYERS, ET AL.¹     :
```

RULING ON DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

The plaintiff, Corey Brooks, has filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges, inter alia, that the defendants used excessive force against him when they sprayed a chemical agent into his cell on August 26, 2002, and later failed to provide him with medical treatment for injuries suffered as a result of his exposure to the chemical agent.

On July 27, 2004, the court granted in part and denied in part a motion to dismiss filed by the defendants. The court granted the motion as to as to all official capacity claims for monetary damages and declaratory relief and as to all other claims against defendants Myers, Butler, Dudley and Regan. It denied the motion as to claims against defendant Badura in his individual capacity and denied the motion as moot as to all claims for injunctive relief. The court also declined to

---

[1] The named defendants are Warden Larry Myers, Major Thomas Coates, Captains Matthew Regan and Maurice Butler, Lieutenants Knapp, Butkiewicus and Manley, Correctional Officers Howes, Oberg, Pafumi, Jones and Nurses Stephen Badura and Colleen Dudley.

exercise supplemental jurisdiction over the plaintiff's state law claims against Myers, Butler, Dudley and Regan and dismissed those claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The action remained pending against defendants Coates, Knapp, Butkiewicus, Manley, Howes, Oberg, Pafumi, Jones and Badura in their individual capacities.

On May 28, 2004, defendants Coates, Knapp, Butkiewicus, Manley, Howes, Oberg, Pafumi, Jones and Badura filed a motion for summary judgment. On April 25, 2005, the court granted the motion as to all claims against defendants Coates, Howes, Oberg, Pafumi, Jones and Badura, and as to the claims that defendants Manley, Butkiewicus and Knapp used excessive force when they deployed a chemical agent into the cell and later placed the plaintiff in in-cell restraints for eighteen hours. The court denied the motion as to plaintiff's claim that defendants Manley, Butkiewicus and Knapp violated his Eighth Amendment right to be free from excessive force and unconstitutional conditions of confinement when they failed to immediately remove him from his cell after he and his cellmate had submitted to handcuffs, and as to the claims that defendants Manley, Butkiewicus and Knapp violated his rights under state law. Pending is the defendants' supplemental motion for summary judgment on the claim remaining against defendants Manley, Knapp and Butkiewicus. For the reasons that follow, the motion for summary judgment will be

denied in part and granted in part.

I.  Facts[2]

On August 26, 2002, the plaintiff's cellmate became angry when he thought that a female correctional officer had removed a poem from an envelope he had placed in the mailbox. His cellmate covered the window in his cell door because he felt the female correctional officer had been disrespectful to him.

Defendants Manley and Knapp issued several orders to the plaintiff and his cellmate to remove the covering from the cell window, but neither the plaintiff nor his cellmate complied with the orders. Instead, the plaintiff's cellmate swore at defendant Manley. Defendant Manley then indicated that he would issue a request that an extraction team be mobilized to remove the plaintiff and his cellmate from the cell.

While defendants Manley and Butkiewicus waited for the extraction team, they issued several orders to both the plaintiff and his cellmate to remove the covering over the window. Defendant Manley warned the plaintiff that he would use a chemical agent if the covering was not removed from the window. At one point, the plaintiff yelled that he had not done anything.

---

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement, the exhibits attached to the statement including the videotape of the events that occurred on August 26, 2002, the Affidavits of Kevin Manley, Robert Knapp and David Butkiewicus, the Plaintiff's Local Rule 56(a)2 Statement, and the Plaintiff's Affidavit and exhibits attached to the Affidavit.

He did not, however, remove the covering from the window.

Defendant Manley then informed the plaintiff and his cellmate that he would spray a chemical agent into the cell. When defendant Manley opened the slot in the cell door to spray the chemical agent, the plaintiff's cellmate threw a liquid substance out through the slot. Defendant Manley then sprayed a one-second burst of chemical agent in through the slot in the cell door and again ordered the plaintiff and his cellmate to remove the covering from the window and to come to the door to be restrained. Approximately one minute later, defendant Manley deployed a second one-second burst of chemical agent in through the slot in the door and ordered the plaintiff and his cellmate to remove the covering from the window and to come to the door to be restrained. In response, the plaintiff's cellmate uncovered the window and attempted to rinse his face and eyes in the sink in the cell. The plaintiff was lying on the top bunk in the cell with a towel around his mouth.

The plaintiff's cellmate then put a mattress against the door in front of the slot in the door. Defendant Manley deployed a third one-second burst of chemical agent into the cell, but it was blocked by the mattress. A minute later, defendant Manley deployed a fourth one-second burst of chemical agent into the cell.

Defendant Manley ordered the plaintiff to come to the door

to be handcuffed.  The plaintiff came down from the bunk and put his hands through the door slot to be handcuffed.  After he was handcuffed, he climbed back up on the top bunk.  The plaintiff's cellmate submitted to being placed in handcuffs approximately one minute later.

On August 26, 2002, State of Connecticut Administrative Directive 6.5(7)(D) which provides that "[d]econtamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control" was in effect.  The plaintiff and his cellmate remained in handcuffs in the cell for approximately fifteen minutes until the extraction team arrived to remove them from the cell.  Five members of an extraction team entered the plaintiff's cell to remove him and his cellmate.  Neither the plaintiff nor his cellmate offered any resistance when the extraction team members entered the cell.  Two members of the extraction team and defendant Butkiewicus escorted the plaintiff from the cell to the shower room right next door and the plaintiff rinsed his face with water.  Two members of the extraction team took the plaintiff to the medical screening room.

There, defendant Dudley flushed out the plaintiff's eyes and washed his face, checked his respiratory rate, pulse and blood pressure, listened to his lungs and asked the plaintiff if he had suffered any injuries.  The plaintiff replied that he had not suffered any injuries and had no complaints of any kind.

5

A short time later, defendant Butkiewicus informed the plaintiff that he would be placed in in-cell restraints because he had disobeyed direct orders to remove the cell covering from the window. The plaintiff alleges that he remained in in-cell restraints for eighteen hours.

Defendant Badura checked on the plaintiff at approximately 8:30 p.m. that evening. In a grievance filed by the plaintiff in March 2003, the plaintiff stated that he had complained to defendant Badura of burning eyes and skin, but defendant Badura failed to offer him any medical treatment. Defendant Badura avers that he did not observe any injuries and the plaintiff did not voice any medical complaints.

A nurse examined the plaintiff the following day and noted that he was alert and oriented, that his respiratory rate was eighteen and that he had no observable injuries. The nurse also reported that the plaintiff had denied any medical issues.

In March 2003, the plaintiff complained, in a grievance to the medical department, that defendant Dudley had not properly flushed his eyes after his exposure to pepper spray in August 2002, and that his eyes were still puffy. He requested to be seen by an eye doctor. A nurse denied the grievance and indicated that the plaintiff would see the eye doctor when his name came up on the doctor's list.

II.  <u>Standard of Review</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>White v. ABCO Engineering Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.), <u>cert. denied</u>, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits

or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Anderson, 477 U.S. at 256. The nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of

New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion" unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

III.  Discussion

Defendants Manley, Butkiewicus and Knapp consider the remaining Eighth Amendment claim under the standards of excessive force and unconstitutional conditions of confinement.  They argue that summary judgment should be granted on the grounds that (1) the plaintiff has failed to allege that they used excessive force against him when they exposed him to pepper spray for an additional sixteen minutes after he agreed to be handcuffed; (2) the plaintiff has failed to allege that they were deliberately indifferent to his safety when they left him in the contaminated cell for sixteen minutes; (3) they are entitled to qualified immunity; and (4) the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

9

The plaintiff generally alleges that defendants Knapp, Manley and Butkiewicus were deliberately indifferent to his health and safety by subjecting him to a prolonged period of exposure to a chemical agent.  The plaintiff also claims that these defendants used excessive force against him when they deployed the chemical agent into his cell and then forced him to remain in the cell for a prolonged period of time.

In determining whether the plaintiff's claim is one of unconstitutional conditions of confinement or an unconstitutional use of force, the court finds instructive DeSpain v. Uphoff, 264 F.3d 965, 977-78(10th Cir. 2001).  In DeSpain, a correctional officer released pepper spray indiscriminately for seven seconds along a prison tier as a practical joke.  Inmate DeSpain experienced burning skin, lungs, tearing eyes and congested breathing as a result of his exposure to the pepper spray.  The Tenth Circuit noted that these facts could be construed to state a claim of unconstitutional conditions of confinement in that pepper spray "created a general 'condition' that affected the environment surrounding the tier's occupants" and "there was no need for [the officer] to weigh competing safety concerns or to restore order in the face of a disturbance" when he deployed the spray.  Id. at 978.  The court reasoned, however, that "pepper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive

use of force." Id.  Thus, the court concluded that the claim was one of excessive force and applied the excessive force standard rather than the conditions of confinement standard to the claim.

In the present case, the defendants only deployed pepper spray into one cell on one occasion.  Thus, the spray did not create a general condition that affected a whole tier or other inmates within the tier.  Furthermore, the defendants needed to weigh competing safety concerns in deciding when to remove the plaintiff from the contaminated cell.  Thus, the facts of this case more clearly support the application of the excessive force standard rather than the conditions of confinement standard. Accordingly, the court will apply the excessive force standard to plaintiff's claim against defendants Manley, Butkiewicus and Knapp.[3]

### A.   Claim of Excessive Force

Defendants Manley, Butkiewicus and Knapp argue that the plaintiff has failed to offer any evidence demonstrating that they used excessive force against him when they required him to remain in a cell contaminated by pepper spray for approximately sixteen minutes after they were handcuffed.  The plaintiff contends that the decision to subject him to prolonged exposure to pepper spray was not made in an effort to restore discipline

---

[3] Because the court will apply the excessive force standard to the plaintiff's claim, it will be unnecessary to address the defendants' conditions of confinement argument.

or order, but was made maliciously to cause harm.

In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

The objective component relates to the seriousness of the injury. The plaintiff need not prove that he suffered a significant injury, however, to state a claim of excessive force. See Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (no such showing of extreme injury is required when the claim is that prison officials used excessive force); Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (malicious use of force to cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident.). This objective component is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 2.

The subjective component requires the inmate to show that the prison officials acted wantonly. This inquiry turns on "whether force was applied in a good-faith effort to maintain or

12

restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Hudson sets forth the following factors for consideration: 1) the need for application of force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, and 4) any efforts made to temper the severity of a forceful response. Id.

    1)    Defendant Knapp

Defendant Knapp has submitted an affidavit in which he states that on August 26, 2002, he was present at the plaintiff's cell when defendant Manley first asked the plaintiff and his cellmate to remove the covering from the cell window. He and defendant Manley then left the area in front of plaintiff's cell to assemble the extraction team. Defendant Knapp did not return to the plaintiff's cell with defendant Manley and was not present at the time defendant Manley deployed the pepper spray or at any time during the period prior to the arrival of the extraction team. The plaintiff has submitted no evidence to contradict this affidavit. In fact, the plaintiff submitted a copy of a Serious Incident Summary Report regarding the August 26, 2002 use of force which supports Lieutenant Knapp's affidavit. The report does not include Lieutenant Knapp as one of the staff members involved in the incident. The plaintiff has failed to submit evidence demonstrating that there is a genuine issue of material

13

fact as to defendant Knapp's involvement in the alleged use of excessive force against him.  Accordingly, the motion for summary judgment will be granted as to defendant Knapp.

    2)   <u>Defendants Manley and Butkiewicus</u>

Defendants argue that they left plaintiff in his contaminated cell in handcuffs in a good faith effort to restore discipline to the prison.  The videotape of the incident reveals that after defendant Manley's unsuccessful attempt to verbally convince the plaintiff's cellmate to remove the covering from the cell door window, he issued a request that the extraction team be mobilized to remove the plaintiff and his cellmate from the cell. While defendants Manley and Butkiewicus waited for the extraction team to arrive, defendant Manley deployed four bursts of pepper spray into the plaintiff's cell.  Approximately four minutes after defendant Manley deployed the first burst of spray, the plaintiff submitted to handcuffs.  His cellmate submitted to handcuffs approximately one minute later.  The extraction team did not arrive until approximately sixteen minutes later to remove the plaintiff and his cellmate from the cell.

At the time of this incident, State of Connecticut Administrative Directive 6.5(7)(D) which provides that "[d]econtamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control" was in effect.  During the sixteen minutes after the

plaintiff and his cellmate were cuffed in the cell, the plaintiff remained on the top bunk of the cell in a prone position with a towel wrapped around his head and mouth. The plaintiff's cellmate sat in a chair near the cell door for the majority of the sixteen minutes. He periodically informed defendants Manley, Knapp and Butkiewicus that the plaintiff was having trouble breathing. At one point, he did get up to ask defendants Manley, Knapp and Butkiewicus about the delay in removing him from the cell and remarked that his face was burning. He did not make any threats against the defendants or appear to be agitated.

Defendants Manley and Butkiewicus aver that they waited for the extraction team to arrive before they went in to remove the plaintiff and his cellmate from the cell because the plaintiff's cellmate had threatened them after defendant Manley deployed the first two bursts of pepper spray. The defendants contend that the plaintiff's cellmate threatened to assault them with a bag of books. The videotape of the incident, however, does not support this allegation. It is apparent from the videotape that it was defendant Manley and not the plaintiff's cellmate who remarked that there was a bag of books in the cell.

The defendants also aver that they waited for the extraction team to remove the plaintiff from the cell because inmates are known to slip their handcuffs to the front of their bodies and strike prison employees with the handcuffs. The plaintiff avers

15

that he has never slipped his handcuffs or struck prison staff with his handcuffs.

Defendants Manley and Butkiewicus aver that the plaintiff was lying on his bunk and did not appear to be having any trouble breathing or to be in acute distress. The plaintiff avers that during his confinement in the cell after defendant Manley deployed the pepper spray, he could not breathe, was choking and vomited. The plaintiff's cellmate also repeatedly informed defendants Manley and Butkiewicus that the plaintiff was having trouble breathing.

Based on the evidence presented by the plaintiff and the defendants, it is clear that issues of material fact in dispute exist as to whether defendants Manley and Butkiewicus continued to expose the plaintiff to pepper spray in an effort to maintain or restore order or to cause him harm. The unresolved issues of fact include but are not limited to: the need to continue to expose the plaintiff to pepper spray after both he and his cellmate were in handcuffs, the threat of harm to prison staff by the plaintiff and his cellmate as perceived by defendants Manley and Butkiewicus and whether order had been restored at any time prior to the arrival of the extraction team. Thus, the motion for summary judgment will be denied as to the claim that defendants Manley and Butkiewicus used excessive force against the plaintiff when they left him in the cell contaminated with

pepper spray for approximately sixteen minutes until the extraction team arrived.

    B.   <u>Qualified Immunity</u>

Defendants Manley and Butkiewicus argue that they are entitled to qualified immunity because they did not violate any clearly established statutory or constitutional rights of the plaintiff. The doctrine of qualified immunity shields government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In light of the previous discussion denying summary judgment on plaintiff's excessive force claim, the court finds that disputed factual issues preclude summary judgment as to defendants' entitlement to qualified immunity.

    C.   <u>State Law Claims</u>

<u>     </u>The defendants also ask the court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Because the court has granted summary judgment as to the federal claims against defendant Knapp, it declines to exercise supplemental jurisdiction over the state law claims asserted against defendant Knapp.

Supplemental or pendent jurisdiction is a matter of

discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case.  See <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 715-26 (1966).  The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants.  The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.  See <u>Id.</u> at 726.  Because the federal claims will proceed against defendants Manley and Butkiewicus, the court retains jurisdiction over the state law claims asserted against those defendants.

IV. <u>Conclusion</u>

The Supplemental Motion for Summary Judgment [**Doc. # 53**] is **GRANTED** as to all claims against defendant Knapp, and **DENIED** as to the plaintiff's claims that defendants Manley and Butkiewicus violated his Eighth Amendment right to be free from excessive force and as to his state law claims consistent with this ruling.


SO ORDERED this ___29th___ day of ___March____, 2006, at Bridgeport, Connecticut.

```
             _____/s/_____
                    Warren W. Eginton
                    Senior United States District Judge
```